WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
732.636.8000
Attorneys for Plaintiff
Marvin J. Brauth, Esq.
NJ Attorney ID 018211974

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
DOCKET NO.

-----------------------------X
NEW JERSEY COALITION OF           :
AUTOMOTIVE RETAILERS, INC.,       :
a non-profit New Jersey           :
Corporation,                      :          Civil Action
                                  :
          Plaintiff,              :     **COMPLAINT**
                                  :
v.                                :
                                  :
MAZDA MOTOR OF AMERICA,           :
INC.,                             :
                                  :
          Defendant.              :
                                  :
-----------------------------X

Plaintiff, New Jersey Coalition of Automotive Retailers,

Inc. ("NJ CAR"), a New Jersey not for profit corporation, with

its principal place of business at 856 River Road, Trenton, New

Jersey, through its undersigned attorneys, complaining against

the defendant, Mazda Motor of America, Inc., says:

## PARTIES

1.  NJ CAR is a trade association, the members of which are franchised new motor vehicle dealers in New Jersey.

2.  Among the services NJ CAR provides to its members are education, training and advocacy before the Legislative and Executive Branches of the New Jersey government.

3.  Periodically, NJ CAR participates as <u>amicus curiae</u> or as a party in litigation involving the interests of its membership.

4.  Mazda Motor of America, Inc. ("Mazda") is a California corporation with its principal place of business at 200 Spectrum Center Drive, Irvine, California.

5.  Mazda is a franchisor as that term is defined in the New Jersey Franchise Practices Act ("FPA"), <u>N.J.S.A.</u> 56:10-1, <u>et seq.</u> and has franchised 16 Mazda dealers in New Jersey that are members of NJ CAR.

6.  NJ CAR has standing to bring this action to protect the legal rights of its members under the FPA from facial violation by Mazda and to protect the interests of all of its members generally in ensuring compliance with the FPA's provisions.

### JURISDICTION AND VENUE

7.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship) as NJ CAR is a corporation of the State of New Jersey with its principal place

-2-

of business in that State, whereas Mazda is a corporation of the State of California with its principal place of business in California.  The amount in controversy exceeds $75,000.00.

8.  Venue in this District is proper pursuant to 28 U.S.C. §1391(b)(2), as the statutes in question represent the law of New Jersey, all Mazda dealers who will be impacted by Mazda's conduct do business in that State, and the events and omissions that give rise or relate to this lawsuit have and/or will occur there.

**OVERVIEW**

9.  The FPA was originally enacted in 1971 (P.L. 1971 c. §356) to protect franchisees from harm due to the unequal bargaining power of franchisors.  <u>N.J.S.A.</u> 56:10-2.  As set forth by the New Jersey Supreme Court in <u>Shell Oil Co. v. Marinello</u>, 63 <u>N.J.</u> 402, 408-409 (1973), once a franchisee establishes a franchise, incurs the time and expense to develop the franchise and generates good will for the franchisor, the franchisee is at the mercy of the franchisor and subject to loss of the entire investment and good will in the franchise at the whim of the franchisor. The franchisor, by contrast, can easily replace any individual franchise without significant disruption to its business.

10.  Over the 47 years since the original enactment of the FPA, the New Jersey Legislature has reaffirmed the unequal

-3-

bargaining power between franchisors and franchisees, particularly with respect to motor vehicle franchises, and the need to protect motor vehicle franchisees, and their customers, from arbitrary and capricious action by franchisors. (N.J.S.A. 56:10-7.2) Over this period of time, the Legislature has passed numerous amendments and supplements to the FPA to address specific abuses of power by motor vehicle franchisors that have arisen.

11.   One of the abuses the Legislature has addressed is the use of price differentials between dealers such that one dealer in New Jersey will have a lower effective cost for a similarly equipped vehicle than another dealer.

12.   Franchisors, including Mazda, create these price differentials by using incentive programs which purport to reward dealers for achieving specified goals. Dealers who achieve the goals receive a payment for each vehicle the dealer sells. That payment reduces the cost of the vehicle to the dealer in comparison to dealers who are unable to achieve the goal.

13.   Price differentials adversely affect dealers who do not benefit from them. The higher per vehicle costs incurred by such dealerships put them at a disadvantage when competing for customers over price. This competitive disadvantage affects a dealer's sales, ability to make a profit and viability. Price

-4-

differentials thereby enable franchisors to create winners and losers among their dealers, force conduct by dealers that does not make financial sense and results in some dealers going out of business.

14. The competitive advantage that price differentials create for some of a franchisor's dealers but not others is not based on the market efficiency of the preferred dealers but on the cost advantage provided by the franchisor. It has been recognized on both the state and national levels that artificial price advantages so created are contrary to the public interest as they serve to reduce competition, adversely affect competitors and ultimately result in higher prices for goods and services. Additionally, any reduction in the number of motor vehicle dealers resulting from the effects of price differentials has the further effect of reducing consumer access to local, convenient access to warranty and safety recall repairs contrary to the public interest.

15. To rectify these abuses and their consequences, in 2011, the Legislature passed P.L. 2011 c. 66, §2, an amendment to N.J.S.A. 56:10-7.4(h) to require franchisors to sell all comparably equipped vehicles to all dealers in New Jersey at the same price without differential in discount, allowance, credit or bonus. Since 2011, N.J.S.A. 56:10-7.4(h) has prohibited franchisors:

-5-

> "...to fail or refuse to sell or offer to sell
> such motor vehicles to all motor vehicle
> franchisees at the same price for a comparably
> equipped motor vehicle, on the same terms, with
> no differential in discount, allowance, credit or
> bonus..."

16. Another abuse addressed by the Legislature is demands by franchisors that dealers make facilities modifications at costs that cannot be financially justified, demands that are enforced by denial of per-vehicle incentives to dealers who do not make the facility modifications. Financially unjustified facilities requirements drive up operating costs for the dealers required to make them, costs that have to be recovered from their customers or be absorbed by the dealership. When a dealer is unable to either incur, absorb or recover the cost, such dealers risk being forced out of business, reducing competition in the marketplace and limiting consumer access to local, convenient warranty and recall service.

17. In response, in 2011, in addition to N.J.S.A. 56:10-7.4(h), the Legislature passed P.L. 2011 c 66 §2, N.J.S.A. 56:10-7.4(l) which prohibits franchisors from compelling dealers to make financially unjustified facilities modifications or from taking any action adverse to a dealer who does not make a financially unjustified facility modification.

18. N.J.S.A. 56:10-7.4(l) provides as follows:

> "To require or attempt to require a motor vehicle
> franchisee to relocate his franchise or to

-6-

implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle. This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized."

19. A further abuse addressed by the Legislature has been demands by franchisors that dealers use their facilities exclusively for the franchisor's brand even if there is sufficient room in the facility for other brands. Franchisors enforce these demands by denying incentives to dealers who do not have exclusive facilities. Here again, an effect of such requirement is to increase the operating costs of the affected dealers through the duplicative and inefficient use of their facilities, with the negative consequences for those dealers and the public interest noted above.

#10173735.1(011028.097)

20.   To   rectify   this   abuse,   in   2011,   the   Legislature enacted P.L. 2011 c 66 §2, <u>N.J.S.A.</u> 56:10-7.4(j), which provides as follows:

> "To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated, including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor. The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid."

### MAZDA'S BRAND EXPERIENCE PROGRAM

21.   In 2018, Mazda announced the introduction of the Mazda Brand Experience Program 2.0 ("MBEP").   A copy of a Quick Start Guide, outlining the provisions of the MBEP, is attached hereto and made a part hereof as Exhibit "A".   The Program had a scheduled implementation date of July, 2018.

22.   Pursuant   to   the   MBEP,   Mazda   dealers   can   earn incentives  (discounts  or  bonuses)  for  each  vehicle  a  Mazda

-8-

dealer sells based on the dealer's compliance with Mazda's MBEP requirements.

23.  The incentives range from 6.5% of the Manufacturer's Suggested Retail Price ("MSRP") of a vehicle to 0% depending on the degree to which a dealer complies with Mazda's MBEP requirements.    Up to 4.5% of the incentive is based on facilities and other requirements.  Up to 2% of the incentive is based on Mazda's calculation of "customer experience" at the dealership.

24.  On a vehicle with an MSRP of $30,000, a 6.5% incentive comes to $1,950. Such an amount creates s significant competitive differential between dealers who receive and who do not receive the incentive, both in terms of their ability to engage in intra-brand and inter-brand competition. 25.    To qualify for the 4.5% facilities portion of the incentive, a dealer must have an exclusive Mazda facility which incorporates all Mazda required image elements, satisfy other "base elements" required by Mazda and employ a dedicated, exclusive Mazda General Manager.

26.  A dealer who satisfies all of the foregoing requirements but not the dedicated, exclusive Mazda General Manager forfeits 1.7% of the incentive.  Dealers with exclusive facilities, but not ones incorporating all Mazda image elements,

-9-

lose another 1.8% and dualled dealers (facilities that include another brand) lose the entire 4.5%.

27.   The 2% for "Customer Experience" is an all or nothing incentive in which some dealers receive a 2% incentive (discount or bonus) per vehicle sold based on their compliance with the "Customer Experience" criteria, while other dealers receive nothing.

### MBEP VIOLATES THE FPA

28.   On its face, the MBEP violates the foregoing provisions of the FPA as:

—   it results in vehicle price differentials, up to 6.5% of MSRP, among dealers through incentives in different amounts paid for each vehicle, in violation of N.J.S.A. 56:10-7.4(h);

—   it denies a benefit (a per-vehicle incentive) to dealers with dualled facilities in violation of N.J.S.A. 56:10-7.4(j); and,

—   it denies a benefit (a per-vehicle incentive) to dealers who do not provide Mazda with exclusive, image compliant facilities despite the fact that Mazda has presented its dealers with no evidence that the cost of such facilities can be financially justified, in violation of N.J.S.A. 56:10-7.4(l).

-10-

## FIRST COUNT

29.  NJ CAR repeats and realleges each and every allegation set forth in paragraphs 1 to 28 as if set forth at length herein.

2830.    Pursuant to 28 U.S.C. §2201 and §2202, this Court has jurisdiction to grant a declaratory judgment in cases of actual controversy and to order such further relief as is necessary or proper in connection with such declaratory judgment.

31.  The violations of the FPA in Mazda's MBEP and Mazda's implementation of that Program in New Jersey despite those violations has resulted in a case of actual controversy between Mazda and its New Jersey dealers.

3032.    Accordingly, a declaratory judgment should be entered that (a) MBEP violates the FPA on its face; and (b) that it is unlawful for Mazda to implement it in New Jersey.

## SECOND COUNT

33.  NJ CAR repeats and realleges each and every allegation set forth in paragraphs 1 to 32 and makes same a part hereof as if set forth at length herein.

34.  Mazda is currently engaged in conduct that violates the FPA and will continue to engage in such illegal conduct unless enjoined.

#10173735.1(011028.097)

35. Accordingly, injunctive relief to enforce the declaratory judgment is necessary and proper pursuant to 28 U.S.C. §2202.

36. There is no remedy at law that can address ongoing violations of the FPA in the absence of injunctive relief.

WHEREFORE, NJ CAR seeks judgment against Mazda as follows:

    a) Finding and declaring that MBEP violates the FPA on its face;

    b) Finding and declaring that it is unlawful for Mazda to implement the MBEP in New Jersey;

    c) Enjoining Mazda from implementing the MBEP in New Jersey;

    d) Awarding costs of suit, attorneys' fees and costs to NJ CAR; and,

    e) Granting it such other and further relief as the Court deems just and proper.

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff


By: */s/ Marvin J. Brauth*
      MARVIN J. BRAUTH
      For the Firm

Dated: October 2, 2018

-12-

# EXHIBIT A



# MAZDA BRAND EXPERIENCE PROGRAM

## As of July 3, 2018

## Quick Start Guide

This Quick Start Guide is intended to be an overview of the Mazda Brand Experience Program ("MBEP"). For details on MBEP, please consult the Mazda Brand Experience Program Terms and Conditions ("Terms and Conditions") located in the MBEP website. To the extent that any discrepancy exists between the Quick Start Guide and the Terms and Conditions, the Terms and Conditions shall control.





## Contents

Changes from prior to new program, effective 7/3/18 ............................................................ 3

**MBEP Structure** ........................................................................................................ 5

   Six Base Qualifiers ................................................................................................. 5

   Two Earnings Elements ........................................................................................... 6

   Qualifier Timing Summary ...................................................................................... 7

   Other General Information ...................................................................................... 8

**Program to Program Comparison** ................................................................................ 9



## Changes from prior to new program, effective 7/3/18

**MBEP program being restructured in support of Dealer Network Enhancement, Marketing Transformation and Retention Business Growth.**

- Broadens brand qualification to support people, process, place and promotion
- Provides more earnings certainty for engaged dealers
- Less hurdles to earn maximum program amounts
- Eliminates sales objectives (push approach)
- Supports facility image upgrade
- Integrates with T3 marketing to support co-op utilization

| MAZDA BRAND EXPERIENCE PROGRAM | |
| --- | --- |
| **Ending July 2, 2018** | **Starting July 3, 2018** |
| | BASE QUALIFIERS |
| | 1. Facility Image & Type Inspection (Pass) |
| | 2. Training (Basic certification requirement) |
| | 3. MSS XTime (Enrollment requirement) |
| | 4. CX360 Record Health (% requirement) |
| | 5. Mazda Courtesy Vehicle Program (MCVP) Participation (Minimum Required Vehicles) |
| | 6. *Co-Op (claiming requirement)* |
| EARNING ELEMENT - Brand Commitment | EARNING ELEMENT – Brand Commitment |
| 1. Facility Image & Type Inspection (Passed Annual)<br>2. Training (Basic Certification Requirement)<br>3. MSS X Time (Enrollment Requirement) | *Dedicated Exclusive GM (**RE** only)* |
| EARNING ELEMENT - Customer Experience | EARNING ELEMENT – Customer Experience |
| 1. CX360 Index (Sales/Service Surveys, Record Health, Survey Health)<br>2. Mazda Courtesy Vehicle Program (MCVP) Participation (Minimum Required Vehicles) | Survey Health (minimum % requirement)<br><br>Survey Index Score (Top 75% of dealers or 84+ Index) |
| **EARNING ELEMENT - Sales Performance**<br><br>1. **Sales Performance (Vehicles Sales)** | |
| **EARNING ELEMENT - Service Performance**<br><br>1. **Full Circle Inspection (%RO Requirement)**<br>2. **Parts Penetration (% RO Requirement)** | |

**Note:**

**Bolded items have been discontinued.**

*Italicized items have been added.*

**What are the Major Changes?**

- Six base qualifiers have been incorporated into the program - - 5 of which moved from earning elements and 1 of which was added.

- Earning elements have been simplified from four to two (sales and service performance elements were eliminated).

- With the removal of sales and service performance elements, there is no reliance on any Earning Element to earn another (e.g. previous program must have met CX to be eligible for sales or service.)

- Additional tier for Retail Evolution stores have been added to the Brand Commitment Element earnings potential.

- All payments will be monthly; quarterly payments eliminated.

- All qualifiers will be pre-qualified in month or quarter prior to earnings month.





## MBEP Structure

### Six Base Qualifiers

Must be achieved to be eligible for any MBEP payment:

1) **Facility Image & Inspection** – All Dealerships must have passed the most recent Image Inspection and RE/Exclusives/Exclusive Showrooms must have passed the most recent Facility Type Inspection
   - **Qualifier Timing:** Status as of 25th of preceding Month

2) **Training** – 90% of active dealership employees identified by an eMDCS primary job code are required to complete 100% of "Certified" training courses as identified in the most current Learning Management System (LMS – currently Mazda State) Certification Catalog.
   - **Qualifier Timing:** Prior quarter pre-qualifies for next 3 months; sales close

3) **MSS X-Time** – Meet enrollment requirement
   - **Qualifier Timing:** Enrollment as of end of preceding calendar month

4) **MCVP** – Maintain number of units required in MCVP objective for minimum of 80 percent of the days in a rolling 3-month period. Only units that are placed in Mazda Courtesy Vehicle Program (MCVP) status (RDR type L) will be measured for qualification.
   - **Qualifier Timing:** Rolling 3 calendar month period pre-qualifies for next month

5) **CX360 Record Health** – Meet minimum 80% performance for record health measurement. Records impacting this metric are identified as: invalid, missing, bounced or failed email. The combined percentage of these records will be subtracted from the total number of records to the percentage of valid Sales and Service RO records.
   - **Qualifier Timing:** Rolling 3 calendar month period pre-qualifies for next month. Note: April-June objective remains at 75% and will transition to 80% as of July 2018.

| Earnings Month | Survey Period | Objective |
|---|---|---|
| July | Apr-Jun | 75% |
| Aug | May-Jul | 75% |
| Sep | Jun-Aug | 75% |
| Oct | Jul-Sep | 80% |

6) **Co-Op** – Consumer-Facing Funds Claiming
   - **Qualifier Timing:** During the Co-Op claiming period that ends the month preceding the MBEP earnings month, submit claims for 100% of Consumer-Facing co-op funds; based on sales month close
     i. July 2018-January 2019 will auto-qualify due to change in Co-Op program requirements.
     ii. Example: July 2018 Co-Op fund claims will qualify dealer for February 2019 MBEP.

| Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar |
|---|---|---|---|---|---|---|---|---|
| Co-Op fund | July Co-Op fund spending | | | | | | | |
| | July Co-Op fund claims submission | | | | | Documentation Review/Appeals | MBEP qualification | MBEP payment |



## Two Earnings Elements

Paid monthly

1) **Brand Commitment Element**

   1. Element Qualifier

      - RE dealerships much achieve six base qualifiers and **Dedicated Exclusive GM** for RE level earnings

      - Achievement timing is based status as of 25th of previous month. Dealers must have GM in place by December 24, 2018 for January 2019 Earnings Month and will auto qualify from July through December 2018.

   2. All other dealerships must achieve six base qualifications only; Payout potential varies by facility type

      - Retail Evolution – 4.5%

         - RE stores achieving only base qualifiers and not dedicated GM will drop to Exclusive level payout potential; Status as of 25th of previous Month

      - Exclusive - 2.8%

      - ESR – 1.0%

      - Dual – 0.0%



2) **Customer Experience Element**

   1. Element Qualifiers – Dealerships must achieve six base qualifiers and CX360 qualifiers listed below. Rolling 3 calendar month period pre-qualifies for next month. Must achieve both:

      - **CX360 Survey Health** - minimum 75% performance

      - **CX360 Index Score** – score must be in the Top 75% of dealers or have a CX score of 84 or higher



   2. One payout level for all facility types – 2.0%



## Qualifier Timing Summary

| Type | Item | Qualifier Timing |
|---|---|---|
| **Base Qualifier** | **Facility Image & Type Inspection** | **Status as of 25th of calendar month preceding each MBEP Earning Month** |
| | **Training** | **Status as of last day of sales close quarter preceding MBEP Earning Month** |
| | **MSS X-Time** | **Status as of last day of calendar month preceding each MBEP Earning Month** |
| | **CX360 Record Health** | **Rolling 3 calendar month period preceding each MBEP Earning Month** |
| | **MCVP** | **Rolling 3-month period preceding each MBEP Earning Month** |
| | **Co-Op** | **Status as of end of 7 Sales close month periods preceding each MBEP Earning Month** <br><br> **(e.g. July spend qualifies February earnings)** |
| **Element Qualifier** | **Brand Commitment – Dedicated Exclusive General Manager** | **Status as of 25th of calendar month preceding each MBEP Earning Month** |
| | **Customer Experience – CX360 Index Score and Survey Health** | **Rolling 3 calendar month period preceding MBEP Earning Month** |



## Other General Information

- ➢ Only vehicle selling Mazda dealerships are eligible for program; no service-only points.
- ➢ All payouts are VIN-specific and paid as a percentage of base MSRP, rounded to nearest dollar.
  - ○ Only "R" coded (Retail) RDRs will qualify for payment. R code payments will be paid based on the sale date within the period, not the process date. Similarly, if an "R" coded RDR is reversed, the reversed sale will be subtracted from the period in which the sale actually occurred.
- ➢ CX360 Record Health, Survey Health and Index, as well as MSS XTime and MCVP programs are based on calendar month cutoffs; Facility Image & Type are based on cutoff as of 25th of month; Training and Co-Op are based on sales close dates.
- ➢ Dealers (GM or DP) must enroll in the Mazda Brand Experience Program through the MBEP website (located in MXConnect) acknowledging the MBEP Terms & Conditions.
- ➢ If any legal or administrative action is brought or threatened by any party to enjoin or prohibit any or all of MBEP, Mazda reserves the right, in its sole and absolute discretion, to suspend any and all payments pursuant to MBEP and/or to modify or cease to offer MBEP, with no liability whatsoever to any dealer. Should Mazda be prohibited by any federal, state or local law, rule or regulation or a determination by any judicial or administrative body from continuing MBEP in any or all state(s), MBEP shall automatically terminate and Mazda shall have no liability whatsoever to any dealer in the state(s) where MBEP is terminated. Further, Mazda reserves the right to cancel, amend, or revoke the policies, and/or any program at any time, for any or no reason, and the Dealer agrees that it will make no claim to Mazda for anticipated benefits or lost opportunity under a cancelled program or revised or cancelled policies.
- ➢ The Mazda Brand Experience Program does not apply to dealers in Hawaii, Kentucky, Vermont, or North Carolina.



## Program to Program Comparison

| MAZDA BRAND EXPERIENCE PROGRAM (MBEP)<br>July 2016-June 2018 | MAZDA BRAND EXPERIENCE PROGRAM (MBEP)<br>As of July 3, 2018 |
|---|---|
| **BASE QUALIFIER REQUIREMENT** | |
| NONE | All Pre-Qualified<br>1.  Facility Image & Type Inspections<br>2.  Training<br>3.  Mazda Service Scheduler/XTime<br>4.  CX360 Record Health<br>5.  Mazda Courtesy Vehicle Program (MCVP)<br>6.  Co-Op Claiming |
| **EARNINGS ELEMENTS** | |
| Performance<br>Must achieve Customer Experience Element to qualify<br>• Sales: 0.71% of Base MSRP per retail unit ($188 average/retail)<br>• Service: 0.71% of Base MSRP per retail unit ($188 average/retail)*<br>• Paid Quarterly | NONE |
| Brand Commitment<br>2.15% of Base MSRP EXCL; 1.01% of Base MSRP ESR; 0.2% of Base MSRP Dual<br>• Facility: Pass most recent Type & Image inspections<br>• Training Certification<br>• Mazda Service Scheduler (XTime)<br>• Paid Monthly | Brand Commitment<br>4.5% of Base MSRP RE; 2.8% of Base MSRP EXCL; 1.0% of Base MSRP ESR; 0.0% of Base MSRP Dual<br>• RE must achieve: Exclusive Dedicated GM |
| Customer Experience<br>1.82% of Base MSRP per retail unit ($482 average/retail)*<br>• CX360 Performance: Index, Survey Health, Record Health<br>• Mazda Vehicle Courtesy Program (MVCP)<br>• Must achieve both to qualify<br>• Paid Quarterly | Customer Experience<br>2.0% of Base MSRP per retail unit ($530 average/retail)*<br>• Must achieve both: CX360 Index, Survey Health<br>• Paid Monthly<br>• Pre-qualified |
| **POTENTIAL EARNINGS** | |
| All Calculated on Base MSRP<br><br>5.39% Exclusive Dealers<br>4.25% Exclusive Showroom<br>3.44% Dual Dealers | All calculated on Base MSRP<br>6.5% Retail Evolution Dealers<br>4.8% Exclusive Dealers<br>3.0% Exclusive Showroom<br>2.0% Dual Dealers |

*MBEP payout examples are based on an MSRP of $26,500



