## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC.,

Plaintiff,

v.

MAZDA MOTOR OF AMERICA, INC.

Defendant.

**Case No. 3:18-cv-14563-BRM-TJB**

Motion Day:  December 3, 2018

## DEFENDANT'S BRIEF IN SUPPORT
## <u>OF MOTION TO DISMISS</u>

**Brian D. Sullivan**
**FOX ROTHSCHILD LLP**
*Formed in the Commonwealth of Pennsylvania*
49 Market Street
Morristown, NJ 07960
(973) 994-7525

*Attorneys for Defendant*
*Mazda Motor of America, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................2

    A.    The Parties ............................................................................2

    B.    The Mazda Brand Experience Program ...............................3

    C.    NJ CAR's Claims................................................................5

LEGAL STANDARD..................................................................................................6

ARGUMENT ...............................................................................................................9

    I.    STANDING OF INDIVIDUAL MEMBERS.................................... 10

    II.    GERMANENESS ........................................................ 11

    III.    PARTICIPATION BY INDIVIDUAL MEMBERS ........................... 14

CONCLUSION...........................................................................................................21

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ...................................................7

*Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*,
  920 F.2d 198 (3d Cir. 1990) .................................................8

*Brentlinger Enterprises v. Volvo Cars of North America, LLC*,
  2016 WL 4480343 (S.D. Ohio Aug. 25, 2016) ...........................16, 17

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*,
  119 F. App'x 419 (3d Cir. 2005) ......................................20

*Contractors Ass'n of E. Pennsylvania, Inc. v. City of Philadelphia*,
  945 F.2d 1260 (3d Cir. 1991) ...........................................14

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*,
  2018 WL 3812153 (D. Del. Aug. 9, 2018) ..............................8

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) ...........................................7, 9

*Free Speech Coalition, Inc. v. Attorney Gen. United States*,
  787 F.3d 142 (3d Cir. 2015) ...........................................14, 15

*GBForefront, L.P. v. Forefront Mgmt. Grp.*,
  888 F.3d 29 (3d Cir. 2018) ............................................8

*Gould Elecs., Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) ...........................................7

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  846 F.3d 625 (3d Cir. 2017) ...........................................7

*Hosp. Council of W. Pa. v. City of Pittsburgh*,
  949 F.2d 83 (3d Cir. 1991) ............................................10, 11

*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ...................................................*passim*

ii

*Kessler Inst. For Rehabilitation, Inc. v. Mayor & Council of Borough of Essex Fells*,
876 F. Supp. 641 (D.N.J. 1995) ........................................................................11

*Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*,
232 F.Supp.3d 813, 827 .....................................................................................16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...........................................................................................10

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ...............................................................................8

*New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*,
107 F. Supp. 2d 495 (D.N.J. 1999)....................................................................14

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
280 F.3d 278 (3d Cir. 2002) ..............................................................................15

*Pennsylvania Prison Soc'y v. Cortes*,
622 F.3d 215 (3d Cir. 2010) .........................................................................10, 11

*Polaroid Corp. v. Disney*,
862 F.2d 987 (3d Cir.1988) ...............................................................................11

*Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*,
123 F.3d 111 (3d Cir. 1997) ................................................................................9

*Storino v. Borough of Point Pleasant Beach*,
322 F.3d 293 (3d Cir. 2003) ...............................................................................9

*Toll Bros. v. Twp. of Readington*,
555 F.3d 131 (3d Cir. 2009) ..............................................................................10

**Statutes and Regulations**

Fed. R. Civ. P. 12(b)(1)...............................................................................1, 7, 8

N.J.S.A. 56:10-4...................................................................................................9

N.J.S.A 56:10-7.4(h) ................................................................................6, 15, 17

N.J.S.A 56:10-7.4(j) ................................................................................6, 18, 19

iii

N.J.S.A 56:10-7.4(l) ..............................................................6, 19, 20

N.J.S.A. 56:10-9 ...............................................................................20

N.J.S.A. 56:10-10 ...........................................................................1, 9

iv

Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations ("**Mazda**") respectfully submits this brief in support of its motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("**NJ CAR**") for lack of standing.[1]

## PRELIMINARY STATEMENT

In this action, NJ CAR, a trade association of New Jersey car dealers, asks the Court to find that a program Mazda offers to its dealers violates three provisions of the New Jersey Franchise Practices Act (the "**NJFPA**").  The NJFPA permits a "franchisee" to bring an action "against its franchisor" for violations of the NJFPA.  N.J.S.A. 56:10-10.   While NJ CAR is not a franchisee of Mazda, under case law a trade association can bring claims on behalf of its members if it can satisfy its burden of proof with respect to associational standing.  As shown below, however, NJ CAR cannot satisfy that burden in this case because (1) the Complaint fails to identify any individual member of NJ CAR who has suffered an "injury-in-fact" as a result of the Mazda dealer support program; (2) there is a serious conflict of interest between the position taken by NJ CAR in this case and the interests of the majority of New Jersey Mazda dealers, because the majority

---

[1] The Complaint is Document 1 filed in this action. This brief will also cite to the Declaration of Kyle Kaczmarek in Support of Defendant's Motion to Dismiss, dated November 8, 2018 ("**Kaczmarek Decl.**").

have taken actions to qualify for the support payments and will be harmed by a ruling declaring the program to be illegal; and (3) unlike cases in which associational standing is appropriate, the nature of the statutory claims asserted by NJ CAR will require the individual participation of New Jersey Mazda dealers in this lawsuit.  Accordingly, this action should be dismissed for lack of standing.

## STATEMENT OF FACTS

### A.   The Parties

Mazda is the exclusive U.S. distributor of new Mazda motor vehicles. [Kaczmarek Decl. ¶ 2.]  Mazda distributes Mazda vehicles to franchised dealers who have entered into a contractual relationship with Mazda. [*Id.* ¶¶ 3-4.]  There are currently 16 franchised Mazda dealers located in New Jersey.  [Compl. ¶ 5.]

According to the Complaint, NJ CAR: is a trade association whose members are franchised new motor vehicle dealers in New Jersey, including the 16 Mazda dealers [*Id.* ¶¶ 1, 5]; provides its members with "education, training and advocacy before the Legislative and Executive Branches of the New Jersey government" [*Id.* ¶ 2]; and "[p]eriodically…participates as *amicus curiae* or as a party in litigation involving the interests of its membership" [*Id.* ¶ 3].  According to NJ CAR's website, there are 526 New Jersey dealers.[2]

---

[2]   http://www.njcar.org/njcar/dsp_news_details.cmf?news_id=4464   (visited on November 7, 2018).

\\DC - 029020/000018 - 12800270 v7

**B.**     **The Mazda Brand Experience Program**

Mazda operates a "Mazda Brand Experience Program" ("**MBEP**"), pursuant to which eligible franchised Mazda dealers can earn payments from Mazda by meeting certain criteria.  The MBEP was restructured earlier this year, and the current version became effective on July 3, 2018.  [Compl. ¶ 21 and Ex. A thereto, p. 16.]   Attached to the Complaint is a "Quick Start Guide" providing an "overview" of the current version of the MBEP.  [Compl. ¶ 21 and Ex. A, p. 14.] The Quick Start Guide refers to the MBEP "Terms and Conditions" for the "details" of the program, and states that if "any discrepancy exists between the Quick Start Guide and the Terms and Conditions, the Terms and Conditions shall control."  [Compl. Ex. A, p. 14.]   Accordingly, to provide a full and accurate understanding of the program's details, Mazda is submitting a copy of the Terms and Conditions as Exhibit 2 to the Kaczmarek Declaration.

The Terms and Conditions state that the "MBEP is designed to support those dealers who are engaged and committed to the Mazda brand and consistently provide all customers with an ownership experience that exceeds their expectations."  [Kaczmarek Decl. Ex. 2, p. 1.]  By complying with the program's criteria, a dealer can earn a payment of up to 6.5% of the base Manufacturer's Suggested Retail Price ("MSRP") for each new Mazda vehicle it retails.  [Compl. ¶

3

23; Kaczmarek Decl. Ex. 2, p. 7.]   The potential payments are comprised of various components, each with its own criteria.

The MBEP payments have two "Earnings Elements": (1) "Brand Commitment" (a maximum of 4.5%), and (2) "Customer Experience" (a maximum of 2%).  [Compl. ¶ 23; Kaczmarek Decl. Ex.2, p. 7.]  To be eligible for either Earning Element, the dealer must first meet certain "Base Qualifiers" relating to facility inspections, training, service scheduling, customer records, and Mazda's courtesy vehicle program.  [Kaczmarek Decl. Ex. 2, pp. 6, 11-16.]

The Brand Commitment Earnings Element is tiered based on facility type. [Compl. ¶¶ 25-26; Kaczmarek Decl. Ex. 2, p. 6.]  To be eligible to receive the full 4.5%, the dealer must (1) operate from a qualifying "Retail Evolution Dealership" and (2) have a dedicated exclusive Mazda general manager.  [Compl. ¶ 25; Kaczmarek Decl. Ex. 2, pp. 17-18.]  "Retail Evolution" is the name of Mazda's facility "image program" (the "**Retail Evolution Program**").  [Kaczmarek Decl. ¶ 6  and Ex. 2, p. 17.]  To enroll in the Retail Evolution Program, a dealer must agree to construct a facility that meets Mazda's brand standards and incorporates certain Mazda brand "image elements," including certain signs and displays.  [*Id.* ¶ 7.] For a dealer that has enrolled in the Retail Evolution Program but has not yet "broken ground" on a new Retail Evolution facility, Mazda will hold in "escrow" the "incremental" incentives the dealer would have received if it had qualified as a

Retail Evolution Dealership.  [*Id.* ¶ 11.]  The escrowed amounts are released to the dealer once the dealer breaks ground on its Retail Evolution facility.  [*Id.*]

Non-Retail Evolution dealers are eligible to receive a Brand Commitment Earnings Element of 2.8% if they have an "Exclusive" Mazda facility, and 1.0% if they have an "Exclusive Showroom" for Mazda.  [Compl. ¶ 26; [Kaczmarek Decl. Ex. 2, p. 7.]  Mazda dealers with "Dual" facilities (i.e., facilities that include another brand without an exclusive Mazda showroom) are not eligible for a Brand Commitment incentive.  [*Id.*]

To be eligible to receive the Customer Experience Earnings Element of 2%, the dealer must meet certain minimum performance levels related to customer satisfaction.  [Compl. ¶ 27; Kaczmarek Decl. Ex. 2, pp. 18-19.]  Unlike the Brand Commitment Earnings Element, the Customer Experience Earnings Element is not tiered.  [*Id.*]  Moreover, a Mazda dealer can receive this 2% payment regardless of whether it has a Retail Evolution facility, an exclusive Mazda facility, an exclusive Mazda showroom or a dual facility.

## C.  **NJ CAR's Claims**

The Complaint alleges that the MBEP violates the following three provisions of the NJFPA:

- N.J.S.A 56:10-7.4(h) – because the MBEP allegedly "results in vehicle price differentials" among Mazda dealers "through incentives in different amounts paid for each vehicle";

- N.J.S.A 56:10-7.4(j) – because the MBEP allegedly "denies a benefit (a per-vehicle incentive) to dealers with dualled facilities"; and

- N.J.S.A 56:10-7.4(l) – because the MBEP allegedly "denies a benefit (a per-vehicle incentive) to dealers who do not provide Mazda with exclusive, image compliant facilities[.]"

[Compl. ¶ 28.]

The Complaint contains two "Counts," each of which is premised on these three alleged statutory violations.  In the First Count, NJ CAR seeks a judgment declaring that (a) the MBEP violates the NJFPA "on its face" and (b) "it is unlawful for Mazda to implement it in New Jersey."  [*Id.* ¶ 32.[3]]   In the Second Count, NJ CAR seeks an injunction preventing "Mazda from implementing the MBEP in New Jersey."  [*Id.*, p. 12 ("WHEREFORE" clause (c)).]

NJ CAR alleges that it "has standing to bring this action to protect the legal rights of its members under the [NJ]FPA from facial violation by Mazda and to protect the interests of all of its members generally in ensuring compliance with the [NJ]FPA's provisions."  [Compl. ¶ 6.]  NJ CAR does not allege that it has standing to sue on its own behalf.

## LEGAL STANDARD

"[B]ecause standing is a jurisdictional matter," a motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1)."  *Ballentine v. United*

---

[3]     The Paragraph number listed in the Complaint is "3032," which appears to be a typo.

*States,* 486 F.3d 806, 810 (3d Cir. 2007).  A motion to dismiss under Rule 12(b)(1) can raise "either a facial or factual attack."  *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

A facial attack is a challenge to the court's "subject matter jurisdiction without disputing the facts alleged in the complaint."  *Id.*  In reviewing a facial attack, the court must accept all factual allegations in the complaint as true, and consider only the "allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In other words, the court applies "the same standard as on review of a motion to dismiss under Rule 12(b)(6)."  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

A factual attack is a challenge to "the factual allegations underlying the complaint's assertion of jurisdiction."  *Davis*, 824 F.3d at 346 (internal quotations omitted).  Unlike a facial attack, in reviewing a factual attack, there is no "presumptive truthfulness" afforded to the complaint's factual allegations, and the court may "weigh and consider evidence outside the pleadings."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

While courts generally treat a pre-answer motion under Rule 12(b)(1) as a facial attack, even "a facially sufficient complaint may be dismissed before an

answer is served if it can be shown by affidavits that subject matter jurisdiction is lacking." *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990).  In addition, both a facial and factual attack may be presented together in the same motion. *See GBForefront, L.P. v. Forefront Mgmt. Grp.*, 888 F.3d 29 (3d Cir. 2018) (addressing motion to dismiss presenting both types of challenges); *Hopewell Valley Reg'l Bd. of Educ.*, 2018 WL 2411616, at *3-4 (D.N.J. May 29, 2018) (same) (Martinotti, J.).  "[W]hen a motion presents both types of attacks, the plaintiff must overcome both in order for its claims to proceed." *Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, 2018 WL 3812153, at *4 (D. Del. Aug. 9, 2018).

As shown below, NJ CAR's standing is subject to both a facial attack (because the Complaint fails to make the necessary minimum allegations of injury-in-fact to an identified member) and to a factual attack (because there is a conflict between NJ CAR's position and the interests of a majority of Mazda's New Jersey dealers and because this case will require the participation of individual dealers).

## ARGUMENT

"Standing is a threshold jurisdictional requirement." *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). As the party invoking the Court's jurisdiction, NJ CAR "bears the burden of proving standing." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003); *see also Davis*, 824 F.3d at 346 ("When a factual challenge is made, the plaintiff will have the burden of proof that jurisdiction does in fact exist[.]").

NJ CAR alleges that it has standing as a "trade association" to bring this action "to protect the legal rights" and "interests of all of its members." [Compl. ¶¶ 1, 6.[4]] A trade association has standing to sue to protect the rights of its members only when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). This is what is commonly referred to as the "*Hunt* test."

---

[4] Because NJ CAR does not have a Mazda "franchise," and thus is not a Mazda "franchisee," it lacks standing to sue on its own behalf under the NJFPA. *See* N.J.S.A. 56:10-4 ("This act applies only…to a franchise for the sale of new motor vehicles…"); N.J.S.A. 56:10-10 ("Any franchisee may bring an action against its franchisor for violation of this act…").

\\DC - 029020/000018 - 12800270 v7

Based on the allegations in the Complaint and the evidence submitted with this motion, NJ CAR cannot satisfy the *Hunt* test.

## I. STANDING OF INDIVIDUAL MEMBERS

The first *Hunt* factor requires an association to show that at least one of its members would have standing to sue on its own. In federal court, the elements of standing for an individual plaintiff are well established: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Although the plaintiff must prove each of these elements, the Third Circuit has stressed that the "injury-in-fact element is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). This is also true for an association asserting standing on behalf of its members. To satisfy the injury in fact requirement at the pleading stage, an association must "make specific allegations establishing that at least one identified member has suffered or would suffer harm" resulting from the challenged action. *Pennsylvania Prison Soc'y v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *accord Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 86-87 (3d Cir. 1991) (it is the plaintiff's duty to "clearly and specifically set forth facts sufficient to satisfy [the] standing requirements.").

10

Here, the Complaint does not contain any allegations – let alone specific allegations – concerning the harm suffered by any member of NJ CAR as a result of the MBEP.   In fact, apart from a general allegation that NJ CAR's membership includes Mazda dealers, the Complaint does not "identify" any individual members of NJ CAR.  [*See* Compl. ¶¶ 1, 5.]  This deficiency is, in and of itself, a basis to dismiss NJ CAR's claims for lack of standing.  *See Pennsylvania Prison Soc'y*, 622 at 228; *Kessler Inst. For Rehabilitation, Inc. v. Mayor & Council of Borough of Essex Fells*, 876 F. Supp. 641, 656 (D.N.J. 1995) (dismissing association's claims on standing grounds where the association "failed to identify a single individual member" who had standing.).

Accordingly, the Complaint does not satisfy the first *Hunt* factor.

## II.   GERMANENESS

The second *Hunt* factor requires an association to show that the interests it seeks to protect in the litigation are germane to its purpose.  In the Third Circuit, when evaluating this factor, courts consider whether the interests the association seeks to promote in the litigation conflict with the interests of its members.  *See, e.g., Hosp. Council*, 949 F.2d at 88-89.  "[I]n the presence of serious conflicts of interests either among the members of an association or between an association and its members," associational standing should not be granted.  *See Polaroid Corp. v. Disney*, 862 F.2d 987, 999 (3d Cir.1988).

11

This lawsuit presents a serious conflict of interest between the Mazda dealers in NJ CAR's membership who are eligible for the MBEP payments and those who are not. If this lawsuit is successful, eligible Mazda dealers will lose the benefits they expect to receive in exchange for investments they have previously made. To be eligible for the "Brand Commitment" portion of the MBEP payments, dealers must have facilities that comply with Mazda's facility image program. As the Complaint itself alleges, the costs to dealers of modifying their facilities to comply with these kinds of image programs can be substantial, and dealers often will agree to modify their facilities only if they can "recover" a portion of those costs through promised financial support from their franchisor. [*See* Compl. ¶ 16.] If this lawsuit is successful, however, the MBEP payments would be immediately cut off, harming the Mazda dealers who have already incurred costs to modify their facilities in reliance on receiving those payments. Dealers who have not incurred these costs, of course, do not share this concern.

This lawsuit also presents a serious conflict of interest between the Mazda dealers who are eligible to receive MBEP payments and the non-Mazda dealer members of NJ CAR who compete with those Mazda dealers for new vehicle sales. The Complaint itself alleges that the top MBEP payment on the sale of a Mazda vehicle with an MSRP of $30,000 "comes to $1,950," which enhances the Mazda dealer's "ability to engage in intra-brand <u>and inter-brand competition</u>." [Compl.,

¶ 24 (emphasis added).]   It is obviously in the interests of the Mazda dealers to receive the MBEP payments to enhance their ability to engage in inter-brand competition, while it is the interests of the non-Mazda dealer members of NJ CAR to block those payments and thereby diminish the competitive ability of Mazda dealers with whom they compete for new vehicle sales.

The conflicts of interests described above are very serious and very real.  Of the sixteen (16) franchised Mazda dealers in New Jersey, three (3) are currently operating out of certified Retail Evolution facilities, and therefore are eligible to receive the highest tier of MBEP payments.  [Kaczmarek Decl. ¶ 9.]  Another eight (8) have signed agreements enrolling in Mazda's Retail Evolution Program.  [*Id.* ¶ 10.]   As a requirement of their enrollment in that program, those dealers have agreed to a timeline for building a certified Retail Evolution facility.  [*Id.* ¶¶ 7, 8, 10.]   In exchange, Mazda has agreed to hold in "escrow" the "incremental" payments they would have received as Retail Evolution dealers, to be released after they achieve certain construction milestones.  [*Id.* ¶ 13.]

Thus, at least 11 of the 16 Mazda dealers in New Jersey stand to benefit from the MBEP because they have already built a Retail Evolution facility or have enrolled in the Retail Evolution Program.  Putting an end to the MBEP – the aim of this litigation – would be contrary to their interests.  The Third Circuit has recognized that associational standing should be denied when the association's

position in the litigation is "contrary to the interests of a majority of its members." *See Contractors Ass'n of E. Pennsylvania, Inc. v. City of Philadelphia*, 945 F.2d 1260, 1266 (3d Cir. 1991). Here, this lawsuit is contrary to the interests of a majority of the members of NJ CAR who are franchised Mazda dealers (who are the only NJ CAR members from whom NJ CAR could derive standing to sue Mazda under the NJFPA in the first place). Given this significant conflict of interest, NJ CAR cannot satisfy the second *Hunt* factor.

## III.   PARTICIPATION BY INDIVIDUAL MEMBERS

The third *Hunt* factor requires an association to show that neither the "claim asserted" nor the "relief requested" requires the participation of its members in the lawsuit. Mazda acknowledges that the "relief requested" component of this factor can be satisfied where, as here, the complaint seeks declaratory or injunctive relief instead of damages. However, the third *Hunt* factor is not "automatically satisfied" whenever an association seeks declaratory or injunctive relief. *See Free Speech Coalition, Inc. v. Attorney Gen. United States*, 787 F.3d 142, 154 n.6 (3d Cir. 2015). Rather, the court must still "examine the claims asserted to determine whether they require individual participation." *Id.*[5]

---

[5]   In *New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*, 107 F. Supp. 2d 495, 501 n.5 (D.N.J. 1999), the court found that "the participation of individual dealers [was] not required in [NJ CAR's] action for injunctive relief" against a manufacturer's threat to impose a $400 per vehicle surcharge on all vehicles it sold to its New Jersey dealers if any of its New Jersey

Here, individual participation by New Jersey Mazda dealers will be necessary for NJ CAR to prove each of the statutory claims it has asserted. As the Third Circuit has cautioned in connection with this component of the *Hunt* test, "conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002). NJ CAR's claims require precisely the sort of "fact-intensive-individual inquiry" the Third Circuit has warned against.

NJ CAR's first claim is that the MBEP violates N.J.S.A 56:10-7.4(h), which was added to the NJFPA in 2011 and under which a franchisor may not "fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus, and on reasonable, good faith and non-discriminatory allocation and availability terms." N.J.S.A 56:10-7.4(h). While there do not appear to be any published decisions interpreting N.J.S.A. 56:10-7.4(h), the Complaint alleges that its purpose is to prohibit "price

---

dealers sought increased warranty reimbursement under the NJFPA. While the court did not explain why individual dealer participation was not necessary in connection with the "claims asserted," there the claim was that the manufacturer's threat was in and of itself a violation of the NJFPA. Moreover, the threatened $400 surcharge obviously would cause similar harm to all of the manufacturer's New Jersey dealers. In any event, the court did not hold that the third prong of the *Hunt* test is automatically satisfied in any action for injunctive relief, and any such ruling would be inconsistent with the Third Circuit's more recent decision in *Free Speech Coalition*, 787 F.3d at 154.

differentials between dealers such that one dealer in New Jersey will have a <u>lower</u> <u>effective cost</u> for a similarly equipped vehicle than another dealer." [Compl. ¶ 11 (emphasis added).] Such differentials are prohibited, the Complaint alleges, because "the higher per vehicle costs incurred by [some] dealerships put them at a disadvantage when competing for customers over price." [*Id.* ¶ 13.]

In order to determine whether the MBEP in fact causes price differentials that harm dealers who do not earn MBEP payments, the plaintiff will need to show that the "per vehicle effective costs" for the dealers who receive MBEP payments are actually lower when the costs they incurred to satisfy the MBEP's criteria are taken into account. This will require a "fact-intensive-individual inquiry" comparing the costs of MBEP compliance with the benefits received by the compliant dealers, as demonstrated by cases from other jurisdictions having similar price discrimination statutes. *See, e.g., Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*, 232 F.Supp.3d 813, 827 & n.20 (E.D. Va. 2017) (denying VW dealer's motion for summary judgment where VW presented evidence that incentive payments under VW's program did not reduce the price of vehicles because of "the costs a dealer must incur to satisfy applicable incentive conditions"); *Brentlinger Enterprises v. Volvo Cars of North America, LLC*, 2016 WL 4480343 at *6 (S.D. Ohio Aug. 25, 2016) (granting summary judgment to Volvo and rejecting plaintiff's claim that incentives paid to competing "exclusive"

16

Volvo dealer put plaintiff at competitive disadvantage because competitor "presumably . . . incurr[ed] the substantial costs" of complying with exclusivity requirement to earn incentives).

Moreover, if this case were to move forward, the Court would have to decide whether there is a "functional availability" defense available under N.J.S.A. 56:10-7.4(h).  While the statute does not expressly provide for this defense, the courts have read such a defense into the Robinson-Patman Act (the "RPA"), the federal price discrimination statute, even though that statute also does not expressly provide for such a defense. *See Brentlinger Enterprises*, 2016 WL 2280343 at *4 ("Although not codified in the statute, a 'functional availability' defense to the RPA has emerged from the case law surrounding the RPA.").  The reasoning behind the defense is that, if the offered benefit is functionally available to all dealers, "'either no price discrimination has occurred, or . . . the discrimination is not the cause of [plaintiff's] injury."  *Id*. at *4 (quoting *Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F. 2d 101, 105 (6th Cir. 1981)).  The reasoning that led the federal courts to read this defense into the RPA applies to N.J.S.A. 56:10-7.4(h) as well, and if the Court were to rule that the defense is available it would require a fact-intensive-individual inquiry into whether the MBEP payments are functionally available to those Mazda dealers who have chosen not to comply with the MBEP criteria.

NJ CAR's second claim is that the MBEP violates N.J.S.A. 56:10-7.4(j),

which makes it unlawful for a franchisor:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated, including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor. <u>The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid</u>.

N.J.S.A. 56:10-7.4(j) (emphasis added). The Complaint alleges that the MBEP

violates this provision by regulating the manner in which dealers utilize their

facilities and/or by imposing a "penalty" on and/or denying a "benefit" to dealers

who do not use their facilities in a manner consistent with MBEP criteria. Mazda

contends, on the other hand, that the program is covered by the last sentence of the

statute, because compliance with the MBEP criteria is a matter of voluntary

agreement between Mazda and the dealer pursuant to which Mazda pays the dealer

separate and valuable consideration, i.e., the MBEP payments earned for

complying with the program criteria.  Mazda in fact has written agreements with its New Jersey dealers concerning the use of their facilities, as well as written agreements with the New Jersey dealers who have agreed to establish Retail Evolution facilities.  [Kaczmarek Decl. ¶¶ 4, 5, 10 and Ex. 1.]  Individual dealer participation in this action will be necessary to determine whether these are voluntary agreements in which Mazda has paid separate and valuable consideration within the meaning of the final sentence of N.J.S.A. 56:10-7.4(j).

NJ CAR's third claim is that the MBEP violates N.J.S.A. 56:10-7.4(l), which makes it unlawful for a franchisor:

> To require or attempt to require a motor vehicle franchisee to relocate his franchise or to implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle.  This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized.

N.J.S.A. 56:10-7.4(l). NJ CAR alleges that the MBEP violates this statute because "it denies a benefit (a per vehicle incentive) to dealers who do not provide Mazda with exclusive, image compliant facilities despite the fact that Mazda has presented its dealers with no evidence that the cost of such facilities can be financially justified." [Compl., ¶ 28.]  Given the claim as framed by NJ CAR itself, and the statutory defense set forth in N.J.S.A. 56:10-7.4(l), this claim will obviously require individual participation by Mazda dealers to determine whether "the cost of such facilities can be financially justified" with respect to each individual Mazda dealer.

Finally,  Mazda is entitled to assert affirmative defenses to NJ CAR's claims that will require the participation of individual New Jersey Mazda dealers.  In particular, Mazda can invoke N.J.S.A. 56:10-9, which allows a dealer's "substantial noncompliance" with the "requirements imposed by the franchise and other agreements ancillary or collateral thereto" to "serve as a complete defense to any action brought under the NJFPA." *Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 119 F. App'x 419, 423–24 (3d Cir. 2005) (citations omitted).  Whether any particular Mazda dealer is substantially non-compliant with the requirements of its franchise and other agreements with Mazda is a fact-intensive inquiry requiring individual participation by that Mazda dealer.

20

In sum, the claims asserted by NJ CAR, and the defenses likely to be asserted by Mazda, will require the participation of NJ CAR's individual members who are Mazda dealers.  As a result, NJ CAR cannot satisfy the third *Hunt* factor.

## **CONCLUSION**

The failure of an association to satisfy any one of the three *Hunt* factors is enough to defeat associational standing.   In this case, NJ CAR fails to satisfy all three of them.   For the foregoing reasons, Mazda respectfully submits that the Complaint should be dismissed for lack of standing.

Dated: November 8, 2018

/s/ *Brian D. Sullivan*
Brian D. Sullivan
FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
Tel:  (973) 994-7525
Email: bsullivan@foxrothschild.com

John J. Sullivan
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP

21

555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations*

22