# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------X
                    :

NEW JERSEY COALITION OF      :
AUTOMOTIVE RETAILERS,       :        NO. 3:18-cv-14563
INC., a non-profit New Jersey    :
Corporation,                  :    (Document Filed Electronically)
                    :

        Plaintiff,        :
                    :

v.                        :

MAZDA MOTOR OF AMERICA,   :
INC.,                      :
                    :

        Defendant.      :
------------------------------------------------X

---

## BRIEF ON BEHALF OF PLAINTIFF NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC. IN OPPOSITION TO DEFENDANT MAZDA MOTOR OF AMERICA, INC.'S MOTION TO DISMISS

---

                          WILENTZ, GOLDMAN & SPITZER, P.A.
                          90 Woodbridge Center Drive
                          Suite 900, P.O. Box 10
                          Woodbridge, New Jersey 07095
                          Attorneys for Plaintiff, New Jersey Coalition
                          of Automotive Retailers, Inc.

MARVIN J. BRAUTH, ESQ.
DANIEL J. KLUSKA, ESQ.
      Of Counsel and On the Brief

PETER L. SCHENKE, ESQ.
      On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ...................................................................... 4

A.   The Parties. ................................................................................ 4

B.   The New Jersey Legislature Enacted And Has Amended The New
     Jersey Franchise Practices Act To Protect Franchisees From Abusive
     Practices Of Franchisors. ........................................................... 6

C.   N.J.S.A. 56:10-7.4(h). ............................................................... 8

D.   N.J.S.A. 56:10-7.4(l). ................................................................ 8

E.   N.J.S.A. 56:10-7.4(j). ................................................................ 9

F.   Mazda Implements A Brand Experience Program That Creates Price
     Differentials Through Discounts Or Bonuses And Denies Benefits To
     Mazda Dealers That Do Not Comply With Certain Facility
     Obligations. ............................................................................... 10

G.   At Least Two Mazda Dealers Have Sustained And Continue To
     Sustain Harm Caused By The Implementation Of The MBEP. ......... 13

H.   NJ CAR Meets With New Jersey Mazda Dealers And Decides To File
     The Present Action Alleging That The Mazda Brand Experience
     Program Violates The Franchise Practices Act. ............................. 15

STANDARD OF REVIEW ................................................................... 17

LEGAL ARGUMENT ......................................................................... 18

MAZDA'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE NJ
CAR HAS STANDING TO BRING THIS ACTION ................................. 18

A.   NJ CAR Members Have Standing To Sue Mazda For Violations Of
     The FPA In Their Own Right. ...................................................... 19

B.   The Interests That NJ CAR Seeks To Protect Are Germane To The
     Organization's Purpose. ............................................................. 23

i

## TABLE OF CONTENTS (cont'd)

**PAGE**

C.    NJ CAR'S Lawsuit Seeking Declaratory and Injunctive Relief Does Not Require Individual Member Participation.....................................26

CONCLUSION.........................................................................................................29

ii

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Bosland v. Warnock Dodge, Inc.,
  197 N.J. 543 (2009) ........................................................................6

Comité de Apoyo a los Trabajadores Agrícolas v. Perez,
  148 F. Supp. 3d 361 (D.N.J. 2015) .................................................27

Constitution Party of Pa. v. Aichele,
  757 F.3d 347 (3d Cir. 2014).............................................................19

Contractors Ass'n of E. Pa., Inc. v. City of Philadelphia,
  945 F.2d 1260 (3d Cir. 1991).......................................................24, 26

Davis v. Wells Fargo,
  824 F.3d 333 (3d Cir. 2016).............................................................18

Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld,
  291 F. Supp. 2d 269 (D.N.J. 2003), rev'd and remanded sub nom.,
  390 F.3d 219 (3d Cir. 2004), rev'd and remanded sub nom., 547 U.S. 47
  (2006), aff'd sub nom., 446 F.3d 1317 (3d Cir. 2006) ...................21, 23

Free Speech, Inc. v. Attorney General U.S.,
  787 F.3d 142 (3d Cir. 2015).............................................................28

Hospital Council of W. Pa. v. City of Pittsburgh,
  949 F.2d 83 (3d Cir. 1991)...............................................................27

Hunt v. Wash. Apple Adver. Comm'n,
  432 U.S. 333 (1977)................................................................. passim

Kessler Inst. For Rehabilitation v. Mayor & Council of Essex Fells,
  876 F. Supp. 641 (D.N.J. 1995) ....................................................23, 24

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992).........................................................................20

Maertin v. Armstrong World Indus.,
  241 F. Supp. 2d 434 (D.N.J. 2002) .................................................18

NJ CAR v. DaimlerChrysler Motors Corp.,
  107 F. Supp. 2d 495 (D.N.J. 1999) ...................................................6

Pennsylvania Prison Soc. v. Cortes,
  622 F.3d 215 (3d Cir. 2010).............................................................27

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Pennsylvania Psychiatric Soc. v. Green Spring Health Servs.,
280 F.3d 278 (3d Cir. 2002)..................................................................29

Summers v. Earth Island Inst.,
555 U.S. 488 (2009)............................................................................22

Warth v. Seldin,
422 U.S. 490 (1975)............................................................................20

Westfield Ctr. Serv. v. Cities Serv. Oil Co.,
158 N.J. Super. 455 (Ch. Div.), supplemented,
162 N.J. Super. 114 (Ch. Div. 1978), aff'd and remanded, 172 N.J. Super. 196
(App. Div. 1980), aff'd, 86 N.J. 453 (1981) .........................................7

**Statutes**

N.J.S.A. 56:10-2........................................................................................6

N.J.S.A. 56:10-3(c) ...............................................................................5, 6

N.J.S.A. 56:10-7.4(h).......................................................................8, 17, 28

N.J.S.A. 56:10-7.4(j).......................................................................10, 18, 28

N.J.S.A. 56:10-7.4(l).......................................................................10, 18, 28

**Rules**

F.R.C.P. 12(b)(1) ....................................................................................18

F.R.C.P. 17(a) ........................................................................................19

**Other Authorities**

N.J. Assem. Floor State., A.B. 3722, 1/20/2011................................7, 8, 9

P.L. 1971 c.356 ........................................................................................6

P.L. 2011 c.66, § 2 ...................................................................................7

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("NJ CAR") submits this brief in opposition to defendant Mazda Motor Company of America, Inc.'s ("Mazda") motion to dismiss.  NJ CAR's complaint seeks a declaratory judgment: (1) that the Mazda Brand Experience Program 2.0 (the "MBEP"), on its face, violates the New Jersey Franchise Practices Act ("FPA"); and (2) that it is therefore unlawful for Mazda to implement the MBEP in New Jersey.  NJ CAR also seeks a permanent injunction prohibiting Mazda from applying the MBEP in New Jersey.  NJ CAR has brought this action on behalf of its members, the Mazda dealers in New Jersey subject to and currently being injured by Mazda's violations of the FPA.

The FPA was enacted in 1971 in response to the unequal bargaining power that exists in the franchisor-franchisee relationship.  Originally enacted to protect franchisees against unreasonable terminations and the refusal to permit the sale of franchises, the Legislature has since amended the FPA on many occasions to combat additional franchisor abusive practices as the franchisor-franchisee relationship has evolved.  As pertains to the pending matter, in 2011, the Legislature amended the FPA to provide motor vehicle franchisees with a range of protections from economic coercion by franchisors, including provisions: (1) prohibiting franchisors from offering to sell or selling similarly equipped motor

vehicles to their dealers at different prices through differentials in bonus, credit, allowance or discount; (2) prohibiting franchisors from requiring franchisees to undertake financially unjustified facilities modifications and from denying benefits to those franchisees who do not make them; and (3) prohibiting franchisors from interfering with a franchisee's utilization of his or her facilities, most particularly by prohibiting a franchisee's use of a suitably sized facility for more than one franchise (dualling) and from denying benefits to dealers who dual.   The Legislature recognized that these amendments were necessary because the proscribed franchisor practices promote unfair competition, are coercive and jeopardize the ongoing viability of non-complying dealers, all of which disserves the public interest.

Earlier this year, Mazda announced the implementation of a new program for Mazda dealers that it coined the Mazda Brand Experience Program 2.0 ("MBEP").  The MBEP offers dealers multi-tiered, per-vehicle discounts off the dealer price for a vehicle, in the form of a percentage off the Manufacturer Retail Sales Price ("MSRP") of the vehicle, based on the extent of a dealer's compliance with a list of criteria established by Mazda.  Qualification for the different levels of bonus depends on whether a Mazda dealer, *inter alia*: (1) constructs or provides an exclusive Mazda facility; (2) provides a facility incorporating all Mazda design image elements; (3) employs a dedicated, exclusive Mazda general manager; and

2

(4) provides a customer service experience that achieves certain grades. Pursuant to the MBEP, the more criteria a dealer satisfies, the greater the discount the dealer receives per vehicle sold.

The MBEP violates the three statutory provisions mentioned above and results in a wholly unlevel playing field among dealers, to the detriment of Mazda dealers in New Jersey and the public interest. Dealers that receive greater discounts are able to sell vehicles at lower prices, leaving dealers who do not or only partially comply with the criteria vulnerable in the marketplace. Such price differentials between retailers of the same identical product have been found to be anti-competitive at all levels, weaken the dealers that do not get the full extent of them, and can adversely affect the public interest through its effects on employment at and tax revenues from dealers that must limit or terminate operations and on the convenient, local availability of warranty and recall service for Mazda vehicles through a strong network of Mazda dealers.

In lieu of an answer to NJ CAR's complaint, Mazda filed a motion seeking to dismiss the complaint, not on the merits of NJ CAR's claims, but rather on the ground that NJ CAR lacks associational standing to pursue its claims on behalf of its Mazda dealer members. NJ CAR, however, readily satisfies the three criteria established by the United States Supreme Court to determine whether an organization has standing to pursue claims on behalf of members. First, NJ CAR's

members have standing to sue Mazda in their own right because the alleged violations of the FPA are invasions of their legally-protected rights. Although it is not so required, NJ CAR has even identified its aggrieved members including particular members that have been and will continue to be harmed by the implementation of the MBEP. Second, the promotion of fair competition and protection from onerous and abusive business practices that NJ CAR is seeking to protect are germane to its purpose of promoting the interests of its motor vehicle franchisee members. Third, NJ CAR's claims and the declaratory and injunctive relief it seeks here do not require the participation of individual members in the lawsuit; rather, those claims require merely a side-by-side comparison of the MBEP and the FPA to determine if the FPA's proscriptions have been violated.

Accordingly, this Court should deny Mazda's motion to dismiss.

## STATEMENT OF FACTS

### A.   The Parties.

Plaintiff, NJ CAR, a New Jersey not for profit corporation founded in 1918, is a trade association consisting of franchised new motor vehicle dealers in the State of New Jersey. Certification of James B. Appleton dated November 30, 2018 ("Appleton Cert."), ¶2. There are currently sixteen Mazda franchised dealers in New Jersey, each of which is a member of NJ CAR and each of which is a "franchisee" as that term is defined in the FPA. Id., ¶6; N.J.S.A. 56:10-3(c).

NJ CAR serves the interests of its motor vehicle dealer members in several different ways: (1) it promotes the interests of franchised new car and truck retailers with governmental entities, the media and the public at large; (2) it provides its members with information on statutory, regulatory, and legislative matters affecting the interests of motor vehicle retailers; (3) it offers educational and training programs to employees of its members on best business practices, to enhance their professionalism and expertise and to promote compliance with law; and (4) it offers services to its members to enhance their businesses and that comply with legal requirements.  Appleton Cert., ¶3.

In addition, NJ CAR also seeks to protect the interests of motor vehicle consumers by (1) providing them with comprehensive information related to their vehicle purchases; (2) promoting fair competition among its dealer members, (3) ensuring consumer access to multiple fairly competing dealerships throughout the State; (4) facilitating dialogue between consumers and dealerships in the event of a dispute; and (5) prioritizing the safety of drivers by ensuring that multiple dealerships can service their vehicle and address any safety recalls.  Id., ¶4.

NJ CAR also actively represents New Jersey motor vehicle dealers in legislative and regulatory matters, (id., ¶5), and periodically participates as a party or as *amicus curiae* in litigation regarding the interests of its membership.  E.g., NJ CAR v. DaimlerChrysler Motors Corp., 107 F. Supp. 2d 495 (D.N.J. 1999);

Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009).  In this case, it appears as a

plaintiff on behalf of its Mazda dealer members.

Defendant, Mazda, a California corporation founded in 1970, manufactures

and markets motor vehicles for sale through dealers in the State of New Jersey and

throughout the United States.   Appleton Cert., ¶¶7-8.   Mazda's line of vehicles

includes sedans, hatchbacks, crossovers, SUVs and sports cars.  Id., ¶8.  Mazda is a

"franchisor" as that term is defined in the FPA.  N.J.S.A. 56:10-3(c).

**B.   The New Jersey Legislature Enacted And Has Amended The
New Jersey Franchise Practices Act To Protect Franchisees
From Abusive Practices Of Franchisors.**

In 1971, the New Jersey Legislature enacted the FPA to protect franchisees

from franchisor abuses arising from the unequal bargaining power in the

franchisor-franchisee relationship.   P.L. 1971 c.356; N.J.S.A. 56:10-2.   In the

Statement accompanying the original bill, Assembly Bill 2063 (1971), the

Legislature explained the rationale for this critical legislation:

> New Jersey would do the same in this bill which, through
> the courts, would rule out arbitrary and capricious
> cancellation of franchises while preserving the right of
> franchisors to safeguard their interests through the
> application of clear and nondiscriminatory standards.
> The bill would protect the substantial investment tangible
> and intangible of both parties in the various franchises.  It
> would rule out economic coercion as a business tactic in
> this most sensitive field.
>
> The New Jersey Legislature has been asked many times
> in the past to deal on a piecemeal basis with various

> problems growing out of the franchise relationship.  This
> bill would provide a comprehensive statutory formula for
> resolving a wide range of questions growing out of the
> franchise relationship.

Westfield Ctr. Serv. v. Cities Serv. Oil Co., 158 N.J. Super. 455, 471 (Ch. Div.),

supplemented, 162 N.J. Super. 114 (Ch. Div. 1978), aff'd and remanded, 172 N.J.

Super. 196 (App. Div. 1980), aff'd, 86 N.J. 453 (1981).

Since enacting the FPA, the Legislature has amended it on multiple

occasions particularly to address the continuing disparity in bargaining power in

the automotive franchisor-franchisee relationship and rectify specific abusive

franchisor tactics in the motor vehicle sales industry.

Specifically, in 2011, the Legislature amended the FPA to "[define] the

relationship and responsibilities between motor vehicle franchisors and motor

vehicle franchisees."  P.L. 2011 c. 66, § 2; N.J. Assem. Floor State., A.B. 3722,

1/20/2011.  The Legislature explained that the amendments were necessary to

modernize the FPA to address specific abuses of power that had recently arisen:

> Over the years, the "Franchise Practices Act" has been
> amended to keep pace with changing market conditions
> and to address new threats to the consumer and the public
> interest in the franchise system.  Recent developments in
> the auto industry have highlighted the unequal bargaining
> position of dealers vis-a-vis manufacturers.  Dozens of
> New Jersey new car dealerships and thousands of
> dealership jobs have been lost. New Jersey consumers
> and the economy have suffered as a result.

7

> This bill is intended to protect New Jersey new car dealerships and their employees from further economic dislocation imposed by automakers. The bill is designed to level the playing field on which auto franchisees and auto franchisors do business, and to protect the consumer and the public interest in a strong and secure franchise system of responsible local businesses.

N.J. Assem. Comm. State., A.B. 3722, 1/20/2011.

### C.   N.J.S.A. 56:10-7.4(h).

Among the 2011 amendments, the Legislature amended N.J.S.A. 56:10-7.4(h) to require that motor vehicle franchisors sell all comparably equipped motor vehicles to all dealers in New Jersey at the same price without differential in discount, allowance, credit or bonus.  P.L. 2011 c. 66, § 2.  Specifically, the FPA prohibits franchisors "to fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees *at the same price* for a comparably equipped motor vehicle, on the same terms, with *no differential* in discount, allowance, credit or bonus." N.J.S.A. 56:10-7.4(h) (emphasis added).

### D.   N.J.S.A. 56:10-7.4(l).

At the same time, the Legislature amended N.J.S.A. 56:10-7.4 to proscribe actions by motor vehicle franchisors that compel franchisees to undertake financially unjustified facilities modifications or that punish or deny benefits to dealers that do not comply with such demands.  N.J. Assem. Comm. State., A.B.

3722, 1/20/11.  Specifically, a motor vehicle franchisor violates the FPA when it

seeks:

> *To require or attempt to require a motor vehicle franchisee to relocate his franchise or to implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless* the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) *the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years*; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle.   This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized.

N.J.S.A. 56:10-7.4(l) (emphasis added).

### E.   N.J.S.A. 56:10-7.4(j).

The Legislature also amended N.J.S.A. 56:10-7.4 in 2011 to bar franchisors

from requiring their dealers to use their facilities exclusively for the franchisor's

9

brand even where the facility has ample space for multiple brands (dualling).  P.L.

2011 c. 66, § 2.  Specifically, the FPA prohibits a motor vehicle franchisor:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt *to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities* at which a motor vehicle franchise is operated, *including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities*, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor. The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid.

N.J.S.A. 56:10-7.4(j) (emphasis added).

**F.    Mazda Implements A Brand Experience Program That Creates Price Differentials Through Discounts Or Bonuses And Denies Benefits To Mazda Dealers That Do Not Comply With Certain Facility Obligations.**

Despite these laws, in 2018, Mazda introduced the Mazda Brand Experience

Program 2.0 ("MBEP") and began implementing it on July 3, 2018.  Appleton

Cert., ¶9 & Exh. B.  The MBEP establishes an elaborate two-tiered pricing regime

that enables Mazda dealers to earn discounts or bonuses for each vehicle a dealer

sells based on its compliance with certain conditions.  Id., ¶10 & Exh. B.   The MBEP offers these tiered discounts or bonuses as a percentage of the Manufacturer's Suggested Retail Price ("MSRP") on a per vehicle basis ranging from 6.5% to 0% depending on the degree of compliance with the MBEP.  Id., ¶11 & Exh. B.  Mazda is only guaranteeing payments under the MBEP for compliance therewith for a four-year period.  Id., ¶21 & Exh. B.

To qualify for any payments under the MBEP, a Mazda dealer must achieve several base qualifiers.  Those Mazda dealers that achieve all of the base qualifiers are eligible for two discounts.  Id., ¶12 & Exh. B.  One is a brand commitment element payment based on facilities and other requirements that provides up to a 4.5% discount.  Id., ¶13 & Exh. B.  Specifically, Mazda dealers that have an exclusive Mazda facility that incorporates all Mazda required image elements, satisfies other "base elements" and employs a Dedicated Exclusive General Manager are designated as Retail Evolution ("RE") dealers that qualify for the full 4.5% brand commitment element discount or bonus.  Id., ¶14 & Exh. B.  Mazda dealers that satisfy all of these facility elements but that do not employ a Dedicated Exclusive General Manager are designated as exclusive dealers that qualify for 2.8% of the 4.5% brand commitment element discount or bonus.  Id., ¶15 & Exh. B.  Mazda dealers that have an exclusive Mazda showroom that does not incorporate all Mazda required image elements are designated as exclusive

11

showroom dealers that only qualify for 1.0% of the 4.5% brand commitment element discount or bonus.  Id., ¶16 & Exh. B.  Mazda dealers that do not have an exclusive Mazda facility are designated as dual dealers that do not qualify for any portion of the 4.5% brand commitment element discount or bonus.  Id., ¶17 & Exh. B.

The MBEP also contains a customer experience element payment based on Mazda's calculation of "customer experience" at the dealership.  It provides up to a 2.0% discount off MSRP.  Id., ¶18 & Exh. B.  Although RE dealers, exclusive dealers, exclusive showroom dealers and dual dealers all are eligible for this discount, only those Mazda dealers that meet the customer experience requirements each quarter receive the 2.0% customer experience element discount for that quarter.  The others receive nothing.  Id., ¶19 & Exh. B.

In sum, Mazda dealers have the *potential* to earn the following discounts (but some dealers will receive less or no discount at all):

| Type of Mazda Dealer | MBEP Discount |
| --- | --- |
| RE Dealer | Up to 6.5% of MSRP per vehicle sold |
| Exclusive Dealer | Up to 4.8% of MSRP per vehicle sold |
| Exclusive Showroom Dealer | Up to 3.0% of MSRP per vehicle sold |
| Dual Dealer | Up to 2.0% of MSRP per vehicle sold |

Id., ¶20 & Exh. B.  For comparison purposes, on a vehicle with an MSRP of $30,000, a 6.5% discount comes to $1,950 per vehicle giving such dealers a significant price advantage over dealers that receive lesser or no discounts.  For

example, the most an exclusive dealer can receive is $1,440; an exclusive showroom dealer $900 and a dual dealer $600. Dealers that do not qualify for the Customer Experience discount would receive $600 less.

### G. At Least Two Mazda Dealers Have Sustained And Continue To Sustain Harm Caused By The Implementation Of The MBEP.

All Mazda dealers are impacted by Mazda's frontal violation of the laws of New Jersey and of the treadmill they are put on to constantly try to qualify for the discounts. More specifically, Maxon Auto Enterprises d/b/a Maxon Mazda ("Maxon") is a Mazda dealer in Union, New Jersey and a member of NJ CAR. Certification of Michael J. Ciasulli dated November 30, 2018 ("Ciasulli Cert."), ¶¶2-3. Maxon is presently a dual dealer, and thus does not qualify for any portion of the 4.5% brand commitment element discount or bonus. Id., ¶6. As a result, Maxon has already lost out on thousands of dollars in discount or bonus payments and on the opportunity to compete for sales with qualifying dealers by lowering prices based on receipt of those discounts or bonuses. Id., ¶7.

In order to construct an exclusive Mazda facility and qualify for at least a portion of the 4.5% brand commitment element discount or bonus, Maxon would need to first acquire property owned by others adjacent to its dealership to satisfy Mazda's acreage requirement (which it may not even be able to buy) and then undertake the construction of a much larger facility. Id., ¶8. Maxon would need to spend approximately $12-14 million to take these extraordinary actions, monies

that simply are not available to Maxon at this time. Id., ¶9.  Additionally, Maxon

would not make a reasonable return on such an investment by taking such action

because it would not generate profits from additional sales and recoup discounts or

bonuses in an amount even approaching $12-14 million during the four-year period

during which these discounts or bonuses are guaranteed. Id., ¶10. Mazda never

provided Maxon with any justification for making the modifications necessary to

qualify for any portion of the 4.5% brand commitment element discount or bonus.

Id., ¶11.

SIL, LLC d/b/a Irwin Mazda ("Irwin") is a Mazda dealer in Freehold

Township, New Jersey and a member of NJ CAR.  Certification of Shelly Irwin

LoCascio dated December 3, 2018 ("LoCascio Cert."), ¶¶2-3.  Irwin is presently an

exclusive showroom dealer that only qualifies for 1.0% of the 4.5% brand

commitment element discount or bonus, and has already lost out on thousands of

dollars in discount or bonus payments and on the opportunity to compete for sales

with qualifying dealers by lowering prices based on receipt of those discounts or

bonuses. Id., ¶¶5-6.

In order to qualify for a greater portion of the 4.5% brand commitment

element discount or bonus, Irwin would need to completely remove the existing

facade of the facility and replace it with different materials, and entirely renovate

the interior of the facility to comply with Mazda's "jewel case" design. Id., ¶7.

14

Irwin cannot renovate the interior of its facility into a "jewel case" design because Freehold will not permit it. Id., ¶9. Consequently, Irwin will never be eligible for any percentage beyond 1.0% of the 4.5% brand commitment element discount or bonus under the MBEP. Id., ¶10. Even if Irwin could comply with all of the MBEP requirements, Irwin would not make a reasonable return on such an investment by taking such action because it would not generate profits from additional sales and recoup discounts or bonuses in an amount nearing the amounts needed to have the renovations made during the four-year period during which these discounts or bonuses are guaranteed. Id., ¶11. Mazda also never provided Irwin with any justification for making the modifications necessary to qualify for any larger portion of the 4.5% brand commitment element discount or bonus. Id., ¶12.

### H. NJ CAR Meets With New Jersey Mazda Dealers And Decides To File The Present Action Alleging That The Mazda Brand Experience Program Violates The Franchise Practices Act.

After informally discussing Mazda's creation and implementation of the MBEP with Mazda dealers in New Jersey, NJ CAR formally met with representatives of several Mazda dealer members to discuss the legality of the program and its impact on their dealerships and ability to compete. Appleton Cert., ¶¶23-24. Maxon, Irwin and other dealers voiced their concern that the MBEP violated their rights under the FPA and would significantly impact their

businesses and hamper their ability to fairly compete.  Id., ¶25; Ciasulli Cert., ¶13;

LoCascio Cert., ¶15.  Other Mazda dealers, those in a position to comply with the

MBEP's eligibility requirements, indicated that they could take advantage of the

offered discounts or bonuses.  Appleton Cert., ¶26.  None of the dealers present at

the meeting expressed the thought that multi-tiered price differentials in general is

a good idea or that manufacturers should be free to violate established New Jersey

law.  Id., ¶27.

Shortly after the meeting with Mazda dealers, James Appleton, the President

of NJ CAR, consulted with and discussed the issues raised by the implementation

of the MBEP with members of NJ CAR's Executive Committee and with the

Chairman of the Executive Committee, Rob Larson.   Mr. Larson subsequently

advised Mr. Appleton that the Executive Committee would defer to Mr. Appleton

as to whether NJ CAR should institute litigation against Mazda for implementing

the MBEP in New Jersey in violation of the FPA.  Id., ¶29.  In accordance with the

By-Laws, which grant authority to Mr. Appleton to decide to file lawsuits on NJ

CAR's own behalf or on behalf of its members, Mr. Appleton decided that NJ

CAR would file a lawsuit against Mazda to prevent the continuing implementation

of the MBEP.  Id., ¶¶28, 30 & Exh. C.

Thus, on October 2, 2018, NJ CAR filed the instant lawsuit seeking a

declaratory judgment that the MBEP violates the FPA on its face, and that Mazda's

implementation of the MBEP in the State of New Jersey is thus unlawful.  NJ CAR

also seeks an injunction restraining Mazda from continuing to apply the MBEP in

New Jersey.  Id., Exh. D.  NJ CAR contends that the MBEP violates the three

provisions of the FPA quoted above:

- The MBEP's provision of per-vehicle discounts to Mazda dealers based on their level of achievement of certain criteria creates vehicle price differentials up to 6.5% of the MSRP per vehicle among dealers in violation of N.J.S.A. 56:10-7.4(h);

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive, image-compliant facility, notwithstanding Mazda's failure to even attempt to demonstrate in the MBEP that the costs of such facilities can be justified by Mazda dealers, or to offer exemptions to dealers who cannot reasonably comply, violates N.J.S.A. 56:10-7.4(l); and

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive facility but rather use their facilities for multiple brands (dual) violates N.J.S.A. 56:10-7.4(j).

Id., Exh. D at ¶28.

## STANDARD OF REVIEW

Under F.R.C.P. 12(b)(1), a defendant may bring a motion to dismiss on the

basis that the Court lacks subject-matter jurisdiction over the action filed by the

plaintiff.  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be

either a facial or factual attack."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir.

2016).  Where the defendant is attacking subject-matter jurisdiction on the face of

the complaint, "the court must accept as true all material allegations of the

17

complaint and construe that complaint in favor of the non-party." Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 445 (D.N.J. 2002). "The court's focus must not be on whether the factual allegations would entitle the plaintiff to relief, but instead should be on whether this Court has jurisdiction to hear the claim and grant relief." Ibid. Where the defendant is attacking subject-matter jurisdiction because the true facts are different from those alleged, "a court may weigh and consider evidence outside the pleadings." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). "A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted." Ibid.

## LEGAL ARGUMENT

### MAZDA'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE NJ CAR HAS STANDING TO BRING THIS ACTION

Mazda's motion to dismiss should be denied because NJ CAR has standing to prosecute the controversy before the Court as a representative of its Mazda dealer members in New Jersey. An association has standing to bring claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); F.R.C.P. 17(a). As set forth

below, NJ CAR satisfies all of these criteria, and accordingly, is entitled to prosecute this action on behalf of its Mazda dealer members in New Jersey.

### A.   NJ CAR Members Have Standing To Sue Mazda For Violations Of The FPA In Their Own Right.

NJ CAR satisfies the first <u>Hunt</u> factor as its Mazda dealer members in New Jersey have standing to pursue claims against Mazda for violations of the FPA in their own right.  The "irreducible constitutional minimum of standing" requires that (1) "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 <u>U.S.</u> 555, 560-61 (1992).

Here, each of the sixteen New Jersey Mazda dealers NJ CAR represents has suffered an "injury in fact;" that is, the invasion of its legally protected rights under the FPA.  "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." <u>Warth v. Seldin</u>, 422 <u>U.S.</u> 490, 500 (1975).  Indeed, "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing

to sue even where the plaintiff would have no judicially cognizable injury in absence of statute." Id. at 514.

Moreover, in its motion papers Mazda does not and cannot dispute that NJ CAR's Mazda dealer members meet the second and third standing criteria under Lujan. The violation of NJ CAR's members' rights under the FPA is unquestionably directly traceable to Mazda's implementation of the MBEP and was not caused by the action of some third party not before the Court. And, NJ CAR's members' injuries can be redressed by a favorable decision declaring that the MBEP violates the FPA and enjoining Mazda from continuing to implement it in New Jersey. Thus, each of the New Jersey Mazda dealers has standing to sue in its own right.

Notwithstanding the foregoing, Mazda argues that NJ CAR lacks standing because it had not identified any specific member harmed by the implementation of the MBEP. NJ CAR, however, is not required to identify such specific members. In a case directly on point, the court in Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld, 291 F. Supp. 2d 269 (D.N.J. 2003), rev'd and remanded sub nom., 390 F.3d 219 (3d Cir. 2004), rev'd and remanded sub nom., 547 U.S. 47 (2006), aff'd sub nom., 446 F.3d 1317 (3d Cir. 2006) held that an association has standing to assert claims on behalf of its members even where such members' identities are not disclosed. There, an association of law schools and law faculties

filed a lawsuit on behalf of unidentified law school members seeking a declaration that the Solomon Amendment was unconstitutional. Id. at 274. The association's membership, with few exceptions, was kept secret. Id. at 275. The court found that even though the association did not identify members in its complaint or supporting certification, it nevertheless met the first Hunt factor because it established that its law school members' First Amendment rights were violated due to threatened enforcement of the Solomon Amendment. Id. at 286. The court asserted that an association "need not reveal its membership list at the pleading stage to bring suit on its members' behalf." Id. at 287. The court explained that a court's focus of inquiry for associational standing is not whether such organizations specifically identify their members, but rather "whether the factual allegations in a given context sufficiently demonstrate that an association indeed has members that have suffered an injury-in-fact." Id. at 289; cf. Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009) (holding that an association need only assert "specific allegations establishing that at least one identified member had suffered or would suffer harm").

NJ CAR has alleged in its complaint that its membership includes sixteen franchised Mazda dealers in New Jersey. Appleton Cert., Exh. D, ¶5. While this alone is sufficient to establish that it has members whose interests have been impacted by Mazda's MBEP, NJ CAR's President has certified to the accuracy of

21

the allegation in the complaint and has also produced a list (readily available to the public through NJ CAR's website directory) identifying all sixteen Mazda dealer members.  Id., ¶6 & Exh. B.

Moreover, notwithstanding that it is not specifically required to do so, NJ CAR has identified two members that have been harmed and will continue to be harmed by the implementation of the MBEP.  Those Mazda dealers have produced declarations identifying and describing the harm each has and will continue to suffer as a result of the MBEP.  Ciasulli Cert.; LoCascio Cert.[1]

In support of its argument, Mazda points out the decision in Kessler Inst. For Rehabilitation v. Mayor & Council of Essex Fells, 876 F. Supp. 641 (D.N.J. 1995), but that decision is readily distinguishable.  In Kessler, a non-profit organization sought associational standing on the grounds that it was a non-profit organization with a principal purpose of providing services and support to handicapped persons. Id. at 656.   The organization's complaint did *not* allege that it consisted of members and did *not* allege that any *member* suffered an injury.  Ibid.  The court therefore held that the organization lacked standing to pursue its claims, explaining that, because the non-profit organization failed to "identify a single individual member," it "could not conclude that any of [the organization]'s members has

---

[1] Mazda's argument that NJ CAR has not identified its Mazda dealer members is particularly curious given that it acknowledges that it can specifically identify the NJ CAR members *in its own motion papers*.  Mazda also has franchise agreements and regularly deals with all sixteen members.

22

suffered an injury sufficient to confer standing." <u>Ibid.</u>  In this regard, in the <u>Forum</u>

case, the court noted that the complaint in <u>Kessler</u> "did not even allege that the

advocacy group had members, let alone that its members had suffered injury as a

result of the challenged governmental action." <u>Forum</u>, 291 <u>F. Supp.</u> 2d at 289.

    <u>Kessler</u>, then, is far different from the present matter where not only has NJ

CAR established that it has members that have suffered an injury-in-fact, but NJ

CAR has alleged in its complaint and by way of certification that its membership

specifically includes sixteen franchised Mazda dealers in New Jersey.  Appleton

Cert., ¶5; Appleton Cert., ¶6 & Exh. B.  NJ CAR has also identified and submitted

declarations from two members that have been harmed and will continue to be

harmed by the implementation of the MBEP.  Ciasulli Cert.; LoCascio Cert.

    Accordingly, NJ CAR satisfies the first factor under <u>Hunt</u> demonstrating that

it has standing to pursue this matter on behalf of its Mazda dealer members

because each of those dealers would have standing to bring a lawsuit in its own

right.

    **B.**    **The Interests That NJ CAR Seeks To Protect Are Germane**
          **To The Organization's Purpose.**

    NJ CAR satisfies the second <u>Hunt</u> factor because the interests it is seeking to

protect are germane to its purpose.  <u>Hunt</u>, 432 <u>U.S.</u> at 343; <u>Contractors Ass'n of E.</u>

<u>Pa., Inc. v. City of Philadelphia</u>, 945 <u>F.</u>2d 1260, 1264-65 (3d Cir. 1991).

The interests that NJ CAR seeks to protect through this lawsuit -- fair competition, promotion of its members' interests under the FPA and compliance with New Jersey laws for the benefit of its members and the public interest -- are germane to NJ CAR's purpose.  NJ CAR regularly promotes these interests in various forums, including in lawsuits either as a plaintiff or as *amicus curiae*.  Its purpose is entirely harmonious with the pursuit of its claims here in which it seeks relief for its Mazda dealer members from Mazda's frontal disregard of New Jersey law and the injury caused them and the public interest from the unlawful requirements in the MBEP.

Mazda attempts to circumvent the rather straightforward analysis of this second element by arguing that NJ CAR's satisfaction of this <u>Hunt</u> factor is defeated due to a conflict of interest between NJ CAR and its members as some NJ CAR members allegedly will benefit from the MBEP.  Mazda admits, however, that it knows of only three Mazda dealers that may qualify for the full MBEP discount or bonus (assuming they qualify for the Customer Experience discount going forward on a quarterly basis) and that eight others may qualify for the discount or bonus in part.  By so stating, it also tacitly concedes that five Mazda dealer-members of NJ CAR do not qualify for any of the facilities portion of the MBEP, that eight do not fully qualify, so that eleven in total will certainly get less than the total discount or bonus.  Moreover, while three Mazda dealers may have

24

compliant facilities, there is no certainty that they will always or even ever get the Customer Experience portion of the discount or bonus.

A conflict of interest precluding associational standing, however, ***does not*** exist if an association's position in the litigation is consistent with the interests of a majority of its members and if the association follows its own internal rules before joining the litigation.   Contractors Ass'n, 945 F.2d at 1266.   Here, NJ CAR adhered to its By-Laws before filing this lawsuit against Mazda.   Appleton Cert., ¶¶28-30 & Exh. C.   Moreover, there is no evidence that a majority of the Mazda dealers or of NJ CAR's membership as a whole oppose enforcing New Jersey's laws.   Mazda only points out that some dealers may qualify for some portion of the MBEP discount or bonus.

Furthermore, the allegation that some NJ CAR members will benefit under the MBEP is not the type of "conflict" that should bar suit by NJ CAR.   Mazda simply should not be able to take advantage of a "conflict" of its own creation through the implementation of a program that violates the FPA on its face and then hide behind that self-created "conflict" to avoid being taken to task.   Certainly, Mazda cannot seriously claim that a conflict exists over whether franchisors like Mazda should have to comply with the laws on the books in this State.

Accordingly, NJ CAR satisfies the second factor under Hunt.

### C. NJ CAR'S Lawsuit Seeking Declaratory and Injunctive Relief Does Not Require Individual Member Participation.

Lastly, NJ CAR satisfies the third <u>Hunt</u> factor because it can prosecute this matter without individual participation of Mazda dealer members. <u>Hunt</u>, 432 <u>U.S.</u> at 343; <u>Pennsylvania Prison Soc. v. Cortes</u>, 622 <u>F.</u>3d 215, 228 (3d Cir. 2010). "The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members." <u>See</u> <u>Hospital Council of W. Pa. v. City of Pittsburgh</u>, 949 <u>F.</u>2d 83, 89 (3d Cir. 1991) (reversing district court's holding that associational standing was improper because "[i]t is clear that the Council's request for declaratory and injunctive relief does not require participation by individual members"); <u>Comité de Apoyo a los Trabajadores Agrícolas v. Perez</u>, 148 <u>F. Supp.</u> 3d 361, 371 (D.N.J. 2015) (asserting that "requests by an association for declaratory and injunctive relief do not require participation by individual association members"). The Supreme Court "has distinguished such requests for declaratory and injunctive relief from requests for individualized damages of association members." <u>Ibid.</u> Moreover, even where a lawsuit will require some individual association members to provide discovery and trial testimony, such lawsuits do not require participation of individual members unless "participation by each [allegedly] injured party" would be necessary. <u>Id.</u> at 90.

Here, NJ CAR is seeking *solely* declaratory and injunctive relief based on a facial challenge to the MBEP contending that its terms and conditions violate three subsections of the FPA.  The Court's determination of the claims pled by NJ CAR requires no more than a side-by-side comparison of the MBEP with N.J.S.A. 56:10-7.4(h),(l), and (j).  In other words, the Court must determine, after reviewing the MBEP, whether its provision of discounts creates vehicle price differentials in violation of N.J.S.A. 56:10-7.4(h); whether its denial of benefits to Mazda dealers that do not construct an exclusive Mazda facility without evidence in the MBEP that costs incurred to do so can be justified and without offering exceptions for dealers who cannot comply violates N.J.S.A. 56:10-7.4(l); and whether its denial of benefits to Mazda dealers that do not provide or construct an exclusive facility but rather use their facilities for multiple brands violates N.J.S.A. 56:10-7.4(j). Not one of these determinations, and none of the relief sought by NJ CAR, requires any documents, testimony or other participation from any NJ CAR member, or requires discovery on any of the extraneous issues raised by Mazda.

Mazda relies upon Free Speech, Inc. v. Attorney General U.S., 787 F.3d 142 (3d Cir. 2015) for the proposition that standing is not "automatically satisfied" when an association seeks declaratory and injunctive relief.  That matter is readily distinguishable.  There, the Third Circuit determined that "individual members' participation is necessary to assess [the association's] as-applied First Amendment

27

claims" because the association members engaged in different levels and forms of speech under First Amendment analysis, requiring an "individualized inquiry" to "identify those members for whom the Statutes may be unconstitutional." Id. at 153-54, 154 n.6.  Here, NJ CAR contends that the MBEP violates the FPA on its face and there is no conduct or facts particular to any dealer that is relevant to the Court's analysis.

Mazda also relies upon Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., 280 F.3d 278 (3d Cir. 2002), but there the court distinguished the types of claims that would require "fact-intensive individual inquiries" and those that would not.  In that case, a psychiatric society sued several managed health care organizations (the "MHC's") on behalf of its members asserting that the MHC's violated certain provisions under ERISA for refusing to authorize necessary medical treatment thereby impairing the quality of healthcare provided by psychiatrists to their patients.  Given the nature of the claims at issue, that the MHC's coverage decisions on psychiatric care violated ERISA, the court stated that such determinations may require fact-intensive individual inquiries. Id. at 286. On the other hand, if the association sought to prove "systemic policy violations" asserting that the "methods" employed "represent breaches of contract as well as tortious conduct," the Third Circuit concluded same "may be established with sample testimony, which may not involve specific, factually intensive, individual

28

medical care determinations." Ibid.   Here, NJ CAR is claiming that the MBEP violates its Mazda dealer members' interests in enforcement of the FPA, and the resolution of this lawsuit does not turn on findings specific to each of the sixteen Mazda dealer members.   As a result, individual participation of NJ CAR's members is not required.

Accordingly, NJ CAR satisfies all three Hunt factors and has associational standing to bring this lawsuit on behalf of its members.  The Court should therefore deny Mazda's motion to dismiss.

## CONCLUSION

For all of the foregoing reasons, plaintiff NJ CAR respectfully requests that the Court deny defendant Mazda's motion to dismiss.

> Respectfully submitted,
>
> WILENTZ, GOLDMAN & SPITZER, P.A.
> Attorneys for Plaintiff, New Jersey Coalition
> of Automobile Retailers, Inc.
>
> By: /s/ MARVIN J. BRAUTH
>       MARVIN J. BRAUTH

Dated: December 3, 2018

#10282181.1