UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAZDA MOTOR OF AMERICA, INC. <br><br> Defendant. | **Case No. 3:18-cv-14563-BRM-TJB** <br><br> Motion Day: December 17, 2018 |

# DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

**Brian D. Sullivan**
**FOX ROTHSCHILD LLP**
*Formed in the Commonwealth of Pennsylvania*
49 Market Street
Morristown, NJ 07960
(973) 994-7525

*Attorneys for Defendant*
*Mazda Motor of America, Inc.*

\\DC - 029020/000018 - 13424176 v5

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    THE COMPLAINT DOES NOT ALLEGE THAT ANY NEW JERSEY MAZDA DEALER HAS SUFFERED ACTUAL HARM ................................... 2

    II.    NJ CAR'S LAWSUIT IS CONTRARY TO THE INTERESTS OF A MAJORITY OF NEW JERSEY MAZDA DEALER-MEMBERS ....................... 4

    III.    THE FACTUAL INQUIRIES IN THIS CASE REQUIRE THE PARTICIPATION OF EACH NEW JERSEY MAZDA DEALER ...................... 8

CONCLUSION ..............................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benali v. AFNI, Inc.*,
    2017 WL 39558 (D.N.J. Jan. 4, 2017) ................................................................ 4

*Blue Sky 1, LLC v. Jaguar Land Rover North America, LLC*,
    2016 WL 6803081 (D.N.J. Nov. 16, 2016) ......................................................... 9

*Comite de Apoyo a los Trabajadores Agricolas v. Perez*,
    148 F.Supp.3d 361 (D.N.J. 2015) ....................................................................... 3

*Cornerstone Christian Schools v. Univ. Interscholastic League*,
    563 F.3d 127 (5th Cir. 2009) ............................................................................ 11

*Forum for Academic & Institutional Rights, Inc. v. Rumsfeld*,
    291 F.Supp.2d 269 (D.N.J. 2003) ................................................................. 3, 4

*Free Speech Coalition, Inc. v. Attorney General U.S.*,
    787 F.3d 142 (3d Cir. 2015) ............................................................................. 11

*Rent Stabilization Ass'n of City of New York v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) ................................................................................. 11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................................... 3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................................... 3

*Trabajadores Agricolas v. Perez*,
    148 F.Supp.3d 361, 371 (D.N.J. 2015) .............................................................. 3

**Statutes**

NJSA 56:10-7.4(h) ............................................................................................... 9

NJSA 56:10-7.4(j) ................................................................................................ 8

NJSA 56:10-7.4(l) .............................................................................................. 10

NJSA 56:10-9 ....................................................................................................... 8

NJSA 56:10-10 ............................................................................................. 2, 5, 7

Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations ("**Mazda**") respectfully submits this reply to the Brief on Behalf of Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("**NJ CAR**") in Opposition to Mazda's Motion to Dismiss ("**Opp**."). Abbreviated terms defined in Mazda's Brief in Support of Motion to Dismiss ("**Mot.**") are used herein.

## PRELIMINARY STATEMENT

NJ CAR agrees that it must satisfy all three prongs of the *Hunt* test to establish standing. NJ CAR's opposition, however, fails to meet that burden.

First, while NJ CAR has submitted two dealer declarations indicating that it <u>could</u> amend its Complaint to satisfy the requirement of actual, concrete harm to at least one of its members, NJ CAR has not sought to amend the Complaint. Moreover, its argument that a statutory violation in and of itself satisfies the injury requirement is contrary to recent Supreme Court precedent.

Second, NJ CAR does not dispute that a conflict of interest among its members can defeat association standing under *Hunt's* second prong. NJ CAR's submissions support rather than refute Mazda's showing that the lawsuit is contrary to the interests of 11 of the 16 Mazda dealer-members of NJ CAR.

Third, NJ CAR's opposition fails to respond to Mazda's specific examples of the evidence that will be needed from individual New Jersey Mazda dealers in order for NJ CAR to prove the alleged statutory violations and/or defeat Mazda's

1

potential defenses. While NJ CAR says that it is raising only a "facial challenge" to the MBEP, any contention that it can establish a statutory violation from the terms of the MBEP alone is contradicted not only by the statutory language and the authorities cited by Mazda in its Motion, but also by NJ CAR's own description of the "determinations" required to adjudicate its statutory claims.

Accordingly, any challenge to the MBEP under NJSA 56:10-10 should be brought, as that statute prescribes, by a "franchisee" who has sustained actual, concrete injury as a result of that program. Because NJ CAR does not have standing, its Complaint should be dismissed.

## **ARGUMENT**

### **I.     THE COMPLAINT DOES NOT ALLEGE THAT ANY NEW JERSEY MAZDA DEALER HAS SUFFERED ACTUAL HARM**

Mazda has argued that the Complaint does not satisfy the first *Hunt* factor because it does not allege that any individual member of NJ CAR has suffered actual, concrete harm as a result of the MBEP. In response, NJ CAR does not dispute that its Complaint contains no such allegation. Instead, NJ CAR argues that (1) it does not have to name any of its "specific members" to establish its standing, and (2) it does not need to allege that any of its members suffered any actual harm because the alleged "invasion of its legally protected rights under the FPA" constitutes an injury-in-fact that is sufficient by itself to confer standing on its members. Neither argument has merit.

2

First, Mazda has never argued that NJ CAR must name each of its "specific members" to establish its standing.  Rather, as supported by the very cases cited in NJ CAR's opposition, all Mazda has argued is that the Complaint must "make specific allegations establishing that <u>at least one</u> *identified* member <u>had suffered or would suffer harm</u>."  *Comite de Apoyo a los Trabajadores Agricolas v. Perez*, 148 F.Supp.3d 361, 371 (D.N.J. 2015) (underlined emphasis added; italics in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009)).  NJ CAR's suggestion that *Forum for Academic & Institutional Rights, Inc. v. Rumsfeld*, 291 F.Supp.2d 269 (D.N.J. 2003), alters this requirement is incorrect.  There, the plaintiffs had "alleged facts establishing that one or more of its members ha[d] suffered an injury sufficient to confer standing in their own right."  *Id.* at 287. Here, the Complaint contains no such allegations.

Second, while NJ CAR's broad "statutory violation" theory may find some support in the language taken from the earlier Supreme Court cases cited in its opposition, more recent cases, including the Supreme Court's decision in *Spokeo, Inc. v. Robins*, hold that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  136 S. Ct. 1540, 1549 (2016).  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  Where, as here, a plaintiff alleges nothing but "a bare

\\DC - 029020/000018 - 13424176 v5

procedural violation" of a statute, "divorced from any concrete harm," the "injury-in-fact requirement of Article III" is not satisfied. *Id.*; *Benali v. AFNI, Inc.*, 2017 WL 39558, at *6 (D.N.J. Jan. 4, 2017) (citing *Spokeo* to support to the dismissal of a complaint that "sets forth bare statutory violations" but did not allege "a single concrete harm [plaintiff] suffered as a result of these alleged violations") (Martinotti, J.).

While its Complaint remains deficient, NJ CAR has submitted declarations from two Mazda dealers attesting to the harm they have allegedly suffered as a result of the MBEP. NJ CAR has not, however, sought to amend its Complaint to plead these allegations. Moreover, such an amendment would be futile because, as shown below, NJ CAR cannot satisfy either of the other two *Hunt* factors.

## II. NJ CAR'S LAWSUIT IS CONTRARY TO THE INTERESTS OF A MAJORITY OF NEW JERSEY MAZDA DEALER-MEMBERS

NJ CAR does not dispute that conflicts of interest among the members of an association can defeat the association's standing under the second *Hunt* factor. Nor does it dispute that there are conflicts of interest concerning this lawsuit: (1) between the Mazda dealer-members of NJ CAR who have taken actions to qualify for the MBEP payments and those who have not, and (2) between the Mazda dealer-members of NJ CAR who are eligible to receive the MBEP payments and the non-Mazda dealer-members who compete with those dealers for new vehicle sales. Instead, NJ CAR argues that these conflicts do not preclude its standing here

4

because the position NJ CAR has taken in this litigation "is consistent with the interests of a majority of its members[.]"

NJ CAR's position in this litigation, however, is counter to the interests of a majority of its Mazda dealer-members,[1] because a majority of them would be harmed if NJ CAR's lawsuit is successful. Indeed, NJ CAR's own evidence demonstrates the harm that at least some of its own members would suffer. NJ CAR has submitted a declaration from James Appleton, its president, who states that he is the one who "ultimately decided that NJ CAR would file a lawsuit against Mazda to prevent the continuing implementation of the MBEP." Appleton Decl. ¶ 30. Appleton says that he made this decision after a meeting with "representatives of several Mazda dealer-members," at which some dealers raised concerns about the MBEP, but others "indicated that they could take advantage of the offered discounts or bonuses." *Id.* ¶¶ 24-26. Obviously, these unidentified and unnumbered "others" will suffer harm if their discounts or bonuses are taken away

---

[1] Because NJ CAR claims repeatedly that it has brought this lawsuit "on behalf of its Mazda dealer members," Opp. at 1, 6, 18, and because those are the only members from whom NJ CAR can derive standing to sue under NJSA 56:10-10 in the first place, Mazda dealers are the only NJ CAR members who should be considered part of the relevant "majority."

5

from them.[2]  And notably, while NJ CAR states that it has 16 Mazda dealer-members, only two of them have submitted declarations supporting this lawsuit.

Mazda has already established that a *majority* of NJ CAR's Mazda dealer-members would be harmed by submitting unrebutted evidence showing that, if the MBEP is declared unlawful, at least 11 of the 16 Mazda dealers in New Jersey will lose the benefits they expect to receive under the MBEP in exchange for investments they have already made in their facilities.  *See* Mot. at 13.  NJ CAR mischaracterizes the evidence when it argues that Mazda "tacitly concedes" that there are eight Mazda dealers that "do not fully qualify" for the Brand Commitment portion of the MBEP.  Because those eight dealers have agreed to build Retail Evolution facilities, the MBEP payments that they are currently not receiving are being held for them in escrow.  *Id.*  If the MBEP is declared unlawful, those funds will also be put at risk, resulting in harm to those dealers.

NJ CAR speculates that Mazda dealers with compliant facilities still might not benefit from the MBEP because "there is no certainty" that they "will always or even ever get the Customer Experience portion" of the program.  In fact, since the MBEP was introduced in July 2018, at least 13 out of the 16 Mazda dealers in

---

[2]  Appleton's carefully-worded statements that none of the dealers at the meeting "expressed the thought" that tiered pricing "in general is a good idea" or that "manufacturers should be free to violate" New Jersey law are not sufficient to overcome the conflicts of interest identified in Mazda's motion.

6

New Jersey (a clear majority) have received the full 2.0% Customer Experience payment.  Reply Declaration of Kyle Kaczmarek, dated December 17, 2018, ¶ 3 ("Kaczmarek Reply Decl.").  NJ CAR has provided no evidence to suggest that these dealers will not continue to be eligible to receive these payments if the MBEP continues.

Mazda submits that the foregoing evidence is sufficient to establish a conflict of interest that defeats NJ CAR's standing.  In addition, Mazda is submitting declarations with this reply from five Mazda dealer-members of NJ CAR stating that NJ CAR's lawsuit is "contrary to the interests" of their dealerships. Kazmarek Reply Decl., Exs. A-E.  These dealers have also declared that their dealerships have not been harmed by their participation in the MBEP, and, conversely, that they believe they will be harmed if the MBEP is declared unlawful.  *Id.*  Thus, five of the seven New Jersey Mazda dealers who have been willing to submit declarations concerning this lawsuit have indicated that it is contrary to their interests.

Finally, NJ CAR attempts to avoid dismissal based on conflicts of interest by arguing that Mazda should not be permitted to "hide behind" a conflict of its own creation.  But Mazda is not "hiding": if there are New Jersey Mazda dealers who allege that the MBEP is unlawful and that they have been harmed, they are free to file suit against Mazda pursuant to N.J.S.A. 56:10-10, under which a

7

"successful" dealer can not only recover damages and injunctive relief but is also "entitled to the costs of the action including but not limited to reasonable attorney's fees."

Because this lawsuit is contrary to the interests of a majority of the New Jersey Mazda dealers that are members of NJ CAR, the Complaint fails to satisfy the second *Hunt* factor, and should be dismissed.

### III. THE FACTUAL INQUIRIES IN THIS CASE REQUIRE THE PARTICIPATION OF EACH NEW JERSEY MAZDA DEALER

Mazda has argued that NJ CAR cannot satisfy the third *Hunt* factor because the statutory claims asserted in its Complaint require a "fact-intensive-individual inquiry" into the individual circumstances of each Mazda dealer in New Jersey. In its opposition, NJ CAR does not bother to acknowledge the existence of the individual inquiries identified in Mazda's motion, let alone attempt to dispute them. Indeed, NJ CAR completely ignores Mazda's arguments that (1) participation by each dealer is required to determine whether the agreements between Mazda and those dealers concerning the use of their facilities are "voluntary agreements" in which Mazda has paid "separate and valuable consideration" within the meaning of the final sentence of NJSA 56:10-7.4(j), and (2) the "complete defense" to any action brought pursuant to the NJFPA available to Mazda under NJSA 56:10-9 requires individual inquiry into whether each Mazda dealer is substantially non-complaint with the requirements of its franchise

8

and other agreements.  By failing to address these points in its opposition, NJ CAR has waived any argument that these individual inquiries are not required to prove its claims.  *See Blue Sky 1, LLC v. Jaguar Land Rover North America, LLC*, 2016 WL 6803081, at *11 n.5 (D.N.J. Nov. 16, 2016) ("[W]here an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.").  This failure is, in and of itself, sufficient grounds to dismiss the Complaint for lack of standing.  *See id.* (dismissing complaint where the plaintiff "entirely fail[ed] to address" a dispositive argument raised in the defendant's motion).

NJ CAR argues that there are no "relevant" individual inquiries in this case because it is asserting a "facial challenge" to the MBEP.  This argument, however, is belied by NJ CAR's own description of what needs to be determined to decide its claims.  For example, NJ CAR states that one of the necessary "determinations" is whether the MBEP "creates vehicle price differentials in violation of NJSA 56:10-7.4(h)."  Opp. at 27.  However, as explained in Mazda's motion, in order to determine whether the MBEP in fact creates any "vehicle price differentials" as pled in the Complaint, the Court will first need to determine whether the MBEP in fact lowered the "per vehicle effective costs" for any qualifying dealer, which in turn will require the Court to compare the costs of MBEP compliance with the benefits received by each compliant dealer.  NJ CAR provides no explanation for

9

how such a comparison could be done without the participation of each Mazda dealer.

Another one of the necessary "determinations" identified in NJ CAR's opposition is whether the MBEP's alleged "denial of benefits to Mazda dealers that do not construct an exclusive Mazda facility without evidence in the MBEP that costs incurred to do so can be justified and without offering exceptions for dealers who cannot comply violates NJSA 56:10-7.4(l)." *Id.*  Yet, this is exactly Mazda's point: NJ CAR's claim that the MBEP violates NJSA 56:10-7.4(l) requires individual "evidence" concerning the "costs incurred" (or projected to be incurred) by each dealer to "construct an exclusive Mazda facility" and whether those counts can be "justified."[3]  That the provision of such evidence will require the participation of each Mazda dealer is clear from the two dealer declarations submitted in support of NJ CAR's opposition.  As those declarations purport to show, the types of facility modifications required to comply with the MBEP's requirements, and the costs of making those modifications, vary dealer-by-dealer, which means that the "justification" (or to use the term from the statute, "reasonable return") for investing in such a modification will vary dealer-by-dealer. *Compare* Locascio Decl. ¶¶ 7-11 (describing required modifications to the dealerships façade and interior that "would render [existing] renovations . . .

---

[3]  While NJ CAR appears to be suggesting that this "evidence" must be included "in the MBEP" itself, there is no such requirement in NJSA 56:10-7.4(l).

10

obsolete"), *with* Ciasulli Decl. ¶¶ 8-10 (describing a need to acquire new property and to construct a new facility to meet the requirements of the MBEP). Again, NJ CAR provides no explanation for how such evidence could be obtained without the participation of each individual Mazda dealer.

NJ CAR's attempt to distinguish *Free Speech Coalition, Inc. v. Attorney General U.S.*, 787 F.3d 142 (3d Cir. 2015), is unavailing. While it may be true that the case involved a different type of claim than that at issue here, this point is not material to the principle for which the case was cited in Mazda's motion – *i.e.*, that the third *Hunt* factor is not automatically satisfied whenever an association seeks injunctive or declaratory relief. Moreover, the Third Circuit's statement in *Free Speech Coalition* comes from language in *Hunt* itself, and other circuits have applied this same language in the same way. *See, e.g., Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 135 n.5 (5th Cir. 2009) ("the third prong of *Hunt* is not satisfied unless '*neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit'"); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (same). This also distinguishes the quotations from the cases cited on page 26 of NJ CAR's opposition, which merely repeat a point that Mazda has already acknowledged – *i.e.*, that claims for declaratory or injunctive relief can satisfy the "relief requested" component of the third *Hunt* factor.

11

The individual inquiries necessitated by NJ CAR's statutory claims defeat NJ CAR's standing under the third *Hunt* factor. The Complaint should therefore be dismissed.

## **CONCLUSION**

For the reasons stated herein, and in Mazda's initial motion, the Complaint should be dismissed for lack of standing.

Dated: December 17, 2018

/s/ *Brian D. Sullivan*
Brian D. Sullivan
FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
Tel: (973) 994-7525
Email: bsullivan@foxrothschild.com

John J. Sullivan
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations*