# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MAZDA MOTOR OF AMERICA, INC.<br><br>Defendant. | **Case No. 3:18-cv-14563-BRM-TJB**<br><br>**Motion Day: January 22, 2019** |

## DEFENDANT'S BRIEF IN OPPOSITION TO
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Brian D. Sullivan
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ 07960
Tel:  (973) 994-7525
Email: bsullivan@foxrothschild.com

*Attorneys for Defendant*
*Mazda Motor of America, Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ......................................................................5

ARGUMENT...........................................................................................8

    A. NJ CAR UNDERSTATES ITS BURDEN ON THIS MOTION .............8

    B. THERE ARE GENUINE ISSUES OF MATERIAL FACT...................13

        1.    The Alleged Injuries ...............................................13

        2.    Alleged Price Discrimination (N.J.S.A. 56:10-7.4 (h))............16

        3.    Alleged Imposition of Facility Requirements (N.J.S.A. 56:10-7.4(j))...................................................................22

        4.    Alleged Modification Requirements (N.J.S.A. 56:10-7.4(l) ....25

        5.    Mazda's Statutory Defense ......................................27

    C. MAZDA IS ENTITLED TO DISCOVERY .........................................28

CONCLUSION .....................................................................................29

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc*.
477 U.S. 242 (1986).................................................................9, 11

*Brentlinger Enterprises v. Volvo Cars of North America, LLC*,
2016 WL 4480343 (S.D. Ohio Aug. 25, 2016)................................15

*Calderone v. United States*,
799 F.2d 254, 259 (6th Cir. 1986) .................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................9, 11

*Coast Auto. Group, Ltd. v. VW Credit, Inc*.,
119 F. App'x 419 (3d Cir. 2005).....................................................27

*eBay, Inc. v. MercExchange LLC*,
547 U.S. 388, 391 (2006) ...............................................................13

*GE Solid State, Inc. v. Director, Div. of Tax.*,
132 N.J. 298, 308, 625 A.2d 468 (1993) ........................................20

*Diversant, LLC v. Carino*,
No. 18-3155, 2018 WL 4562469 at*10 (D.N.J. Sept. 24, 2018).......................13

*Doe v. Abington Friends School*,
480 F.3d 252 (3d Cir. 2007)...............................................11, 12, 16

*Edward J. Sweeney & Sons, Inc. v. Texaco*,
637 F.2d 105 (3d Cir. 1980)............................................................18

*Fontenot v. Upjohn Company*,
780 F.2d 1190, 1194(5th Cir. 1986) ...............................................10

*General Motors Corp. v. New A.C. Chevrolet, Inc.*,
263 F.3d 296, 323 (3d Cir. 2001) ...................................................27

*Hugh v. Butler county Family YMCA,*
    418 F.3d 265, 267 (3d Cir. 2005) ....................................................10

*Hunt v. Cromartie,*
    526 U.S. 541, 553 (1999) ....................................................................9

*Knauz Continental Autos, Inc. v. Land Rover North America, Inc.,*
    842 F.Supp. 1034, 1037 (N.D. Ill. 1993) ..........................................21

*Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.,*
    232 F.Supp.3d 813, 827 ....................................................................15

*Leone v. Owsley,*
    810 F.3d 1149, 1153 (10th Cir. 2015) ................................................9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..........................................................................14

*Marshall v. Western Union Tel. Co.,*
    621 F.2d 1246, 1251 (3d Cir. 1980) ..................................................20

*Precision Printing v. Unisource Worldwide,*
    993 F. Supp. 338 (W.D. Pa. 1998) ....................................................19

*Rich v. Sec'y Fla. Dep't of Corr.,*
    716 F.3d 525, 530 (11th Cir. 2013) ..................................................10

*Smith v. Ozmint,*
    578 F.3d 246, 250 (4th Cir. 2009) ....................................................10

*Zaro Licensing, Inc. v. Cinmar, Inc.,*
    779 F. Supp. 276, 286 (S.D.N.Y. 1991) ............................................27

**Statutes**

Del. Code Ann. tit. 6, § 4913(b)(11) ....................................................21

N.J.S.A. 56:10-7.4 ..........................................................................3, 16

N.J.S.A. 56:10-7.4(h) ............................................................11, 13, 16

N.J.S.A. 56:10-7.4(j) ................................................................16, 17

N.J.S.A. 56:10-7.4(l) ................................................................18, 19

N.J.S.A. 56:10-9 .................................................................................4, 20

N.J.S.A 56:10-10 ...................................................................... 1, 8, 9, 21

N.Y. Veh. & Traf. Law § 463(2)(g) ......................................................21

Pa Stat. Ann. tit. 63, § 818.12(b)(19) ...................................................21

15 U.S.C. § 13(a) ...........................................................................12, 13

## Rules & Other Authorities

ABA Section of Antitrust Law, Antitrust Law Developments (8th ed.
   2017) ..............................................................................................18

Fed R. Civ. P. 26(d)(1)..........................................................................11

Fed. R. Civ. P. 56(a) ..............................................................................5

Fed. R. Civ. P. 56(c)(1), (d) ...................................................................6

Fed. R. Civ. P. 56(d) ............................................................ 2, 6, 21, 22

Merriam Webster's Collegiate Dictionary (10th ed. 1997)...................20

11 Moore's Federal Practice § 56.40[1][c] (3d ed. 2015) .......................9

## INTRODUCTION

Defendant Mazda Motor America, Inc. ("**Mazda**") respectfully submits this brief in opposition to the pre-answer motion for summary judgment (Dkt. 16) filed by Plaintiff New Jersey Coalition of Automobile Automotive Retailers, Inc. ("**NJ CAR**").  NJ CAR brings this action under N.J.S.A 56:10-10, which permits motor vehicle "franchisees" to sue their "franchisors" to recover damages and obtain injunctive relief for violations of the New Jersey Franchise Practices Act (the "**FPA**").  NJ CAR's motion should be denied for the following reasons:

First, as Mazda has argued in its pending motion to dismiss (Dkt. 7), there is no subject matter jurisdiction.  NJ CAR is not a "franchisee" of Mazda and does not have standing to bring this action.  (*See* Dkt. 8 & 17.)  This jurisdictional issue must, of course, be resolved before the Court proceeds to the merits.

Second, even if the Court were to decide that NJ CAR has alleged sufficient facts on standing to survive the motion to dismiss, there are numerous genuine issues of material fact that preclude summary judgment.

NJ CAR has filed its summary judgment motion prior to Mazda's time to file an answer and assert applicable defenses and prior to the commencement of any discovery in this case.  While NJ CAR says that it is seeking a ruling that the Mazda Brand Experience Program 2.0 ("the **MBEP**") violates the FPA "on its face," its motion (a) is accompanied by a 21-page, 66-paragraph Statement of

Undisputed Material Facts (the "**Statement**") and (b) relies heavily on the declarations of two New Jersey Mazda dealers, Maxon and Irwin, who claim that they have been put at a competitive disadvantage and been otherwise damaged by the MBEP.[1]

Mazda has had no opportunity to take discovery with respect to the matters asserted in NJ CAR's lengthy statement of material facts and no opportunity to depose and cross-examine the two dealers on whose declarations NJ CAR's motion relies.  As demonstrated in the Declaration of John J. Sullivan submitted by Mazda pursuant to Rule 56(d) ("Sullivan Decl."), Mazda needs an opportunity to seek discovery with respect to, among other things, the following factual assertions made in NJ CAR's motion:

- Whether Maxon and Irwin have "lost out" on "the opportunity to compete for sales with qualifying [Mazda] dealers by lowering prices based on receipt of [the MBEP incentives]." (Statement, ¶¶ 53, 59.)

- Whether qualifying Mazda dealers who compete with Maxon and Irwin have actually used the MBEP incentives to lower their retail vehicle prices, as Maxon and Irwin suggest (but for which they provide no evidence).

- Whether Maxon would need to spend $12-$14 million to comply with the MBEP facility qualifiers.  (Statement, ¶ 55.)

---

[1]      These are the Declaration of Shelly Irwin Locascio in Opposition to Mazda's Motion to Dismiss, dated December 3, 2018 ("**Locascio Decl.**") (Dkt. 12-1) and the Declaration of Michael J. Ciasulli in Opposition to Mazda's Motion to Dismiss, dated November 30, 2018 ("**Ciasulli Decl.**") (Dkt. 13).

- Whether Freehold Township will not permit Irwin to renovate its facility to satisfy the MBEP facility qualifiers. (Statement, ¶ 61.)

- Whether Maxon or Irwin could not, with the assistance of the MBEP incentives, generate profits sufficient to justify an investment in meeting the MBEP facility qualifiers – contrary to the apparent conclusion reached by the majority of New Jersey Mazda dealers. (*See* Statement, ¶¶ 56, 63.)

Moreover, even without giving Mazda an opportunity for discovery, NJ CAR's presentation does not demonstrate the absence of genuine issues of material fact concerning its entitlement to the relief it seeks under N.J.S.A. 56:10-10.

First of all, even if this Court were to rule that NJ CAR has sufficiently alleged an injury to one or more of its members to establish standing at the pleading stage, to obtain summary judgment NJ CAR must provide evidence showing that it is beyond dispute that one or more of its members has suffered actual, concrete, non-hypothetical injury as a result of the MBEP. NJ CAR has in fact offered nothing but the unsupported, un-cross-examined assertions of two of its members that they are losing retail sales because they are supposedly at a competitive disadvantage to qualifying MBEP dealers. The same two declarants, however, inconsistently assert that the costs of complying with the MBEP far exceed the incentives paid by Mazda – which would mean that it is the qualifying dealers who have incurred those costs who are at a competitive disadvantage. Further, no probative evidence of lost sales has been presented.

3

The question whether the MBEP violates subsections (h), (j) or (l) of N.J.S.A. 56:10-7.4 raise additional issues of material fact.

For example, there is a genuine issue as to whether the MBEP incentives do not violate the FPA price discrimination provision (subsection (h)) because Mazda has made the incentives available to all New Jersey dealers on the same terms.

There are also genuine issues as to whether (1) Mazda has "imposed" facility requirements or "required" dealers to modify their facilities in violation of subsections (j) and/or (l), or whether, as expressly permitted by subsection (j), Mazda has entered into voluntary facility agreements with the participating MBEP dealers in exchange for separate and valuable consideration; and (2) even if (contrary to its plain terms) the MBEP could be construed as imposing involuntary facility requirements on all Mazda dealers, whether the factual conditions under which such requirements are expressly permitted by subsection (l) can be satisfied with respect to Maxon and Irwin.

Finally, in the event that Mazda's pending motion to dismiss is denied, Mazda intends to assert affirmative defenses, including the complete defense afforded by N.J.S.A. 56:10-9 that the Mazda dealers from whom NJ CAR derives its standing – Maxon and Irwin – have failed to substantially comply with the requirements of the franchise. This defense raises genuine issues of material fact and, in and of itself, requires denial of plaintiff's motion.

4

# STATEMENT OF FACTS[2]

## A. The Parties

Mazda is the exclusive U.S. distributor of new Mazda motor vehicles. (Kaczmarek Decl. ¶ 2.)  Mazda distributes Mazda vehicles to franchised dealers who have entered into a contractual relationship with Mazda.  (*Id.* ¶¶ 3-4.)  There are currently 16 franchised Mazda dealers located in New Jersey.  (Statement ¶ 2.)

NJ CAR alleges that it is a trade association whose members are franchised new motor vehicle dealers in New Jersey.  (Statement ¶¶ 1, 2.)  NJ CAR alleges that it is bringing this action "on behalf" of each New Jersey Mazda dealer.  (*Id.* ¶ 2, 6.)  However, at least five of those dealers have submitted declarations stating that they do not support NJ CAR's position in this action.  (Kaczmarek Reply Decl., Exs. A-E.)

NJ CAR has submitted supporting declarations from only two New Jersey Mazda dealers – Maxon and Irwin – alleging that they have suffered harm as a result of the MBEP.  (Statement ¶¶ 51-64.)  Mazda, however, has a complete defense to any FPA claim by Maxon or Irwin, because each of them is not in substantial compliance with the requirements of its franchise.  See pp. 27-28, *infra*.

---

[2]     This brief will cite to the Declaration of Kyle Kaczmarek in Support of Defendant's Motion to Dismiss, dated November 8, 2018 ("**Kaczmarek Decl.**") (Dkt. 7-1), the Reply Declaration of Kyle Kaczmarek, dated December 17, 2018 ("**Kaczmarek Reply Decl.**") (Dkt. 18), and the Declaration of Kyle Kaczmarek in support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment, dated January 22, 2019 ("**Kaczmarek SJ Decl.**").

### B. **The MBEP**

The MBEP is a program through which eligible franchised Mazda dealers can earn payments from Mazda by meeting certain incentive criteria.  The MBEP was restructured last year, and the current version became effective on July 3, 2018.  (Statement ¶ 37.)

The details of the program are described in the program Terms and Conditions.  The Terms and Conditions state that the "MBEP is designed to support those dealers who are engaged and committed to the Mazda brand and consistently provide all customers with an ownership experience that exceeds their expectations."  (Kaczmarek Decl., Ex. 2, p. 1.)  By complying with the program's criteria, a dealer can earn a payment of up to 6.5% of the base Manufacturer's Suggested Retail Price ("MSRP") for each new Mazda vehicle it retails.  (*Id.*, p. 7.) The potential payments are comprised of various components, each with its own criteria.

The MBEP payments have two "Earnings Elements": (1) "Brand Commitment" (a maximum of 4.5%), and (2) "Customer Experience" (a maximum of 2%).  (*Id.*)  To be eligible for either Earning Element, the dealer must first meet certain "Base Qualifiers" relating to facility inspections, training, service scheduling, customer records, and Mazda's courtesy vehicle program.  (*Id.*, pp. 6, 11-16.)

The Brand Commitment Earnings Element is tiered based on facility type. (Kaczmarek Decl., Ex. 2, p. 6.)  To be eligible to receive the full 4.5%, the dealer must (1) operate from a qualifying "Retail Evolution Dealership" and (2) have a dedicated exclusive Mazda general manager.  (*Id.*, pp. 17-18.)  "Retail Evolution" is the name of Mazda's facility "image program" (the "**Retail Evolution Program**").  (*Id.* ¶ 6 & Ex. 2, p. 17.)  To enroll in the Retail Evolution Program, a dealer must agree to construct a facility that meets Mazda's brand standards and incorporates certain Mazda brand "image elements," including certain signs and displays.  (*Id.* ¶ 7.)

Non-Retail Evolution dealers are eligible to receive a Brand Commitment Earnings Element of 2.8% if they have an "Exclusive" Mazda facility, and 1.0% if they have an "Exclusive Showroom" for Mazda.  (*Id.*, p. 7.)  Mazda dealers with "Dual" facilities (i.e., facilities that include another brand without an exclusive Mazda showroom) are not eligible for a Brand Commitment incentive.  (*Id.*)

To be eligible to receive the Customer Experience Earnings Element of 2%, the dealer must meet certain minimum performance levels related to customer satisfaction.  (Kaczmarek Decl., Ex. 2, pp. 18-19.)  Unlike the Brand Commitment Earnings Element, the Customer Experience Earnings Element is not tiered.  (*Id.*) Moreover, a Mazda dealer can receive this 2% payment regardless of whether it

has a Retail Evolution facility, an exclusive Mazda facility, an exclusive Mazda showroom or a dual facility.

## C. **NJ CAR's Claims**

NJ CAR alleges that the MBEP violates the following three provisions of the NJFPA:

- N.J.S.A 56:10-7.4(h) – because the MBEP allegedly "results in vehicle price differentials" among Mazda dealers "through incentives in different amounts paid for each vehicle";

- N.J.S.A 56:10-7.4(j) – because the MBEP allegedly "denies a benefit (a per-vehicle incentive) to dealers with dualled facilities"; and

- N.J.S.A 56:10-7.4(l) – because the MBEP allegedly "denies a benefit (a per-vehicle incentive) to dealers who do not provide Mazda with exclusive, image compliant facilities[.]"

(Statement ¶ 66.)

NJ CAR seeks (1) a declaratory judgment that the MBEP violates the FPA, and thus is "unlawful" for Mazda to implement in New Jersey; and (2) a permanent injunction "restraining Mazda from continuing to apply the MBEP in New Jersey." (*Id.* ¶ 65.)

## ARGUMENT

## A. **NJ CAR UNDERSTATES ITS BURDEN ON THIS MOTION**

Rule 56(a) authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant's burden in making such a

showing depends on whether the movant has the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24 (1986) (where movant does not have the burden of proof, it need only point out the nonmovant's lack of evidence); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986) ("in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden").

A movant (such as Plaintiff) who has the burden of proof at trial has a heavier burden on summary judgment than one who does not:

> When the movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment at trial should the non-movant fail to rebut its evidence. In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment.

11 Moore's Federal Practice § 56.40[1][c] (3d ed. 2015); accord, *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."); *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) ("*where the moving party has the burden* [of proof] – the plaintiff on a claim for relief or the defendant on an affirmative defense – *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*") (emphasis in original),

quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *Torres Vargas v. Sandiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1988) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence he provides on that issue is conclusive."); *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986). Accordingly, NJ CAR's reliance on cases in which the movant did not have the burden of proof is misplaced.

In addition, in considering the movant's showing, "a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

If the movant has met its burden, then under Rule 56 the nonmovant must "cit[e] to particular parts of materials in the record" showing that a fact is genuinely disputed, or show that "the materials cited [by the plaintiff] do not establish the absence . . . of a genuine dispute," or that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(c)(1), (d). Generally, however, the imposition of <u>any</u> burden on the nonmovant presumes that the nonmovant has had an adequate opportunity to obtain discovery:

> It is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain

discovery." This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record. . . .

. . . If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion. And whatever its decision, it is "improper" for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion.

*Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) (citations omitted); *see also Celotex*, 477 U.S. at 322 (summary judgment is appropriate "after adequate time for discovery"); *Anderson v. Liberty Lobby*, 477 U.S. at 257 (explaining that the nonmoving party's burden at summary judgment rests on the assumption that the party "had a full opportunity to conduct discovery"). The "Rule 56(f) motion" procedure referred to in *Doe* has since been replaced by the procedure in Rule 56(d), which permits the nonmovant to show "by affidavit or declaration" why it is not in a position to present facts supporting its opposition.

While Mazda has submitted a Rule 56(d) declaration, it is evident why Mazda cannot present certain facts supporting its opposition: NJ CAR has taken the extraordinary step of moving for summary judgment even before Mazda has answered the Complaint and asserted its defenses. Mazda has had <u>no</u> opportunity to obtain discovery. *See generally* Fed R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ."). Mazda has not even been afforded the opportunity to depose and

cross-examine the three witnesses upon whose declarations the motion for summary judgment relies.

In *Doe*, defendant had been granted summary judgment based on its uncontradicted affidavit, submitted before plaintiff had an opportunity for discovery, that it was a religious organization and therefore entitled to a statutory exemption under the Americans with Disabilities Act (the "ADA"). The Third Circuit reversed, holding that plaintiffs should have been given the opportunity to depose the affiant and other witnesses, and obtain other discovery, to determine whether defendant qualified for the religious exemption. The Court noted, among other things, that "[n]o court of appeals has yet fully examined the ADA's religious exemption, and the undeveloped state of this record makes us reticent to do so now." 480 F.3d at 258.

Similar considerations apply here. There do not appear to be any published decisions interpreting and applying the three provisions of the FPA upon which NJ CAR relies. A record should be developed before determining whether the MBEP violates the FPA by coercing participating dealers and putting non-participating dealers at a competitive disadvantage, as NJ CAR contends, or whether it is a voluntary program that assists dealers who decide to participate while not disadvantaging dealers who decide not to participate, as Mazda contends.

As shown herein, NJ CAR has not established "conclusively" that it is entitled to relief under the FPA, and Mazda has demonstrated that there are genuine issues of material fact.  If there is any doubt about the matter, however, Mazda should be afforded an opportunity to obtain discovery with respect to facts that may further support its opposition.

## B. <u>THERE ARE GENUINE ISSUES OF MATERIAL FACT</u>

### 1.    <u>The Alleged Injuries</u>

NJ CAR brings this action under N.J.S.A. 56:10-10, which provides that "[a]ny franchisee may bring an action against its franchisor for violation of [the FPA] in the Superior Court of the State of New Jersey <u>to recover damages</u> sustained by reason of any violation of this act <u>and, where appropriate</u>, shall be entitled to <u>injunctive relief</u>" (emphasis added).  Of course, in order to obtain either "damages" or "injunctive relief," a plaintiff must prove that it has suffered an injury.  Moreover, to obtain the permanent injunction that it seeks, NJ CAR must demonstrate, among other things, that "[Plaintiff has] suffered an irreparable injury; [and] (2) that remedies available at law, such as monetary damages, are inadequate to compensate that injury . . . ." *Diversant, LLC v. Carino,* No. 18-3155, 2018 WL 4562469 at *10 (D.N.J. Sept. 24, 2018) (quoting *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006).

In addition, even if this Court were to decide that NJ CAR has standing to sue under N.J.S.A. 56:10-10 because it has sufficiently <u>alleged</u> injury to one of its Mazda franchisee members, to be entitled to relief NJ CAR must now <u>prove</u> that one or more of those members has suffered concrete, actual or imminent, non-hypothetical injury that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (holding that lower courts should have granted summary judgment against environmental organization where it did not present evidence establishing standing) ("Since [these elements of standing] are not mere pleading requirements but rather an indispensable part of plaintiff's case, each element must be supported in the same way as any other matter on which plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

NJ CAR's evidence on this motion does not establish the absence of an issue as to whether any member of NJ CAR has suffered an actual injury as a result of the MBEP.  NJ CAR merely presents – without giving Mazda the opportunity to depose and cross-examine – the conclusory assertions of Maxon and Irwin that, because they have not taken the actions required to qualify for the incentives, they are at a competitive disadvantage to Mazda dealers who do receive the incentives and, accordingly, can resell Mazda vehicles at lower retail prices.  (Statement ¶¶ 51-64.)

These assertions obviously raise genuine issues of fact, not in the least because Maxon and Irwin also assert that the costs of the MBEP exceed the incentives paid by Mazda. If that is true, then logically it is the participating dealers who are at a competitive disadvantage because they will need to cover their compliance costs by increasing their prices.

Moreover, while both dealers claim – using identical boilerplate language – that their failure to earn the MBEP incentives deprives them of "the opportunity to compete for sales with qualifying dealers by lowering prices based on the receipt of those discounts or bonuses" (Statement ¶¶ 53, 59; Ciasulli Decl., ¶ 7; Locascio Decl, ¶ 6), there is <u>no</u> evidence in this record that qualifying dealers have used the incentives to lower their prices and no probative evidence that Maxon or Irwin has actually lost any sales to qualifying dealers, or otherwise suffered any competitive injury, as a result of the MBEP. In the absence of such evidence, plaintiff is not entitled to summary judgment. *See, e.g., Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*, 232 F.Supp.3d 813, 827 & n.20 (E.D. Va. 2017) (denying VW dealer's motion for summary judgment where VW presented evidence that incentive payments under VW's program did not reduce the price of vehicles because of "the costs a dealer must incur to satisfy applicable incentive conditions"); *Brentlinger Enterprises v. Volvo Cars of North America, LLC*, 2016 WL 4480343 at *6 (S.D. Ohio Aug. 25, 2016) (granting summary judgment to

15

Volvo and rejecting plaintiff's claim that incentives paid to competing "exclusive" Volvo dealer put plaintiff at competitive disadvantage because competitor "presumably . . . incurr[ed] the substantial costs" of complying with exclusivity requirement to earn incentives).

Moreover, even if the Maxon and Irwin declarations contained admissible *prima facie* proof of concrete, non-hypothetical injury, it would be improper to conclude that they establish the essential element of injury for summary judgment purposes without giving Mazda the opportunity to obtain discovery concerning their contentions, including depositions of these two witnesses. *See Doe,* 480 F.3d at 257.

**2.     Alleged Price Discrimination (N.J.S.A. 56:10-7.4 (h))**

NJ CAR claims that the MBEP violates N.J.S.A 56:10-7.4(h), which makes it unlawful for a franchisor "[t]o fail or refuse to sell or offer to sell to all motor vehicle franchisees in a line make every motor vehicle sold or offered for sale to any motor vehicle franchisee of the same line make**,** or to fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus, and on reasonable, good faith and non-discriminatory allocation and availability terms."

There is no claim in this case that Mazda charges its New Jersey dealers differing wholesale prices for the same vehicles.  Nor is there any claim that Mazda has not offered the MBEP incentives to all New Jersey dealers who agree to comply with the conditions for earning the incentives.  Rather, NJ CAR claims that subsection (h) outlaws any and all franchisor programs that pay "per vehicle" incentives.  (*See* Pl. Br. at 29-32.)  That interpretation of subsection (h), however is inconsistent with established price discrimination law and is not the more reasonable reading of the statute.

The relevant portion of subsection (h) makes it unlawful for a franchisor "to fail or refuse to sell or offer to sell [any comparable vehicle] on the same terms, with no differential in discount, allowance, credit or bonus."  Mazda has not "fail[ed] or refuse[d] to sell or offer to sell vehicles on the same terms" to all Mazda dealers.  To the contrary, it has offered the same MBEP incentives to all Mazda dealers in the State of New Jersey on exactly the same terms.

Notably, the statute does not provide that "it is unlawful to sell or offer to sell a vehicle on differing terms" – in which case, the natural reading would be that both the sale and the offer to sell are unlawful.  Instead, the legislature made it unlawful to "fail or refuse" to sell OR refuse to sell on the same terms, with no differentials in discount, etc. – meaning that if the franchisor does sell OR offer to sell to all dealers on the same terms, it has not violated the statute.

Giving the "or" between "sell" and "offer to sell" its normal, disjunctive meaning is consistent with the policies behind similar price discrimination statutes, which have uniformly been interpreted to permit per-unit incentives provided that those incentives are offered to all purchasers on the same terms.  As NJ CAR itself argues, subsection (h) "reflect[s] similar concerns and policies" as section 2(a) of the Robinson-Patman Act (the "RPA"), 15 U.S.C. § 13(a), which NJ CAR quotes in both its brief and its Statement of Undisputed Material Facts.  (Pl. Brief at 9-10; Statement ¶ 19.)  It is well-established, however, that it is <u>not</u> a violation of section 2(a) to provide a lower price to some but not all purchasers provided that the lower price has "in fact been made available to the allegedly disfavored purchasers." ABA Section of Antitrust Law, Antitrust Law Developments at 543 (8th ed. 2017) (collecting cases).  While this "functional availability doctrine" is "not expressed in the text of the [RPA]," the courts have held that "the availability of the lower price of the allegedly disfavored buyer negates the necessary Section 2(a) element of price discrimination."  *Id*.

The Third Circuit adopted the functional availability doctrine in *Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.2d 105 (3d Cir. 1980).  In *Sweeney*, the Court rejected a gas station franchisee's argument that the franchisor's provision of differing "hauling allowances" to its franchisees violated section 2(a) of the RPA.  The Court held that "a uniform pricing formula applicable to all customers

18

is not price discrimination under the [RPA]." *Id.* at 120; *see also Precision Printing v. Unisource Worldwide*, 993 F. Supp. 338, 351-52 (W.D. Pa. 1998) (following *Sweeney* and granting summary judgment for defendant where plaintiff failed to take advantage of defendant's special pricing programs).

N.J.S.A 56:10-7.4(h) should be read and applied in like fashion.  Mazda has not committed any "facial" or *per se* violation of the statute because it has offered to sell vehicles to all New Jersey dealers on the same terms.

Of course, there may be an issue of fact as to whether the incentives are "functionally" available to Maxon, which claims that the MBEP facility qualifiers are cost prohibitive to it, and Irwin, which claims that Freehold Township will not permit the MBEP facility renovations.  (Statement, ¶¶ 55, 61.)  But those are issues of fact on which Mazda is entitled to discovery.

Moreover, NJ CAR's position that the legislature intended to outlaw any and all franchisor programs offering per-vehicle incentives to dealers is not supported by the statutory language.  Indeed, the legislature does not even mention "incentives" in subsection (h), even though it did include the word "incentive" in a provision it added to N.J.S.A. 56:10-7.4 at the same time as subsection (h).

In the 2011 amendments, the legislature also added subsection (s) to N.J.S.A. 56:10-7.4, which makes it unlawful for a franchisor to "offer any discount, **incentive**, bonus, **program**, allowance or credit that differentiates

19

between vehicle sales by a motor vehicle franchisee within a territory or geographic area assigned to the motor vehicle franchisee and vehicle sales outside of such territory or geographic area" (emphasis added). In marked contrast, subsection (h) refers only to a "differential in discount, allowance, credit or bonus," conspicuously omitting the terms "incentive" and "program" included in another part of the same statute enacted at the same time. "Under the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *GE Solid State, Inc. v. Director, Div. of Tax.*, 132 N.J. 298, 308, 625 A.2d 468 (1993), citing *Marshall v. Western Union Tel. Co.*, 621 F.2d 1246, 1251 (3d Cir. 1980).

This conclusion is supported by the differing dictionary definitions of the terms at issue. An "incentive" is "something that incites or has a tendency to incite to determination or action." Merriam Webster's Collegiate Dictionary at 587 (10th ed. 1997). This definition fits the MBEP: the payments are offered by Mazda to incentivize dealers to make the investments necessary to qualify for the MBEP payments. By contrast, there is no necessary action that a dealer needs to take to receive a "discount," "bonus," "allowance," or "credit." *See id.* at 331 (defining a "discount" as "a reduction made from a regular or list price"); 131 (defining a "bonus" as "something in addition to what is expected or strictly due"); 31

(defining an "allowance" as "a reduction from a list price or stated price"); and 272 (defining "credit" as "time given for payment for goods or services sold on trust" or "a deduction from an amount otherwise due").

In short, had the legislature intended to outlaw franchisor incentive programs connected to the sale of vehicles, it presumably would have used the word "incentive" in subsection (h), as it contemporaneously did in subsection (s). Moreover, it is unlikely that the New Jersey Legislature would have wanted to deprive New Jersey dealers of the choice to participate in incentive programs being offered by their franchisor to competing same brand dealers in neighboring states.[3]

It is also not reasonable to believe that the legislature intended to deprive New Jersey consumers of the potential benefits of manufacturer incentive programs.  For example, car manufacturers frequently run "objective" programs in

---

[3]      The price discrimination prohibitions in the dealer statutes of New York, Pennsylvania, and Delaware all permit incentive programs that are made reasonably or functionally available to all dealers in the state. N.Y. Veh. & Traf. Law § 463(2)(g); Pa. Stat. Ann. tit. 63, § 818.12(b)(18); Del. Code Ann. tit. 6, § 4913(b)(11).  In the only case of which Mazda is aware in which a state price discrimination statute, like New Jersey's, did not expressly permit functionally available incentive programs, the court nevertheless interpreted the statute to permit such programs. *Knauz Continental Autos, Inc. v. Land Rover North America, Inc.*, 842 F. Supp. 1034, 1037 (N. D. Ill. 1993) (holding that the "more reasonable interpretation" of a statute making it unlawful to sell a vehicle to any dealer at a lower price, including through "sales promotion plans or programs," was that the legislature intended only to prohibit programs "where manufacturers discounted motor vehicles to some dealers but not others, to help specific, possibly favored, dealers").

which dealers can earn a monetary incentive for every vehicle sold during the program period if the dealer achieves a sales objective based on the opportunity in the dealer's market.  Such programs foster price competition and tend to reduce the retail prices paid by consumers.  Under NJ CAR's interpretation of subsection (h), however, such programs would be *per se* unlawful in New Jersey because the incentives would be paid only to the dealers who achieved their objectives.  Such an interpretation would be anti-competitive and anti-consumer.  It would also motivate some informed New Jersey consumers to purchase their vehicles in neighboring stats (rather than from New Jersey dealers) to take advantage of the more competitive prices fostered by such programs.

Accordingly, summary judgment should be denied with respect to N.J.S.A. 56:10-7.4(h) because (1) the MBEP is not a *per se* violation of the statute; (2) there are genuine issues of material fact as to whether the MBEP incentives are functionally available to Maxon and Irwin; and (3) even if the MBEP did violate the statute and the incentives were not functionally available to Maxon and Irwin, there would still be genuine issues of material fact as to whether Maxon or Irwin has or will suffer injury as a result of the program.

### 3.  Alleged Imposition of Facility Requirements (N.J.S.A. 56:10-7.4(j))

NJ CAR contends that the MBEP violates N.J.S.A. 56:10-7.4(j), which makes it unlawful for a franchisor:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated, including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor. <u>The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid.</u>

N.J.S.A. 56:10-7.4(j) (emphasis added). It is evident, however, that the MBEP does <u>not</u> violate subsection (j), or at least that there are genuine issues as to whether the MBEP does so.

Subsection (j) prohibits a manufacturer from "imposing" a facility requirement but expressly permits a franchisee to voluntarily agree to the requirement in exchange for "separate and valuable consideration."

Under the plain terms of the MBEP, Mazda does not require Maxon or Irwin or any other Mazda dealer to modify its facilities. Rather, Mazda offers the MBEP incentives to any and all New Jersey dealers who voluntarily agree to provide qualifying facilities, and Mazda is paying them "separate and valuable

23

consideration" – the MBEP incentives – for doing so.  (Kaczmarek Decl., Ex. 2, pp. 4-7.)

NJ CAR contends that the MBEP violates the portion of subsection (j) that makes it unlawful for a franchisor to "deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities."  (Pl. Br. at 34.)  Equating the "consideration" paid to dealers who voluntarily agree to provide qualifying facilities with a "benefit" denied to those who choose not to do so, however, makes a complete hash of subsection (j).  A franchisor would never be able to agree to facilities requirements with <u>any</u> New Jersey franchisee in exchange for "separate and valuable consideration" unless it provided the same "separate and valuable consideration" to those New Jersey dealers who did not agree.

NJ CAR's reading would write the primary provisions of subsection (j) – i.e., that a facilities requirement may not be "imposed" but can be voluntarily agreed to for separate and valuable consideration – right out of the statute.  The more reasonable interpretation is that the "benefit denied" refers to a benefit that the franchisor normally extends to all of its franchisees, not to the consideration paid to dealers who voluntarily agree to the facilities requirement.

Accordingly, there are genuine issues of material fact as to whether the MBEP violates subsection (j) and to whether Maxon or Irwin (or any other New

24

Jersey Mazda dealer) has suffered any injury as a result of other New Jersey dealers agreeing to meet the MBEP's facility qualifiers.

**4.     Alleged Modification Requirements (N.J.S.A. 56:10-7.4(l)**

NJ CAR contends that the MBEP violates N.J.S.A. 56:10-7.4(l), which makes it unlawful for a franchisor:

> To require or attempt to require a motor vehicle franchisee to relocate his franchise or to implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle.  This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized.

N.J.S.A. 56:10-7.4(l).  NJ CAR's claim under this subsection raises issues similar to those under subsection (j).  Under the plain terms of the MBEP, Mazda has not "required" any franchisee to relocate or modify its facility but rather has offered

incentives to its franchisees to make modifications and/or to provide an exclusive Mazda facility.  (Kaczmarek Decl., Ex. 2.)

As with subsection (j), NJ CAR argues that Mazda's payment of the incentives only to those dealers who agree to meet the facilities qualifiers constitutes the denial of a "benefit" under subsection (l).  But once again, that interpretation would nullify the provisions of subsection (j) that permit voluntary agreements to facilities requirements in exchange for separate and valuable consideration.

Moreover, even if NJ CAR could demonstrate that it is beyond dispute that Mazda has "required" dealers to make facility modifications or relocate – which NJ CAR has not done – there would obviously be genuine issues of material fact concerning the conditions under which subsection (l) permits a franchisor to "require" modifications – i.e., whether funds are available to the franchisee on reasonable terms and whether the franchisee would be able to earn a reasonable return on its investment.  These are obviously issues on which Mazda would need, and would be entitled to, discovery from the franchisees.

Accordingly, there are genuine issues of material fact as to whether Mazda has violated subsection (l) and as to whether Maxon or Irwin or any other New Jersey Mazda dealer has suffered injury as a result of any such violation.

5.    **Mazda's Statutory Defense**

N.J.S.A. 56:10-9 provides: "It shall be a defense for a franchisor to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto."  The Third Circuit has recognized that N.J.S.A. 56:10-9 makes a franchisee's "substantial noncompliance" a "complete defense to any action brought under the NJFPA." *Coast Auto. Group, Ltd. v. VW Credit, Inc.*, 119 F. App'x 419, 423-24 (3d Cir. 2005) (affirming jury verdict against franchisee); *see also  General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 323 n.11 (3d Cir. 2001); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991) (granting summary judgment dismissing franchisee's FPA claim).

Mazda has submitted proof that both Maxon and Irwin – the franchisees from whose injury NJ CAR purports to derive standing in this case – are in substantial noncompliance with the requirements of their franchise agreements. Maxon has been in breach of its customer satisfaction requirements under its Mazda franchise for the past two years. Kaczmarek SJ Decl., ¶¶ 5-12.  Irwin has been in breach of its new and certified pre-owned sales obligations under its Mazda franchise for the past two years. *Id.*, ¶¶ 5, 13-15.  Sales and customer satisfaction

are obviously two of the most important obligations under a motor vehicle franchise agreement.

Since NJ CAR's standing derives solely from the injury claimed by its member Mazda franchisees, it should not be permitted to nullify a defense expressly afforded to Mazda by the FPA on the ground that those franchisees have not been named as parties to this action.  Mazda has raised genuine issues of material fact as to whether Maxon and Irwin have substantially complied with the requirements of their franchise agreements, thereby precluding summary judgment on the claims brought under N.J.S.A. 56:10-10.

### C. <u>MAZDA IS ENTITLED TO DISCOVERY</u>

Rule 56(d) provides in pertinent part:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> 1.     defer considering the motion or deny it;
>
> 2.     allow time to obtain affidavits or declarations or to take discovery; or
>
> 3.     issue any other appropriate order.

Fed. R. Civ. P. 56(d).   As shown above and in the accompanying Sullivan Declaration, Mazda needs and should be granted the opportunity for discovery concerning, among other things, Maxon's and Irwin's claimed injuries; whether qualifying Mazda dealers competing with Maxon and Irwin have actually reduced

28

retail prices and thereby captured retail sales from Maxon and Irwin; whether Maxon and Erwin could generate profit sufficient to justify an investment in qualifying for MBEP incentives; whether NJ CAR has conflicts of interest which preclude its standing to sue; and whether qualifying New Jersey dealers have voluntarily agreed to participate in the MBEP or whether the requirements have been "imposed" upon them. (Sullivan Decl., ¶¶ 12-25.)

Accordingly, the Court should deny NJ CAR's motion for summary judgment and permit this case to proceed to discovery as normally permitted under the Federal Rules.  In the alternative, the Court should defer consideration of this motion and allow Mazda sufficient time to take discovery on the issues raised by the motion.

## CONCLUSION

For all of the foregoing reasons, Mazda respectfully submits that NJ CAR's motion for summary judgment should be denied.

Dated: January 22, 2019

/s/ *Brian D. Sullivan*
Brian D. Sullivan
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ 07960
Tel:  (973) 994-7525
Email: bsullivan@foxrothschild.com

John J. Sullivan
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(*pro hac vice* application to be submitted)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations*