UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------X
:
NEW JERSEY COALITION OF :
AUTOMOTIVE RETAILERS, : NO. 3:18-cv-14563
INC., a non-profit New Jersey :
Corporation, : (Document Filed Electronically)
:
:
Plaintiff, :
:
:
v. :
:
:
MAZDA MOTOR OF AMERICA, :
INC., :
:
:
Defendant. :
-------------------------------------------X

**REPLY BRIEF ON BEHALF OF PLAINTIFF NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC. IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, P.O. Box 10
Woodbridge, New Jersey 07095
Attorneys for Plaintiff, New Jersey Coalition
of Automotive Retailers, Inc.

MARVIN J. BRAUTH, ESQ.
DANIEL J. KLUSKA, ESQ.
    Of Counsel and On the Brief

PETER L. SCHENKE, ESQ.
    On the Brief

#10406540.1

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

LEGAL ARGUMENT.................................................................................................1

    A.    The Discounts Offered To Mazda Dealers Under The MBEP Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-7.4(h). ...................................................................................1

    B.    The MBEP Distinctions Violate N.J.S.A. 56:10-7.4(j).........................4

    C.    Without Evidence That The Costs Incurred To Build Exclusive Facilities Are Financially Justified, The MBEP Attempts to Coerce Dealers To Build Facilities In Violation Of N.J.S.A. 56:10-7.4(l)...................................................................................7

    D.    The Court Should Not Insert Requirements Into The FPA Not Found In Its Words And Contrary To The Legislature's Intent. ........10

    E.    NJ CAR Has Suffered A Concrete Injury In Fact By Virtue Of The MBEP's Violations Of The FPA. ................................................12

    F.    Mazda's Proclaimed Statutory Defense Is Not Applicable. ................13

    G.    No Discovery is Necessary To Decide This Motion. ..........................14

CONCLUSION..........................................................................................................15

## **TABLE OF AUTHORITIES**

**PAGE**

**Cases**

Atlantic Container Inc. v. Township of Eagleswood Planning Bd.,
    321 N.J. Super. 261 (App. Div. 1999) ................................................................. 3

Liberty Lincoln-Mercury v. Ford Motor Co.,
    134 F.3d 557 (3d Cir. 1998) ................................................................................ 3

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .......................................................................................... 13

Red Bank Regional Ed. Ass'n v. Red Bank Regional High School Bd. of Educ.,
    151 N.J. Super. 435 (App. Div. 1977), aff'd, 78 N.J. 122 (1978) ...................... 3

Warth v. Sedin,
    422 U.S. 490 (1975) .......................................................................................... 13

**Statutes**

15 U.S.C. §13(a) ..................................................................................................... 10

28 U.S.C. §2201(a) ................................................................................................. 13

28 U.S.C. 2202 ........................................................................................................ 13

N.J.S.A. 56:10-1 ........................................................................................................ 1

N.J.S.A. 56:10-10 .................................................................................................... 13

N.J.S.A. 56:10-13 ...................................................................................................... 1

N.J.S.A. 56:10-3(c) ................................................................................................... 1

N.J.S.A. 56:10-3(d) ................................................................................................... 1

N.J.S.A. 56:10-7.4 ............................................................................................. 10, 14

N.J.S.A. 56:10-7.4(h) ....................................................................................... passim

N.J.S.A. 56:10-7.4(j) ........................................................................................ passim

N.J.S.A. 56:10-7.4(l) ........................................................................................ passim

N.J.S.A. 56:10-9 ............................................................................................... 13, 14

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("NJ CAR") submits this reply brief in further support of its motion for summary judgment.

There are no questions of fact to be resolved in this matter and no need for discovery that would prevent the Court from entering summary judgment in favor of NJ CAR. All that is required is to place the Mazda Brand Experience Program 2.0 ("MBEP") next to the relevant provisions of the Franchise Practices Act, N.J.S.A. 56:10-1, et seq. ("FPA") and to determine, relying only on indisputable facts, whether, as a matter of law, the MBEP is consistent with or violates the FPA.

## LEGAL ARGUMENT

### A. The Discounts Offered To Mazda Dealers Under The MBEP Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-7.4(h).

N.J.S.A. 56:10-7.4(h) plainly provides that it is a violation of the FPA for a "motor vehicle franchisor" "to fail . . . to sell . . . motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus . . . ." There can be no dispute as to the following pertinent facts:

- Mazda is a "motor vehicle franchisor." N.J.S.A. 56:10-3(c) & 56:10-13;

- Mazda sells "motor vehicles" to its "motor vehicle franchisees" in New Jersey. N.J.S.A. 56:10-3(d) & 56:10-13;

- Under the MBEP, Mazda dealers in New Jersey earn a discount or bonus from Mazda ranging from 0% to 6.5% of the MSRP of a vehicle for

1

#10406540.1

- every vehicle they sell based on the dealer's level of compliance with Mazda's requirements for the bonus or discount. See Certification of James B. Appleton, ¶ 11 & Exh. B (Dkt. 12-3); and

- Mazda makes no claim that every dealer in New Jersey has and always will receive the exact same MBEP bonus or discount as every other dealer and the Declarations of two dealers submitted in opposition to Mazda's motion to dismiss make clear that those two dealers are not getting the full discount/bonus at this time.[1] (See Dkt. 12-1 & 12-2).

Thus, based on these indisputable facts, the MBEP violates N.J.S.A. 56:10-7.4(h).

Mazda's argument that the MBEP does not violate N.J.S.A. 56:10-7.4(h) because every New Jersey dealer has the same opportunity to receive the full MBEP discount/bonus so that it is "offering" to sell its vehicles to all dealers at the "same price" is an incorrect interpretation of N.J.S.A. 56:10-7.4(h). The mandate of N.J.S.A. 56:10-7.4(h) is that the franchisor not "fail or refuse to sell *or* offer to sell," not just "offer to sell," all comparably equipped vehicles to all dealers "at the same price . . . with no differential in discount, allowance, credit or bonus." As a result of the MBEP, comparably equipped vehicles are being sold to dealers with differentials in discount or bonus. This is a violation of the express language and clear terms of N.J.S.A. 56:10-7.4(h). That Mazda "offers" the MBEP to all of its dealers is not sufficient to avoid the violation.

---

[1] Even the Declarations that Mazda filed in further support of its motion to dismiss indicate that not all dealers have been getting one or both of the facilities or customer experience discount/bonus. (See Dkt. 18).

2

#10406540.1

Mazda's tortured dissection of N.J.S.A. 56:10-7.4(h) to conclude that only the "offer to sell" must be without price differential is an overly strained reading of the statute contrary to the language used by the Legislature and flies in the face of long-established canons of statutory interpretation. There is no comma between "fail or refuse to sell" and "offer to sell," which would make the prohibition of differentials applicable only to the "offer to sell." Likewise, use of the word "or" in the context of this statute makes the prohibition against differentials applicable to both "sell" and "offer." If a differential occurs in either case, it is a violation. E.g., Atlantic Container Inc. v. Township of Eagleswood Planning Bd., 321 N.J. Super. 261, 270 n.4 (App. Div. 1999); Red Bank Regional Ed. Ass'n v. Red Bank Regional High School Bd. of Educ., 151 N.J. Super. 435, 438 (App. Div. 1977), aff'd, 78 N.J. 122 (1978). Even aside from the statutory language, as NJ CAR emphasized in its moving brief, the FPA, a remedial statute that the Legislature enacted to protect franchisees, "must be construed broadly to give effect to [its] legislative purpose." E.g., Liberty Lincoln-Mercury v. Ford Motor Co., 134 F.3d 557, 563 (3d Cir. 1998). Mazda's strained reading is contrary to the Legislative intent that, to promote the public interest in a stable franchise system, all dealers have the same vehicle cost. (See Dkt. 16-1 at 6 ff).

Mazda's argument that an incentive program is permissible under this section of the FPA because "incentives" are not explicitly mentioned by name, if

#10406540.1

accepted, would allow and even encourage Mazda and other franchisors to easily circumvent the restrictions of this section by artfully crafting the terminology they employ. However, the mandate of the statute is that all vehicles be sold to all dealers "at the same price." Incentives ultimately given to some dealers, but not all, result in differences in price among dealers. Moreover, regardless of the language Mazda chooses to use, the MBEP offers a "discount, allowance, credit or bonus" that creates a "difference in price."[2] If Mazda had used the word "bribe for obedient behavior" instead of "incentive," would that too be excluded from the statutory prohibition because "bribes" are not explicitly mentioned? One would think not, and so, Mazda's choice of words is not dispositive.

Accordingly, the MBEP violates N.J.S.A. 56:10-7.4(h), which in and of itself warrants the entry of summary judgment in favor of NJ CAR.

B. **The MBEP Distinctions Violate N.J.S.A. 56:10-7.4(j).**

N.J.S.A. 56:10-7.4(j) prohibits "motor vehicle franchisors" from "impos[ing] *or attempting to impose* any requirement, limitation or regulation on, *or interfere or attempt to interfere with*, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated . . .

---

[2] Indeed, what Mazda is offering under the MBEP falls squarely within the very definition of "discount" it relies upon in its opposition. Qualifying dealers under the MBEP receive "a reduction made from regular or list price" – a discount." Mazda has a list price at which it sells its vehicles to all dealers and qualifying dealers under the MBEP receive up to a 6.5% reduction from that price.

4

#10406540.1

*or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit*, as a result of the manner in which the motor vehicle franchisee utilizes his facilities." A motor vehicle franchisor may only require that a franchisee maintain such portion of the dealership facility for the franchisor's franchise as may be required to meet the franchisor's "reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor." N.J.S.A. 56:10-7.4(j).

On its face, the MBEP denies dualed dealers (dealerships with more than just the Mazda franchise) the entire 4.5% discount/bonus for facilities. Mazda does not and cannot dispute that some Mazda dealers in New Jersey are dualed dealers. While Mazda can require its dealers to provide facilities sufficient to meet its "uniformly applied" "reasonable, written space and volume requirements," the MBEP imposes a blanket penalty or loss of benefit on dualed dealers that is not limited to dualed dealers with insufficient facilities.[3] Thus, the MBEP violates N.J.S.A. 56:10-7.4(j) by "penalizing" and denying a "benefit" to dualed dealers based on the manner in which they use their facilities. Moreover, that penalty and denied benefit amounts to a prohibited "attempt to interfere" with the manner in

---

[3] The evident motive behind the MBEP is to eliminate dualed dealers, and to have all Mazda dealers in exclusive facilities, not to get dualed dealers to provide Mazda with more space or volume in a dualed facility. The adequacy of any dualed dealer's facility therefore is not a question of fact to be resolved.

5

#10406540.1

which Mazda dealers use their facilities by pressuring them to de-dual so that they can earn the facilities discount or bonus.

Beyond the dualled dealers, the MBEP distinguishes between Retail Evolution ("RE") dealers and exclusive showroom dealers, based on the manner in which such dealers use their facilities, the full benefit of the facilities discount/bonus being denied to exclusive showroom dealers. In this respect, the MBEP violates N.J.S.A. 56:10-7.4(j) by imposing a "penalty" on or denying a "benefit" to exclusive showroom dealers and by "attempting to interfere" with the manner in which they use their facilities by pressuring them to become RE dealers.

Mazda's interpretation of N.J.S.A. 56:10-7.4(j) improperly cherry picks the prohibition on "imposing" a facility requirement and disregards the numerous other prohibitions in this section. This section does not only bar the imposition of facility requirements; it also bars any attempt to impose such requirements, interference or attempts to interfere with how a dealer operates a facility, and imposition of a penalty, denial of a benefit or a threat to deny a benefit in connection with the operation of a facility. The MBEP violates many of these proscriptions.

Mazda argues that the MBEP falls within the exception to N.J.S.A. 56:10-7.4(j) permitting facility requirements where a franchisor and dealer voluntarily agree to them. The MBEP, however, is not a voluntary agreement between Mazda

6

and an individual dealer. Rather, it has been unilaterally imposed on *all* Mazda dealers who must achieve its requirements absent any voluntary agreement or face a penalty or loss of a benefit given to other dealers. The MBEP does not comport with what a voluntary agreement is, and thus does not fall within this exception.

Mazda's concern that a franchisor would never be able to agree to facilities requirements with a dealer under NJ CAR's interpretation of N.J.S.A. 56:10-7.4(j) is misguided and unfounded. An example of a permissible agreement would be an offer by a franchisor to reimburse a dealer for some or all of the cost of, for example, de-dualling a dealership, which the dealer can voluntarily accept, and receive the offered consideration, or reject and not be subject to a penalty for so doing. Such an example, however, is a far cry from a program such as the MBEP where *all* Mazda dealers either comply or are penalized.

Accordingly, this Court should grant summary judgment in favor of NJ CAR finding the MBEP in violation of N.J.S.A. 56:10-7.4(j).

> **C.   Without Evidence That The Costs Incurred To Build Exclusive Facilities Are Financially Justified, The MBEP Attempts to Coerce Dealers To Build Facilities In Violation Of N.J.S.A. 56:10-7.4(l).**

The MBEP violates N.J.S.A. 56:10-7.4(l), which prohibits a "motor vehicle franchisor" "to require *or attempt to require* a motor vehicle franchisee to relocate or implement any facility or operational modifications *or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any*

7

#10406540.1

***penalty, or deny or threaten to deny any benefit*** as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification ***unless the motor vehicle franchisor can demonstrate***," among other things, that the franchisee "will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to ***earn a reasonable return on*** his total investment in such facility or from such operational modification, and the ***full return*** of his total investment in such facility or operational modification within 10 years."

To obtain the full facilities discount or bonus, a dealer must have an exclusive facility with all RE elements and have a dedicated Mazda General Manager. As Mazda does not contend that all of its New Jersey dealers meet these requirements (and certainly the dealers who submitted Declarations in opposition to Mazda's motion to dismiss do not), Mazda dealers in New Jersey are presently being "penalized" and denied a "benefit" because they have failed or refused to make facilities and operational modifications. Moreover, the other Mazda dealers who are first submitting to Mazda's coercion to modify their facilities, establishes that those dealers did not and still do not have facilities that entitle them to the full discount even though the MBEP has now been in effect for months.

Similar to its strained interpretation of N.J.S.A. 56:10-7.4(j), Mazda improperly focuses on the term "require" in N.J.S.A. 56:10-7.4(l). Subsection (l), however, does not prohibit only "requirements;" it also prohibits attempts to

8

#10406540.1

impose requirements, penalties, attempts to impose penalties, denials of benefits and attempts to deny benefits relating to a dealer's refusal to modify a facility. The MBEP, at the very least, penalizes and denies benefits to Mazda dealers who do not comply with its provisions.

Mazda's only possible defense to the MBEP's violation of N.J.S.A. 56:10-7.4(l) would be that it demonstrated that an affected dealer will be able to "earn a reasonable return on his total investment" and the "full return of his total investment in such facility or from such operational modifications within 10 years." The burden of so demonstrating is on *Mazda* and logically such demonstration must occur at the time the attempt to require the modification is made, and before any penalty is imposed or benefit denied. Here, Mazda has now been implementing the MBEP for many months, and has penalized and denied benefits to dealers that have not had the required facilities and dedicated General Manager. Yet, Mazda has produced no evidence that it has *ever* performed or undertaken any analysis at all to determine whether the dealership modifications in the MBEP are financially justified for any of, let alone all of, its affected dealers in New Jersey.[4] If Mazda could meet its burden of proof under this section, surely Mazda would have submitted its analysis in opposition to NJ CAR's motion, an analysis that should have been performed months ago.

---

[4] If they existed, any documents so demonstrating would be within Mazda's possession so discovery is not needed for Mazda to obtain them.

9

#10406540.1

Consequently, Mazda's implementation of the MBEP also violates N.J.S.A. 56:10-7.4(l) and summary judgment in favor of NJ CAR should be granted.

### D. The Court Should Not Insert Requirements Into The FPA Not Found In Its Words And Contrary To The Legislature's Intent.

Mazda proposes to rewrite the FPA by borrowing and inserting the requirement of specific anti-trust effect or injury from the Robinson Patman Act of 1936, 15 U.S.C. §13(a) ("RPA") and the exceptions to the bar against price differentials in judicial interpretations of the RPA. Such restrictive requirements or exceptions simply are not found or even suggested anywhere in the language of N.J.S.A. 56:10-7.4(h), (j) or (l). To, in essence, rewrite these sections with such restrictions would be contrary to the rules of statutory construction and the edict that remedial statutes be given an expansive meaning. (See Dkt. 16-1 at pp. 27-28).

Moreover, while the RPA finds certain price differentials between purchasers to be contrary to the federal policy in favor of fair competition on a level playing field, and in such respects addresses similar concerns and reflects many of the policies of the FPA, it serves different purposes and is more limited than the FPA sections in question. The RPA, as part of the Federal anti-trust laws, is concerned specifically with restraints on trade. The focus of N.J.S.A. 56:10-7.4, by contrast, is on regulation of the new motor vehicle sales and service business

10

based on broader policy reasons and to broader ends than the RPA. Though the FPA addresses restraints on competition, that statute also addresses the franchisor-franchisee relationship and promotes state interests in employment in good paying automotive industry jobs, state and local tax revenues, consumer convenience and highway safety through a geographically distributed network of stable dealerships, which maintain adequate vehicle inventories, stock necessary parts in sufficient quantities to meet service needs, perform warranty and safety recall repairs and conduct business in a responsible manner. To foster these ends, as well as the more narrow interests addressed at the Federal level, the Legislature has determined that certain franchisor conduct is contrary to the public interest and must be prohibited. The prohibition is not limited to cases in which anti-trust type intent or effect can be proven.

The legislative history of the FPA readily reveals the broad public policy behind this statute. For example, the N.J. Assembly Committee Statement to A.B. 3722, 1/20/2011 (the 2011 amendments to the FPA) states:

> Over the years, the "Franchise Practices Act" has been amended to keep pace with changing market conditions and to address new threats to the consumer and the public interest in the franchise system . . . .
>
> This bill is intended to protect New Jersey new car dealerships and their employees from further economic dislocation imposed by automakers. This bill is designed to level the playing field on which auto franchisees and auto franchisors do business and to protect the consumer and the

11

>public interest in a strong and secure franchise system of responsible local business.

It is incumbent on this Court to give effect to this Legislative intent. Accordingly, Mazda's proposed construction of the FPA, which is not found in the language of the statute or its Legislative history and fails to give effect to the Legislative intent behind the statutory provisions, should be rejected.

### E. NJ CAR Has Suffered A Concrete Injury In Fact By Virtue Of The MBEP's Violations Of The FPA.

Mazda argues that it would be unfair to take the MBEP away from New Jersey dealers who have incurred costs to secure and are enjoying the MBEP's benefits and that these dealers' interests must be considered. Even assuming, but without admitting, that such dealers exist, the continued violation of a duly-enacted law cannot be permitted merely because some members of the community may benefit therefrom. Rather than the Court failing to enforce the law, the recourse of those who oppose it is found in the Legislature where they can seek to have the law overturned.

At present, the Legislature views price competition among dealers based on price differentials from the franchisor as contrary to the public interest in a healthy motor vehicle franchise system that provides jobs, tax revenue and convenient sales and service, most particularly convenient warranty and recall safety repairs, for motor vehicle owners. Likewise, the Legislature believes that equalizing the

12

disparity in bargaining power between franchisors and dealers is served by laws that limit a franchisor's control over the manner in which a dealer uses its facility (N.J.S.A. 56:10-7.4(j)) and the franchisor's ability to compel dealers to make financially unjustifiable facilities and operational modifications (N.J.S.A. 56:10-7.4(l)). Until the Legislature is convinced that these policies on which the statutory provisions in question can be grounded no longer exist and merit legislative action, the Court's role is to enforce what the Legislature has enacted.

Mazda's violations of the FPA, regardless of the existence of any dealers that may benefit therefrom (though there are such dealers), are injuries-in-fact sufficient to support a judgment for declaratory and injunctive relief. Warth v. Sedin, 422 U.S. 490, 500 (1975); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 576-78 (1992). Mazda thus cannot rely on some dealers' purported support of the MBEP to justify its violation of several sections of the FPA.

### F.     Mazda's Proclaimed Statutory Defense Is Not Applicable.

Mazda's contention that it might have a defense against an individual lawsuit by a dealer that is deficient in some aspect of the dealer's operations under N.J.S.A. 56:10-9 is simply not relevant. First, this is not a lawsuit "brought under" the FPA to which N.J.S.A. 56:10-9 applies, namely, as Mazda argues, N.J.S.A. 56:10-10. NJ CAR has filed a declaratory judgment action and seeks relief under 28 U.S.C. §2201(a) and 2202.

13

#10406540.1

Second, this is not an action by an individual dealer in which that dealer seeks relief against Mazda. Rather, it is a collective action brought on behalf of all dealers and to uphold New Jersey law. No specific individual dealer's interests are being promoted while N.J.S.A. 56:10-9 applies only to actions by "a franchisee."

Third, N.J.S.A. 56:10-9 applies only to an "action brought under *this act*." "This act" is L. 1971, c.356. However, N.J.S.A. 56:10-7.4 was initially enacted in 1999 as part of L. 1999, c.45, and the specific subsections applicable to this action were enacted in 2011 as part of L 2011, c.66. Thus, the provisions in question are not part of the "this act" to which N.J.S.A. 56:10-9 applies.

G.  **No Discovery is Necessary To Decide This Motion.**

There are no genuine issues of material fact relevant to this summary judgment motion. It simply does not matter whether a dealer could make the facilities or operational modifications necessary to receive the full facilities discount/bonus, or how much such dealer would have to spend, whether dealers have lost out on the opportunity to make sales, whether the MBEP discount/bonus is actually being used for price competition, what percentage of dealers have gotten what portion of the facilities or customer experience bonus thus far or whether some dealers are more or less satisfied with the discount/bonus they are receiving or do not wish to rock the boat with their franchisor – their source of vehicle, parts and accessory supply – by challenging the MBEP. Not one of these issues relates

14

#10406540.1

to whether the MBEP violates the FPA on its face. Based on everything cited in NJ CAR's moving papers and above, only a side-by-side comparison of the FPA provisions to the language of the MBEP, and a few indisputable facts is necessary, to determine that the FPA has been violated and that NJ CAR is entitled to the declaratory and injunctive relief sought herein.

## CONCLUSION

For all of the foregoing reasons, plaintiff NJ CAR respectfully requests that the Court grant its motion for summary judgment by declaring that defendant Mazda's MBEP violates the FPA on its face and that it is unlawful for Mazda to implement the MBEP in New Jersey, and by also enjoining Mazda from applying the MBEP in New Jersey.

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff, New Jersey Coalition of Automobile Retailers, Inc.

By: /s/ MARVIN J. BRAUTH
      MARVIN J. BRAUTH

Dated: February 11, 2019