UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
NEW JERSEY COALITION OF              :
AUTOMOTIVE RETAILERS,                :
INC., a non-profit New Jersey Corporation, :
:
      Plaintiff,                  :
  v.                                          :    Civil Action No. 3:18-cv-14563-BRM-DEA
:
:
MAZDA MOTOR OF AMERICA, INC.,        :
                                       :    **OPINION**
      Defendant.                  :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Mazda Motor of America, Inc. ("Mazda" or "Defendant") seeking to dismiss Plaintiff New Jersey Coalition of Automotive Retailers, Inc.'s ("NJ CAR" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 7.) NJ CAR filed an Opposition to Mazda's Motion to Dismiss (ECF No. 12) and Mazda filed a Reply Brief to NJ CAR's Opposition to its Motion to Dismiss (ECF No. 17). Also before this Court is NJ CAR's Motion for Summary Judgment. (ECF No. 16.) Mazda filed an Opposition to NJCAR's Motion for Summary Judgment (ECF No. 25) and NJCAR filed a Reply Brief to Mazda's Opposition to its Summary Judgment Motion (ECF No. 26). Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Mazda's Motion to Dismiss is **GRANTED** and NJCAR's Motion for Summary Judgment is **DENIED AS MOOT**.

I. **BACKGROUND**

A. **Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

NJ CAR is a trade association, the members of which are franchised new motor vehicle dealers in New Jersey. (ECF No. 1 ¶ 1.) Among the services NJ CAR provides to its members are education, training, and advocacy before the Legislative and Executive Branches of the New Jersey state government. (*Id.* ¶ 2.) Occasionally, NJ CAR participates as an *amicus curiae* or as a party in litigation concerning the interests of its members. (*Id.* ¶ 3.) Mazda is a California corporation with its principal place of business in Irvine, California which has franchised 16 Mazda dealerships in New Jersey that are members of NJ CAR. (*Id.* ¶¶ 4-5.)

Mazda creates price differentials between dealer-franchisees by "using incentive programs which purport to reward dealers for achieving specified goals." (*Id.* ¶ 12.) Dealers who achieve the goals receive a payment for each vehicle the dealer sells, which in turn "reduces the cost of the vehicle to the dealer in comparison to dealers who are unable to achieve the goal." (*Id.*) NJCAR alleges price differentials "adversely affect dealers who do not benefit from them," as the "higher per vehicle costs incurred by such dealerships put them at a disadvantage when competing for customers over price." (*Id.* ¶ 13.) This competitive disadvantage "affects a dealer's sales, ability to make a profit and viability." (*Id.*) Price differentials therefore enable franchisors "to create

winners and losers," force conduct by dealers that does not make financial sense, and ultimately cause certain dealers to go out of business. (*Id*.) NJ CAR alleges the competitive advantage that price differentials create for some of a franchisor's dealers is "not based on the market efficiency of the preferred dealers but on the cost advantage provided by the franchisors." (*Id.* ¶ 14.)[1] NJ CAR contends that these price differential abuses prompted the New Jersey State Legislature to ratify and amend the NJFPA. (*Id.* ¶¶ 15-20.)

In 2018, Mazda announced the introduction of the Mazda Brand Experience Program 2.0 (the "MBEP"). (*Id.* ¶ 21.) The MBEP went into effect on July 3, 2018. (*Id*.) Pursuant to the MBEP, Mazda dealers can earn incentives – in the form of discounts or bonuses – for each vehicle a Mazda dealer sells based on the dealer's compliance with Mazda's MBEP requirements. (*Id.* ¶ 22.) The incentives can be as high as 6.5% of the Manufacturer's Suggested Retail Price ("MSRP") of a vehicle depending on "the degree to which a dealer complies with Mazda's MBEP requirements." (*Id.* ¶ 23.) Up to 4.5% of the incentive is based on "facilities and other requirements," whereas up to 2% of the incentive is based on Mazda's calculation of "customer experience at the dealership." (*Id*.)

To qualify for the 4.5% facilities portion of the incentive, a dealer must have an exclusive

---

[1] NJ CAR further alleges that:

> It has been recognized on both the state and national levels that artificial price advantages so created are contrary to the public interest as they serve to reduce competition, adversely affect competitors and ultimately result in higher prices for goods and services. Additionally, any reduction in the number of motor vehicle dealers resulting from the effects of price differentials has the further effect of reducing consumer access to local, convenient access to warranty and safety recall repairs contrary to the public interest.

(ECF No. 1 ¶ 14.)

3

Mazda facility which incorporates all Mazda required image elements, satisfies other "base elements" required by Mazda, and employs a "dedicated, exclusive Mazda General Manager." (*Id.* ¶ 25.) A dealer who satisfies all of the foregoing requirements but does not retain a "dedicated, exclusive Mazda General Manager" forfeits 1.7% of the incentive. (*Id.* ¶ 26.) Dealers with exclusive facilities that lack all Mazda image elements forfeit another 1.8% of the incentive and "dualled dealers" – facilities that include another brand – forfeit the entire 4.5%. (*Id.*) The 2% incentive for "Customer Experience" is an "all or nothing incentive" whereby some dealers receive a 2% incentive – in the form of a discount or a bonus – per vehicle sold based on their compliance with the "Customer Experience" criteria whereas other do not. (*Id.* ¶ 27.)[2]

NJ CAR contends the MBEP violates the terms of the NJFPA on its face as: (1) it results in vehicle price differentials among dealers through incentives in different amounts paid for each vehicle, in violation of N.J.S.A. 56:10-7.4(h); (2) it denies a per-vehicle incentive benefit to dealers with dualled facilities, in violation of N.J.S.A. 56:10-7.4(j); and (3) it denies a per-vehicle incentive to dealers who do not provide Mazda with exclusive, image compliant facilities despite the fact that Mazda has presented its dealers with no evidence that the cost of such facilities can be financially justified, in violation of N.J.S.A. 56:10-7.4(l). (ECF No. 1 ¶ 28.) The Complaint asserts two causes of action pursuant to the alleged violations of the NJFPA, seeking a declaratory judgment and injunctive relief, respectively. (*Id.* at 11-12.)

---

[2] In sum, Mazda dealers have the potential to earn the following incentives: "Retail Evolution" dealers may earn up to a 6.5% of MSRP per vehicle sold; Mazda exclusive dealers may earn up to 4.8% of MSRP per vehicle sold; exclusive showroom dealers may earn up to 3.0% of MSRP per vehicle sold; and dual dealers may earn up to 2.0% of MSRP per vehicle sold. (ECF No. 1 ¶ 20; ECF No. 1, Ex. B.)

### B. Procedural History

On October 2, 2018, NJ CAR filed the Complaint against Mazda seeking a declaratory judgment and injunctive relief asserting causes of action for violations of the NJFPA. (ECF No. 1.) On November 8, 2018, Mazda filed a Motion to Dismiss the Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 7.) On December 3, 2018, NJ CAR filed an Opposition to Mazda's Motion to Dismiss (ECF No. 12) and on December 17, 2018, Mazda filed a Reply Brief to NJ CAR's Opposition to its Motion to Dismiss (ECF No. 17).

On December 14, 2018, NJ CAR filed a Motion for Summary Judgment seeking a declaratory judgment in its favor and enjoining Mazda from implementing the MBEP in New Jersey. (ECF No. 16.) On January 22, 2019, Mazda filed an Opposition to NJ CAR's Motion for Summary Judgment (ECF No. 25) and on February 11, 2019, NJ CAR filed a Reply Brief to Mazda's Opposition to its Summary Judgment Motion (ECF No. 26).

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Standard

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive

5

truthfulness attaches to [the] plaintiff's allegations . . . ." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing Mortensen, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

### III. DECISION

Mazda contends NJ CAR cannot satisfy the three-prong test established by the Supreme Court for associational standing in *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), and as such, this Court must dismiss the Complaint. (ECF No. 8 at 9-21.) Specifically, Mazda argues there is no allegation of harm to an identified member of NJ CAR, there is an inherent conflict of interest between the Mazda dealers in NJ CAR's membership who are eligible

6

for MBEP payments and those who are not, and the claims asserted in the Complaint require individual participation thereby vitiating associational standing. (*Id.*) NJ CAR argues that it possesses standing to maintain this suit as, *inter alia*, NJ CAR members have standing to sue in their own right and the interests NJ CAR seeks to protect are germane to the organization's purpose. (ECF No. 12 at 18-29.)

A trade association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Furthermore, "whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). In every case in which the Supreme Court has recognized associational standing, the relief sough has been "a declaration, injunction, or some other form of prospective relief." *Id.* This Court addresses each prong of the *Hunt* test in turn.

### A. Members' Standing to Sue (First *Hunt* Factor)

Mazda argues NJ CAR individual members lack standing to sue as the Complaint makes no specific allegation of harm suffered by any member of NJ CAR as a result of the MBEP. (ECF No. 7 at 10-11.) NJ CAR contends its individual members have standing to sue as, among other reasons, the "violation of NJ CAR's members' rights under the [NJFPA] is unquestionably directly traceable to Mazda's implementation of the MBEP and was not caused by the action" of some third party not before the Court. (ECF No. 12 at 19-23.)

The first *Hunt* factor requires an association to show that at least one of its members would have standing to sue on its own. The requirements for standing for an individual plaintiff in federal

court is well-settled:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

While a plaintiff must prove each prong of the *Lujan* inquiry, the Third Circuit has stressed that the "injury-in-fact element is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). To satisfy the injury-in-fact requirement at the pleading stage, an association must make "specific allegations establishing that at least one identified member has suffered or would suffer harm" resulting from the challenged action. *Pennsylvania Prison Soc'y v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

The second and third prongs for individual standing are not at issue in this matter. Rather, Mazda contends only "apart from a general allegation that NJ CAR's membership includes Mazda dealers, the Complaint does not identify any individual members of NJ CAR." (ECF No. 7 at 11.) Mazda argues that such deficiency constitutes a basis to dismiss NJ CAR's claims in and of itself. (*Id*.) However, in *Forum for Acad. & Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 275-86 (D.N.J. 2003), the District of New Jersey held that disclosing members' identities is not a

8

necessary prerequisite to associational standing in all cases.[3] The Court reasoned that the Solomon Amendment would "plainly affect[] law schools" and that as such, the association "need not reveal its membership list at the pleading stage in order to bring suit on its members' behalf." *Id.* at 286. In so holding, this District stressed that associational standing does not follow a "blanket rule that associations seeking to bring suit on behalf of their members must identify their membership," but rather "whether the factual allegations in a given context sufficiently demonstrate that an association indeed has members that have suffered an injury-in-fact." *Id.* at 289.

Here, NJ CAR has alleged in the Complaint that its membership includes sixteen franchised Mazda dealerships. (ECF No. 1 ¶ 5; Appleton Decl. (ECF No. 12-3) ¶ 6.) Additionally, NJ CAR has identified all sixteen of its Mazda dealer members (ECF No. 12-3, Ex. B), and such list is also readily available to the public via NJ CAR's website directory. (ECF No. 12 at 22). Furthermore, NJ CAR also provided declarations from two of its Mazda dealer members identifying and describing the harm that has befallen each, and will continue, as a result of the MBEP.[4]

---

[3] In *Rumsfeld*, an association of law schools filed a lawsuit on behalf of unidentified law school members seeking a declaration that the Solomon Amendment was unconstitutional. 291 F. Supp. 2d at 274. The Solomon Amendment was a statute conferring authority on the United States Secretary of Defense to deny federal funding to institutions of higher education that prohibit or effectively prevent on-campus military recruiting. *Id.* Plaintiffs, which included organizations of law school professors and interest groups, among others, filed suit contending the Solomon Amendment was unconstitutional as, *inter alia*, it conferred or denied benefits on the grounds of freedom of expression. *Id.*

[4] These declarations include: one from Shelley Irwin Locascio ("Locascio"), the President of SIL, LLC d/b/a Irwin Mazda ("Irwin Mazda") asserting, *inter alia*, that all of the modifications and renovations that Mazda directed Irwin Mazda to perform would "render extensive renovations and construction that Irwin [Mazda] had performed for several years . . . completely obsolete" and even if Irwin Mazda could comply with all of the MBEP requirements, it would not make a reasonable return on such an investment because the bonuses would not offset the renovation costs (ECF No. 12-1 ¶¶ 8, 11); and one from Michael J. Ciasulli ("Ciasulli"), a Mazda franchisee and owner of Maxon Mazda, asserting, *inter alia*, that Maxon Mazda would need to spend approximately $10 to $12 million to retrofit its facilities to be eligible for the MBEP bonuses, and

9

Accordingly, Mazda's contention that NJ CAR has not identified any of its individual members is erroneous. Moreover, in light of this District's holding in *Rumsfeld*, 291 F. Supp. 2d at 286, NJ CAR need not even reveal its membership at the pleading stage to establish standing as the allegations in the Complaint sufficiently allege an injury-in-fact.

This Court is not persuaded by Mazda's argument that *Kessler Inst. For Rehabilitation v. Mayor & Council of Essex Fells*, 876 F. Supp. 641, 656 (D.N.J. 1995) provides support to its position. In *Kessler*, the plaintiff "clearly lacked standing" as it did not allege any concrete harm to any of its members, but only "an ideological interest" in the litigation. *Id.* Furthermore, the plaintiffs "failed to identify a single individual member [of the organization]," and as a result, the court determined it could not conclude any of plaintiff's members had suffered an injury to confer standing. *Id.* Here, by contrast, each of the Mazda members of NJ CAR has been identified, and NJ CAR provided declarations specifically outlining the alleged harm to each member caused by the continued implementation of the MBEP. (ECF No. 12-1 ¶¶ 8, 11; ECF No. 12-2 ¶¶ 9-10.) Therefore, NJ CAR's members have standing to sue in their own right and as a result, the first *Hunt* factor is satisfied.

### B. Germaneness (Second *Hunt* Factor)

Mazda argues NJ CAR does not satisfy the *Hunt* test's second prong – germaneness – as there is a serious conflict of interest between NJ CAR's Mazda dealer members who are eligible for the MBEP payments and those who are not. (ECF No. 7 at 11-14.) Mazda contends there is also a conflict of interest between NJ CAR's Mazda dealer members who receive MBEP payments and NJ CAR's non-Mazda dealer members who compete with those Mazda dealers for new vehicle

---

that such expenditure would place an extreme hardship on Maxon Mazda and would not create a reasonable return on investment. (ECF No. 12-2 ¶¶ 9-10.)

sales. (*Id.*) NJ CAR argues that the interests it seeks to protect in the litigation, fair competition, is germane to its purpose, and no conflict of interest exists because its position in the litigation is consistent with the interests of a majority of its members and it followed its own internal rules before filing the Complaint. (ECF No. 12 at 23-25.)

"Although an association may rely on the standing of its members to assert standing for itself by showing that only one of its members has the type of redressable injury that would give it standing to sue individually," *Polaroid Corp. v. Disney*, 862 F.3d 987, 999 (3d Cir. 1988) (citing *Warth*, 422 U.S. at 511), courts have "never" granted associational standing where there are "serious conflicts of interest either among the members of an association or between an association and its members." *Id.* However, a conflict of interest precluding associational standing does not exist if an association's position in the litigation is "not contrary to the interests of a majority of [its] members" and if the association follows "their own internal rules before joining [the] litigation." *Contractors Ass'n of E. Pa. v. City of Philadelphia*, 945 F.2d 1260, 1266 (3d Cir. 1991).

Pursuant to the MBEP, Mazda dealers are eligible to receive: an incentive of up to 6.5% of the MSRP of a vehicle based on compliance with MBEP requirements; an incentive of up to 4.5% per vehicle for incorporating an exclusive Mazda facility which incorporates all Mazda required image elements, satisfies other "base elements" required by Mazda, and employs a "dedicated, exclusive Mazda General Manager;" and an "all or nothing" incentive of 2% for "Customer Experience." (ECF No. 1 ¶¶ 23-27; ECF No. 1, Ex. A.)[5] The lawsuit presents a conflict of interest between the NJ CAR Mazda dealer members who have undertaken renovations and made other efforts to become eligible for the various incentives and the NJ CAR Mazda dealer members who

---

[5] More exact incentive amounts, and the specific requirements for obtaining such incentives, are laid out in MBEP, which is attached as Exhibit A to the Complaint. (ECF No. 1, Ex. A at 4-9.)

have not. As the Complaint alleges and as the Locascio and Ciasulli declarations demonstrate, the costs to dealers of modifying their facilities to obtain the MBEP incentives can be exorbitant, and a dealer often will only incorporate such changes if they are assured of some possibility to recover the costs. (ECF No. 12-1 ¶¶ 8-12; ECF No. 12-1 ¶¶ 9-10; ECF No. 1 ¶ 16.)

The lawsuit also presents a conflict of interest between NJ CAR's Mazda dealer members who are eligible to receive the MBEP payments and NJ CAR's non-Mazda dealer members. NJ CAR members who deal vehicles other than Mazda brand vehicles compete with NJ CAR Mazda dealer members for new car sales. The Complaint alleges a 6.5% incentive on a $30,000 – which comes to $1,950 – creates a "significant competitive differential between dealers who receive and who do not receive the incentive," thereby enhancing the Mazda dealer's "ability to engage in intra-brand and inter-brand competition." (ECF No. 1 ¶ 24.) Thus, it is in the interests of the Mazda dealers who receive the MBEP incentives to continue receiving such incentives to enhance their competitive standing in relation to non-Mazda dealers, whereas it is in the interest of the non-Mazda dealers to block the MBEP incentives and minimize the competitive advantage of the Mazda dealers with whom they compete for sales.

NJ CAR does not dispute that conflicts of interest exist between its members, instead arguing that such conflicts should not vitiate associational standing pursuant to the second prong of the *Hunt* inquiry because "there is no evidence that a majority of the Mazda dealers or of NJ CAR's membership as a whole oppose enforcing New Jersey's law." (ECF No. 12 at 25.) NJ CAR contends the Third Circuit's holding in *Contractors Ass'n*, 945 F.2d at 1266 – that a conflict of interest does not preclude associational standing if the association's position is not contrary to the interests of a majority of its members and if the association follows their own internal rules before joining the litigation – necessitates a finding that it has standing to maintain this suit.

Although NJ CAR provided a declaration from its President, James B. Appleton, attesting that NJ CAR adhered to its by-laws before filing the lawsuit (Appleton Decl. (ECF No. 12-3) ¶¶ 28-30)[6], the Complaint itself and the relevant, extrinsic evidence indicates that NJ CAR's position in the litigation is not consistent with the interests of the majority of its affected members. Indeed, a majority of the NJ CAR Mazda dealer members have made investments towards obtaining incentives pursuant to the MBEP such that they expect returns on these investments and would suffer a detriment should NJ CAR proceed in this litigation. (Kaczmarek Decl. (ECF No. 7-1) ¶¶ 9-13.) There are sixteen Mazda dealer members of NJ CAR. (*Id.*; ECF No. 7-3; ECF No. 7 at 13; ECF No. 12 at 24-25.) Three Mazda dealer members are currently operating out of certified Retail Evolution facilities, thereby deeming them eligible to receive the highest tier of MBEP incentives, and another eight Mazda dealer members have signed agreements enrolling in Mazda's Retail Evolution Program. (ECF No. 7-1 ¶¶ 9-10.) As a prerequisite for enrollment in the Retail Evolution Program, the eight Mazda dealer members have agreed to "construct [] facilit[ies] that meet[] Mazda's brand standards and incorporates certain Mazda brand imaging," as well as to "a timeline for constructing a certified Retail Evolution facility with certain milestones." (ECF No. 7-1 ¶¶ 7-8.) In exchange, Mazda has agreed to hold in escrow the incentives each dealer would have received as certified Retail Evolution dealers, releasing the funds incrementally as certain construction milestones are achieved. (*Id.* ¶ 13.) Therefore, at least eleven of the sixteen Mazda dealer members of NJ CAR have made some investment towards obtaining MBEP incentives. As such, prosecuting litigation to enjoin the MBEP is contrary to their interests.

---

[6] Appleton attested that the by-laws of NJ CAR grant authority to him, as the President, to decide to file lawsuits on NJ CAR's behalf "or in a representative capacity on behalf of its members," and that he met with NJ CAR's Executive Committee Chairman who "defer[red]" to him "as to whether NJ CAR should institute litigation against Mazda for implementing the MBEP." (ECF No. 12-3 ¶¶ 28-29.)

NJ CAR argues Mazda "concedes that five Mazda dealer-members of NJ CAR do not qualify for any of the facilities portion of the MBEP, that eight do not fully qualify, so that eleven in total will certainly get loss of the total discount or bonus." (ECF No. 12 at 24.) However, none of the applicable Third Circuit case law suggests that an association member must receive a "full" or even equal benefit to be considered not to have an interest in the litigation, only that such entity "benefit from the offer." *Contractors Ass'n*, 945 F.2d at 1265. The eight Mazda dealer members enrolled in the Retail Evolution Program have a tangible interest in the preservation of the MBEP. Should the MBEP be discontinued, the eight Mazda dealer members enrolled in the Retail Evolution Program would not only be deprived of the reasonably-expected incentives held for them in escrow, but would also have spent a significant amount of money on Retail Evolution facility construction for naught. As such, it is evident that a majority of the Mazda dealer members have a legitimate interest in the continuation of the MBEP, which runs contrary to its position in this litigation.[7]

Next, NJ CAR contends there is no "certainty" that the eight Mazda dealer members enrolled in the Retail Evolution Program will "always or even ever get the Customer Experience portion of the discount." (ECF No. 12 at 25.) This point is immaterial. Each of the dealers enrolled in the Retail Evolution Program have expended resources towards obtaining MBEP incentives such that they have a legitimate and cognizable interest in the continuation of the MBEP. Furthermore, NJ CAR bears the burden of demonstrating it possesses standing to maintain this

---

[7] Although not raised as an argument in NJ CAR's briefs, this Court notes that, in calculating the total membership of NJ CAR for the purpose of determining whether the litigation runs contrary to the interests of the majority, it will consider the total relevant membership to include only Mazda dealer members. Accordingly, NJ CAR members that do not sell Mazda vehicles are not included in the calculation. This approach is pragmatic as NJ CAR has repeatedly claimed that it has brought this lawsuit "on behalf of its Mazda dealer members," (ECF No. 12 at 1, 6, 8), and because only such members have standing to maintain this suit pursuant to N.J.S.A. 56:10-10

lawsuit. *Davis*, 824 F.3d at 346; *Mortensen*, 549 F.2d at 891. Notably, NJ CAR has not provided any declarations or other evidence rebutting the Kaczmarek Declaration – which attested to the incremental incentives towards which the Mazda member dealers are currently working (ECF No. 7-1 ¶¶ 7-13) – or indicating that any of NJ CAR's eleven Mazda dealer members who are enrolled in the MBEP in some capacity have any interest or potential material gain from NJ CAR's success in this litigation.

Finally, NJ CAR argues the "allegation that some NJ CAR members will benefit under the MBEP is not the type of 'conflict' that should" bar suit by NJ CAR pursuant to the second *Hunt* factor because Mazda "should not be able to take advantage of a conflict of its own creation through the implementation of a program that violates the [NJFPA] on its face." (ECF No. 12 at 25.) This argument is unpersuasive. NJ CAR provides no case law suggesting that there are "types" of conflicts that may act to vitiate standing pursuant to the germaneness prong of the *Hunt* test whereas other conflicts do not.[8] Furthermore, NJ CAR's assertion that the implementation of the MBEP "violates the [NJFPA] on its face" is premature and entirely conclusory.

As there is a conflict of interest in which a majority of NJ CAR's Mazda dealer members have an interest directly contrary to that of NJ CAR in this lawsuit, the interests NJ CAR seeks to protect are not germane to its purpose and the second *Hunt* factor is not satisfied.

### C. Participation by Individual Members (Third *Hunt* Factor)

As this Court has found that NJ CAR has not satisfied the second prong of the *Hunt* inquiry

---

[8] The Third Circuit has not provided guidance concerning what types of conflicts may preclude a finding of associational standing pursuant to the *Hunt* test, but has noted it is not appropriate to find standing where the conflict "will affect the adequacy of representation or present a likelihood of a collusive suit that would deprive the court of vigorous advocacy on all sides of [a] dispute." *Contractors Ass'n*, 945 F.2d at 1265. Given that more that a majority of NJ CAR's Mazda dealer members have a significant monetary interest in the continuation of the MBEP, such concerns are present in this litigation should NJ CAR be determined to have standing.

for demonstrating associational standing, it need not consider the third prong of the inquiry as each prong must necessarily be fulfilled for a determination of standing. *Hunt*, 432 U.S. at 343; *Warth*, 422 U.S. at 515.

## IV. CONCLUSION

For the reasons set forth above, Mazda's Motion to Dismiss the Complaint (ECF No. 7) is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**. NJ CAR's Motion for Summary Judgment (ECF No. 12) is **DENIED AS MOOT**.

**Date: July 30, 2019**  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**