# UNITED DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAZDA MOTOR OF AMERICA, INC., <br><br> Defendant. | **Case No. 3:18-cv-14563-BRM-TJB** <br><br><br> Motion Day: September 8, 2020 |

## <u>DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

Brian D. Sullivan
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ 07068
Tel:  (973) 994-7525
Email: bsullivan@foxrothschild.com

John J. Sullivan
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS .................................................................................4

    A.    The Parties ..............................................................................4

    B.    The Mazda Brand Experience Program ...............................4

    C.    NJ CAR's Claims ...................................................................7

ARGUMENT ....................................................................................................7

    I.    This Court Lacks Subject-Matter Jurisdiction Because Individual
        Participation By Association Members Will Be Required ...................7

    II.    In The Alternative, NJ Car Cannot State A Claim
        Under The NJFPA .................................................................15

CONCLUSION ................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007) ..................................................................7

*Brentlinger Enterprises v. Volvo Cars of North America, LLC*,
2016 WL 4480343 (S.D. Ohio Aug. 25, 2016) ...........................................10, 11

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*,
119 F. App'x 419 (3d Cir. 2005) ........................................................17

*Free Speech Coalition, Inc. v. Attorney Gen. United States*,
787 F.3d 142 (3d Cir. 2015) ...............................................................8

*Graden v. Conextent Systems Inc.*,
496 F.3d 291 (3d Cir. 2007) .........................................................15, 17

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977)...............................................................1, 2, 3, 8

*Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*,
232 F.Supp.3d 813 (E.D. Va. 2017) ...................................................10

*Leyse v. Bank of Am. Nat'l Assoc.*,
804 F.3d 316 (3d Cir. 2015) ...............................................................15

*New Jersey Coalition of Automotive Retailers, Inc. v. Mazda Motor of America,
Inc.*, 957 F.3d 390 (3d Cir. 2020) .........................................................2

*New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*,
107 F. Supp. 2d 495 (D.N.J. 1999)......................................................14

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
280 F.3d 278 (3d Cir. 2002) ...............................................................9

*Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*,
123 F.3d 111 (3d Cir. 1997) ...............................................................7

*State v. Butler*,
89 N.J. 220 (1982) ...........................................................................17

*Storino v. Borough of Point Pleasant Beach*,
    322 F.3d 293 (3d Cir. 2003) ...................................................................8

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)...........................................................................20

**STATUTES**

28 U.S.C. § 2201(a) .................................................................................19

Del. Code Ann. tit. 6, § 4916(a)................................................................18

Ga. Code Ann. § 10-1-623(e) ..................................................................18

N.C. Gen. Stat. § 20-308.1(d) ..................................................................18

N.J.S.A. 56:10-3 ......................................................................................16

N.J.S.A 56:10-7.4(h) ........................................................................9, 10, 11

N.J.S.A. 56:10-7.4(j)............................................................................11, 12

N.J.S.A. 56:10-7.4(l) ...............................................................................13

N.J.S.A. 56:10-9.............................................................................3, 4, 17

N.J.S.A. 56:10-10.........................................................................3, 16, 19

N.Y. Veh. & Traf. Law § 469 ..................................................................18

Pa. Stat. Ann. tit. 63, § 818.329 .............................................................18

W. Va. Code § 17A-6A-16(4)..................................................................19

Wash. Rev. Code § 49.96.260.................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)......................................................................1, 7, 15

Fed. R. Civ. P. 12(b)(6)......................................................................1, 3, 15

Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations ("**Mazda**") respectfully submits this brief in support of its motion to dismiss the Complaint (1) pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction; or, in the alternative (2) pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("**NJ CAR**") alleges that a Mazda incentive program violates the New Jersey Franchise Practices Act (the "**NJFPA**").  Compl., ¶ 28.[1]

In its Opinion dated July 30, 2019, this Court granted Mazda's prior motion to dismiss for lack of subject-matter jurisdiction.  Doc. 27.  The Court found that, while NJ CAR satisfied the first prong of the three-part test for associational standing established in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("**Hunt**") – i.e., that at least one member of NJ CAR had individual standing – NJ CAR did not satisfy the second prong of the test ("germaneness") because of conflicts of interests between members of NJ CAR. Doc. 27 at PageID 469, 474.  In light of this conclusion, the Court found it unnecessary to address Mazda's argument that NJ CAR did not satisfy the third

---

[1] The Complaint is Doc. 1 filed in this action.  This brief will also cite to the Declaration of Kyle Kaczmarek, dated November 7, 2018 ("**Kaczmarek Decl.**"), which was submitted with Mazda's prior motion to dismiss.

prong of the *Hunt* test, "as each prong must necessarily be fulfilled for determination of standing."  Doc. 27 at PageID 475 (citing, inter alia, *Hunt*, 432 U.S. at 343).

On April 28, 2020, the Third Circuit reversed, disagreeing with this Court's finding that NJ CAR did not satisfy the "germaneness" prong.  *New Jersey Coalition of Automotive Retailers, Inc. v. Mazda Motor of America, Inc.*, 957 F.3d 390, 393-94 (3d Cir. 2020).  Like this Court, the Third Circuit did not reach the question whether NJ CAR satisfied the third prong of *Hunt*.  In addition, the Third Circuit stated that "our opinion should not be understood as implying that the complaint sufficiently has stated a valid claim under the NJFPA" and that "[o]n remand, the District Court is free to consider any other arguments for dismissal that Mazda advances."  *Id*. at 394 n. 3.

Because a plaintiff must satisfy all three prongs of the *Hunt* test in order to establish that the Court has subject-matter jurisdiction, and because neither this Court nor the Third Circuit has yet addressed the question whether NJ CAR satisfies that prong, the Third Circuit's opinion cannot be considered the final word on subject-matter jurisdiction, notwithstanding any dictum in the opinion that might suggest otherwise.  *See, e.g., id*. at 394 n. 3 ("We limit our holding to the conclusion that the Coalition has association standing to bring this case.")

Accordingly, Mazda reasserts the argument that it made in its original motion to dismiss that NJ CAR cannot satisfy the third prong of the *Hunt* test, *i.e.,* it cannot show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. As shown below, determining whether Mazda's incentive program violates any of the provisions of the NJFPA invoked by NJ CAR requires an analysis of the costs of compliance by individual dealers versus the benefits that the dealer will receive. There can be no such analysis without the participation of individual dealers to establish the relative costs and benefits.

If the Court concludes that it does have subject-matter jurisdiction, however, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) on the ground that the NJFPA does not grant a private cause of action to NJ CAR. To the contrary, the statute very specifically provides that a "franchisee may sue *its* franchisor for violation of this act . . . ." N.J.S.A. 56:10-10 (emphasis added). The Legislature reaffirmed that the statute was intended solely to allow a franchisee to seek relief for its franchisor's statutory violations by granting the franchisor an affirmative defense "to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto." N.J.S.A. 56:10-9.

NJ CAR is not a franchisee, and Mazda is not its franchisor.  And if a non-franchisee such as NJ CAR were permitted to bring an action against a franchisor for violation of the NJFPA in place of the injured franchisee(s), it could negate the franchisor's affirmative defense under N.J.S.A. 56:10-9 (unless the injured franchisee(s) were required to participate in the proceeding).  Accordingly, the Court should apply the plain language of the statute and hold that NJ CAR cannot bring a claim under the NJFPA because it is not Mazda's franchisee.

## STATEMENT OF FACTS

### A.    The Parties

Mazda is the exclusive U.S. distributor of new Mazda motor vehicles. Kaczmarek Decl. ¶ 2.  Mazda distributes Mazda vehicles to franchised dealers who have entered into a contractual relationship with Mazda.  *Id.* ¶¶ 3-4.  There are sixteen (16) franchised Mazda dealers located in New Jersey.  Compl. ¶ 5.

NJ CAR is a trade association whose members are franchised new motor vehicle dealers in New Jersey, including the 16 Mazda dealers.  *Id.* ¶¶ 1, 5.

### B.    The Mazda Brand Experience Program

Mazda operates a "Mazda Brand Experience Program" ("**MBEP**"), pursuant to which eligible franchised Mazda dealers can earn payments from Mazda by meeting certain criteria.  The current version of MBEP became effective on July 3, 2018.  Compl. ¶ 21 and Ex. A thereto, p. 16.  Attached to the Complaint is a "Quick Start Guide" providing an "overview" of the current version of the MBEP.

Compl. ¶ 21 and Ex. A, p. 14.  The Quick Start Guide refers to the MBEP "Terms and Conditions" for the "details" of the program, and states that if "any discrepancy exists between the Quick Start Guide and the Terms and Conditions, the Terms and Conditions shall control."  Compl. Ex. A, p. 14.  Accordingly, to provide a full and accurate understanding of the program's details, Mazda is submitting a copy of the Terms and Conditions as Exhibit 2 to the Kaczmarek Declaration.

The Terms and Conditions state that the "MBEP is designed to support those dealers who are engaged and committed to the Mazda brand and consistently provide all customers with an ownership experience that exceeds their expectations."  Kaczmarek Decl. Ex. 2, p. 1.  By complying with the program's criteria, a dealer can earn a payment of up to 6.5% of the base Manufacturer's Suggested Retail Price ("MSRP") for each new Mazda vehicle it retails.  Compl. ¶ 23; Kaczmarek Decl. Ex. 2, p. 7.  The potential payments are comprised of various components, each with its own criteria.

The MBEP payments have two "Earnings Elements": (1) "Brand Commitment" (a maximum of 4.5%), and (2) "Customer Experience" (a maximum of 2%).  Compl. ¶ 23; Kaczmarek Decl. Ex.2, p. 7.  To be eligible for either Earning Element, the dealer must first meet certain "Base Qualifiers" relating to

5

facility inspections, training, service scheduling, customer records, and Mazda's courtesy vehicle program.  Kaczmarek Decl. Ex. 2, pp. 6, 11-16.

The Brand Commitment Earnings Element is tiered based on facility type. Compl. ¶¶ 25-26; Kaczmarek Decl. Ex. 2, p. 6.  To be eligible to receive the full 4.5%, the dealer must (1) operate from a qualifying "Retail Evolution Dealership" and (2) have a dedicated exclusive Mazda general manager.  Compl. ¶ 25; Kaczmarek Decl. Ex. 2, pp. 17-18.  "Retail Evolution" is the name of Mazda's facility "image program" (the "**Retail Evolution Program**").  Kaczmarek Decl. ¶ 6  and Ex. 2, p. 17.  To enroll in the Retail Evolution Program, a dealer must agree to construct a facility that meets Mazda's brand standards and incorporates certain Mazda brand "image elements," including certain signs and displays.  *Id.* ¶ 7.  For a dealer that has enrolled in the Retail Evolution Program but has not yet "broken ground" on a new Retail Evolution facility, Mazda will hold in "escrow" the "incremental" incentives the dealer would have received if it had qualified as a Retail Evolution Dealership.  *Id.* ¶ 11.  The escrowed amounts are released to the dealer once the dealer breaks ground on its Retail Evolution facility.  *Id*.

Non-Retail Evolution dealers are eligible to receive a Brand Commitment Earnings Element of 2.8% if they have an "Exclusive" Mazda facility, and 1.0% if they have an "Exclusive Showroom" for Mazda.  Compl. ¶ 26; Kaczmarek Decl. Ex. 2, p. 7.  Mazda dealers with "dualled" facilities (i.e., facilities that include

another brand without an exclusive Mazda showroom) are not eligible for a Brand Commitment incentive.  *Id.*

To be eligible to receive the Customer Experience Earnings Element of 2%, the dealer must meet certain minimum performance levels related to customer satisfaction.  Compl. ¶ 27; Kaczmarek Decl. Ex. 2, pp. 18-19.  Unlike the Brand Commitment Earnings Element, the Customer Experience Earnings Element is not tiered.  *Id.*  Moreover, a Mazda dealer can receive this 2% payment regardless of whether it has a Retail Evolution facility, an exclusive Mazda facility, an exclusive Mazda showroom or a dual facility.

## C.    NJ CAR's Claims

NJ CAR seeks a judgment declaring that the MBEP violates three provisions of the NJFPA and an injunction prohibiting Mazda from implementing the program in New Jersey.  Compl., ¶¶ 28, 32, 35.

## ARGUMENT

## I.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE INDIVIDUAL PARTICIPATION BY ASSOCIATION MEMBERS WILL BE REQUIRED

"Standing is a threshold jurisdictional requirement."  *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).  "[B]ecause standing is a jurisdictional matter," a motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1)."  *Ballentine v.*

*United States,* 486 F.3d 806, 810 (3d Cir. 2007). As the party invoking the Court's jurisdiction, NJ CAR "bears the burden of proving standing." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).

A trade association has standing to sue to protect the rights of its members only when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). NJ CAR cannot satisfy the third prong of this test.

Mazda acknowledges that the "relief requested" component of the third prong can be satisfied where, as here, the complaint seeks declaratory or injunctive relief instead of damages. However, the third *Hunt* prong is not "automatically satisfied" whenever an association seeks declaratory or injunctive relief. *See Free Speech Coalition, Inc. v. Attorney Gen. United States*, 787 F.3d 142, 154 n.6 (3d Cir. 2015). Rather, the court must still "examine the claims asserted to determine whether they require individual participation." *Id.*

Here, individual participation by New Jersey Mazda dealers will be necessary for NJ CAR to prove each of the statutory claims it has asserted. As the Third Circuit has cautioned in connection with this component of the *Hunt* test,

"conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002). NJ CAR's claims require precisely the sort of "fact-intensive-individual inquiry" the Third Circuit has warned against.

NJ CAR's first claim is that the MBEP violates N.J.S.A 56:10-7.4(h), under which a franchisor may not "fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus, and on reasonable, good faith and non-discriminatory allocation and availability terms." N.J.S.A 56:10-7.4(h). While there do not appear to be any published decisions interpreting N.J.S.A. 56:10-7.4(h), the Complaint alleges that its purpose is to prohibit "price differentials between dealers such that one dealer in New Jersey will have a <u>lower effective cost</u> for a similarly equipped vehicle than another dealer." Compl. ¶ 11 (emphasis added). Such differentials are prohibited, the Complaint alleges, because "the higher per vehicle costs incurred by [some] dealerships put them at a disadvantage when competing for customers over price." *Id.* ¶ 13.

In order to determine whether the MBEP in fact causes price differentials that disadvantage dealers who do not earn MBEP payments, NJ CAR will need to show that the "per vehicle effective costs" for the dealers who receive MBEP

payments are actually lower when the costs they incurred to satisfy the MBEP's criteria are taken into account.  This will require a "fact-intensive-individual inquiry" comparing the costs of MBEP compliance with the benefits received by the compliant dealers, as demonstrated by cases from other jurisdictions having similar price discrimination statutes.  *See, e.g., Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*, 232 F.Supp.3d 813, 827 & n.20 (E.D. Va. 2017) (denying VW dealer's motion for summary judgment where VW presented evidence that incentive payments under VW's program did not reduce the price of vehicles because of "the costs a dealer must incur to satisfy applicable incentive conditions"); *Brentlinger Enterprises v. Volvo Cars of North America, LLC*, 2016 WL 4480343 at *6 (S.D. Ohio Aug. 25, 2016) (granting summary judgment to Volvo and rejecting plaintiff's claim that incentives paid to competing "exclusive" Volvo dealer put plaintiff at competitive disadvantage because competitor "presumably . . . incurr[ed] the substantial costs" of complying with exclusivity requirement to earn incentives).

Moreover, if this case were to move forward, the Court would have to decide whether there is a "functional availability" defense available under N.J.S.A. 56:10-7.4(h).  While the statute does not expressly provide for this defense, the courts have read such a defense into the Robinson-Patman Act (the "RPA"), the federal price discrimination statute, even though that statute also does not expressly

provide for such a defense.  *See Brentlinger Enterprises*, 2016 WL 2280343 at \*4 ("Although not codified in the statute, a 'functional availability' defense to the RPA has emerged from the case law surrounding the RPA.").  The reasoning behind the defense is that, if the offered benefit is functionally available to all dealers, "'either no price discrimination has occurred, or . . . the discrimination is not the cause of [plaintiff's] injury.'"  *Id*. at \*4 (quoting *Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F. 2d 101, 105 (6th Cir. 1981)).  The reasoning that led the federal courts to read this defense into the RPA applies to N.J.S.A. 56:10-7.4(h) as well, and if the Court were to rule that the defense is available it would require a fact-intensive-individual inquiry into whether the MBEP payments are functionally available to those Mazda dealers who have chosen not to comply with the MBEP criteria.

NJ CAR's second claim is that the MBEP violates N.J.S.A. 56:10-7.4(j), which makes it unlawful for a franchisor:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated, including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or

used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor.  <u>The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid</u>.

N.J.S.A. 56:10-7.4(j) (emphasis added).  The Complaint alleges that the MBEP violates this provision by regulating the manner in which dealers utilize their facilities and/or by imposing a "penalty" on and/or denying a "benefit" to dealers who do not use their facilities in a manner consistent with MBEP criteria.  Mazda contends, on the other hand, that the program is covered by the last sentence of the statute, because compliance with the MBEP criteria is a matter of voluntary agreement between Mazda and the dealer pursuant to which Mazda pays the dealer separate and valuable consideration, i.e., the MBEP payments earned for complying with the program criteria.  Mazda in fact has written agreements with its New Jersey dealers concerning the use of their facilities, as well as written agreements with the New Jersey dealers who have agreed to establish Retail Evolution facilities.  Kaczmarek Decl. ¶¶ 4, 5, 10 and Ex. 1.  Individual dealer participation in this action will be necessary to determine whether these are voluntary agreements in which Mazda has paid separate and valuable consideration within the meaning of the final sentence of N.J.S.A. 56:10-7.4(j).

NJ CAR's third claim is that the MBEP violates N.J.S.A. 56:10-7.4(l), which makes it unlawful for a franchisor:

> To require or attempt to require a motor vehicle franchisee to relocate his franchise or to implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle.  This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized.

N.J.S.A. 56:10-7.4(l).  NJ CAR alleges that the MBEP violates this statute because "it denies a benefit (a per vehicle incentive) to dealers who do not provide Mazda with exclusive, image compliant facilities despite the fact that Mazda has presented its dealers with no evidence that the cost of such facilities can be financially justified."  Compl., ¶ 28.  Given the claim as framed by NJ CAR itself, and the statutory defense set forth in N.J.S.A. 56:10-7.4(l), this claim will obviously require individual participation by Mazda dealers to determine whether "the cost of

13

such facilities can be financially justified" with respect to each individual Mazda dealer.

In *New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*, 107 F. Supp. 2d 495 (D.N.J. 1999) ("**DaimlerChrysler**"), the court found that "the participation of individual dealers [was] not required in [NJ CAR's] action for injunctive relief" against DaimlerChrysler's threat to impose a $400 per vehicle surcharge on all vehicles it sold to its New Jersey dealers if any of its New Jersey dealers sought increased warranty reimbursement under the NJFPA.  *Id*. at 501 n. 5.  There, NJ CAR alleged that the $400 surcharge, and the threat to impose it, were in and of themselves unlawful.  *Id*. at 498.  Moreover, the imposition of the surcharge would obviously affect all New Jersey DaimlerChrysler dealers in the same way.  Thus, there was no need for individual dealers to participate.  Here, however, a consideration of individual dealer costs and benefits is required to determine if MBEP is lawful, and NJ CAR itself alleges that the program benefits some New Jersey Mazda dealers in their competition with other New Jersey Mazda dealers. Accordingly, this case is easily distinguishable from *DaimlerChrysler* with respect to the need for individual dealer participation.

The claims asserted by NJ CAR in this case will require the participation of NJ CAR's individual members who are Mazda dealers.  As a result, NJ CAR

14

cannot satisfy the third prong of *Hunt* and, accordingly, this Court does not have subject-matter jurisdiction.

## II.      IN THE ALTERNATIVE, NJ CAR CANNOT STATE A CLAIM UNDER THE NJFPA

The *Hunt* test addresses the question of "constitutional" standing: i.e., whether the particular plaintiff has presented a "case or controversy" within the jurisdiction of the federal courts.  But this case also presents the separate question whether the New Jersey Legislature intended to permit anyone other than a franchisee to sue for violations of the NJFPA.

The Third Circuit has explained the differences between constitutional, prudential, and statutory standing, and explained the latter as follows:

> Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury. To answer the question, we employ the usual tools of statutory interpretation. We look first at the text of the statute and then, if ambiguous, to other indicia of congressional intent such as the legislative history.

*Graden v. Conextent Systems Inc.*, 496 F.3d 291, 295 (3d Cir. 2007).  "'[A] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,' and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Leyse v. Bank of Am. Nat'l Assoc.*, 804 F.3d 316, 320 & n. 3 (3d Cir. 2015) (citation omitted) (disavowing language in *Graden* suggesting that statutory standing involves subject-matter jurisdiction).

Thus, the question presented here is: did the New Jersey Legislature intend to give a trade association such as NJ CAR the right to sue for violations of the NJFPA?  The statutory language makes it clear that it did not.

The text of the statute is unambiguous: it provides in pertinent part that "[a]ny franchisee may bring an action against its franchisor for violation of this act . . . to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief."   N.J.S.A.  56:10-10. Significantly, the statute limits the franchisee's right of action to suits against "its franchisor," thus making it clear that a franchisee of a brand other than Mazda has no right to sue Mazda on the ground that the MBEP violates the NJFPA – even if that other brand's franchisee could claim competitive harm.

The act defines a "franchisee" as "a person to whom a franchise is offered or granted," and a "franchisor" as "a person who grants a franchise to another person."  N.J.S.A. 56:10-3(c)-(d).  It defines a franchise as "a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." N.J.S.A. 56:10-3(a).  NJ CAR does not claim to be Mazda's franchisee, and it is undisputed that it is not.

Because the statutory text is unambiguous, there is no need to look at other indicia of legislative intent or at legislative history. *Graden*, 496 F.3d at 295; *accord, State v. Butler*, 89 N.J. 220, 226 (1982) ("If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to define the Legislature's intent."). Nevertheless, such indicia confirm that it was the Legislature's intent to limit the right to bring suit for violations of the NJFPA to suits by franchisees against their franchisors.

First, the NJFPA also provides that: "It shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto." N.J.S.A. 56:10-9; *see Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 119 F. App'x 419, 423–24 (3d Cir. 2005) (dealer's substantial noncompliance "serve[s] as a complete defense to any action brought under the NJFPA"). By establishing this complete defense to "any" such action, the Legislature obviously meant the defense to apply to claims for injunctive relief as well as to claims for damages. Permitting an association to seek an injunction in place of its franchisee members, however, could effectively deprive the franchisor of a defense that the Legislature intended the franchisor to have against those franchisees in all actions alleging violations of the NJFPA.

17

Second, the NJFPA statutory language is more restrictive than the private right of action language in most other states' franchise statutes, which often provide that "any person" who suffers injury can sue for a violation of the statute and rarely if ever expressly restrict suits by a franchisee to "its" franchisor. *See, e.g.*, Del. Code Ann. tit. 6, § 4916(a) ("any person who is or may be injured by a violation of a provision of this chapter . . . may bring an action in a court of competent jurisdiction for damages and equitable relief'"); Pa. Stat. Ann. tit. 63, § 818.329 (same language); N.Y. Veh. & Traf. Law § 469 ("[a] franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to . . . sue for . . . and have, injunctive relief and damages").  Had the Legislature intended to create statutory standing broader than "a franchisee against its franchisor," it not only knew how to do so but has had numerous models from other states to adopt or adapt.

Third, legislatures in other states have recognized that even the broader language in their statutes should not normally be interpreted to grant a private right of action to a dealer association and therefore have, where associational standing is desired, amended their statutes to grant a right of action to dealer associations. *See, e.g.*, Ga. Code Ann. § 10-1-623(e) (granting a right of action to "[a]ny corporation or association which is primarily owned by or comprised of dealers and which primarily represents the interests of dealers" ); N.C. Gen. Stat. § 20-

308.1(d) ("any association that is comprised of a minimum of 400 new motor vehicle dealers, or a minimum of 10 motorcycle dealers or recreational vehicle dealers, substantially all of whom are new motor vehicle dealers located within North Carolina, and which represents the collective interests of its members"); Wash. Rev. Code § 49.96.260 ("any corporation or association that is primarily owned by or composed of new motor vehicle dealers and that primarily represents the interests of new motor vehicle dealers"); W. Va. Code § 17A-6A-16(4) ("[a]ny corporation or association that is primarily owned by or composed of dealers and represents the interests of dealers").  In contrast, New Jersey has not amended its statute to grant a right of action to any dealer association.

In *DaimlerChrysler*, the court found, in a footnote, that NJ CAR had constitutional standing under the *Hunt* test.  *Id.* at 105 n. 5.  However, the court did not address, and the decision does not indicate that the defendant raised, the question of statutory standing raised here.

In a prior brief submitted in this case, NJ CAR argued that N.J.S.A. 56:10-10 is not relevant because NJ CAR has brought this case "under" the federal Declaratory Judgment Act and not "under" N.J.S.A. 56:10.10.  Doc. 23 at PageID 453.  The Declaratory Judgment Act, however, does not confer legal rights on any party; it simply creates a remedy through which a party can obtain a declaration of its legal rights.  *See* 28 U.S.C. § 2201(a)  ("In a case of actual controversy within

19

its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

Here, NJ CAR is requesting a declaration of legal rights under the NJFPA, a statute that limits the right to legal redress to actions by a franchisee against its franchisor.  NJ CAR cannot create standing for itself under a state statute by invoking the federal Declaratory Judgment Act.

Because it does not have statutory standing, NJ CAR has not stated and cannot state a claim upon which relief may be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Mazda respectfully submits that its motion to dismiss the Complaint should be granted.

Dated: July 31, 2020

Respectfully submitted,
/s/ *Brian D. Sullivan*
Brian D. Sullivan
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ 07068
Tel:  (973) 994-7525
Email: bsullivan@foxrothschild.com

20

John J. Sullivan
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations*

21