## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
-----------------------------------------------X
                                        :
NEW JERSEY COALITION OF                 :
AUTOMOTIVE RETAILERS,                   :       NO. 3:18-cv-14563
INC., a non-profit New Jersey           :
Corporation,                            :       (Document Filed Electronically)
                                        :
        Plaintiff,                      :
                                        :
v.                                      :
                                        :
MAZDA MOTOR OF AMERICA,                 :
INC.,                                   :
                                        :
        Defendant.                      :
-----------------------------------------------X
```

## BRIEF ON BEHALF OF PLAINTIFF NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC. IN OPPOSITION TO DEFENDANT MAZDA MOTOR OF AMERICA, INC.'S SECOND MOTION TO DISMISS

> WILENTZ, GOLDMAN & SPITZER, P.A.
> 90 Woodbridge Center Drive
> Suite 900, P.O. Box 10
> Woodbridge, New Jersey 07095
> Attorneys for Plaintiff New Jersey Coalition
> of Automotive Retailers, Inc.

DANIEL J. KLUSKA, ESQ.
    Of Counsel and On the Brief

SAMANTHA J. STILLO, ESQ.
    On the Brief

#11587982.2

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

A.    The Parties ........................................................................................... 3

B.    The New Jersey Legislature Enacted The New Jersey Franchise
      Practices Act Nearly Fifty Years Ago To Protect Franchisees
      From Abusive Practices Of Franchisors. ............................................. 5

C.    Mazda Implements A Brand Experience Program That Creates
      Price Differentials Through Discounts Or Bonuses And Denies
      Benefits To Mazda Dealers That Do Not Comply With Certain
      Facility Obligations. ........................................................................... 8

D.    NJ CAR Filed The Present Action Alleging That The Mazda
      Brand Experience Program Violates The Franchise Practices
      Act. .................................................................................................... 11

E.    The Court Granted Mazda's Initial Motion To Dismiss The
      Complaint Without Prejudice Based On Its Finding That NJ
      CAR Lacks Standing to Plead Its Claims Against Mazda. ................. 12

F.    The Third Circuit Court Of Appeals Reversed The Court's Order
      And Held That NJ CAR Has Associational Standing. ......................... 13

G.    The Court Of Appeals Denied Mazda's Petition For Rehearing
      Seeking In Part A Review Of Its Decision On The Third Hunt
      Factor. ................................................................................................ 15

STANDARD OF REVIEW ................................................................................... 15

LEGAL ARGUMENT ......................................................................................... 16

I.    MAZDA'S SECOND MOTION TO DISMISS SHOULD BE DENIED
      BECAUSE NJ CAR HAS ASSOCIATIONAL STANDING TO BRING
      THIS ACTION ............................................................................................. 16

A.    The Third Circuit Court Of Appeals Has Already Held That NJ
      CAR Has Associational Standing To Bring This Action. ................... 16

B.  NJ CAR Satisfies The Third Prong Of The Associational Standing Test Because Its Lawsuit Seeking Solely Declaratory and Injunctive Relief Does Not Require Individual Member Participation. ....................................................................................18

II.  MAZDA'S SECOND MOTION TO DISMISS SHOULD BE DENIED BECAUSE MAZDA IS FORECLOSED FROM RAISING A STATUTORY STANDING ARGUMENT IN THIS MOTION, AND IN ANY EVENT, NJ CAR HAS THE RIGHT TO SUE MAZDA ON BEHALF OF ITS MEMBERS.....................................................................................25

A.  Mazda Is Barred From Raising A Statutory Standing Argument On Its Successive Motion To Dismiss Under The Federal Rules Of Civil Procedure. ...........................................................................25

B.  NJ CAR Has The Right To Sue Mazda Based On Its Violations Of The Franchise Practices Act...........................................................28

CONCLUSION..........................................................................................................34

#11587982.2

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

Bankers Trust Co. v. Bethlehem Steel Corp.,
  761 F.2d 943(3d Cir. 1985)...................................................................................17

Bosland v. Warnock Dodge, Inc.,
  197 N.J. 543 (2009) ..............................................................................................5

Camden County Historical Soc'y v. Dep't of Trans.,
  371 F. Supp. 3d 187 (D.N.J. 2019)......................................................................17

Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A.,
  12 F.3d 1256 (3d Cir. 1993)..................................................................................28

Comité de Apoyo a los Trabajadores Agrícolas v. Perez,
  148 F. Supp. 3d 361 (D.N.J. 2015).......................................................................19

Contractor's Ass'n of E. Pa., Inc. v. City of Phila.,
  735 F. Supp. 1274 (E.D. Pa. 1990)......................................................................20

Contractors Ass'n of E. Pa. v. City of Phila.,
  945 F.2d 1260 (3d Cir. 1991)................................................................................20

Duke v. All Am. Ford, Inc.,
  2018 WL 3596274 (App. Div. 2018).....................................................................5

Eulitt ex rel. Eulitt v. Me., Dep't of Educ.,
  386 F.3d 344(1st Cir. 2004).................................................................................17

Fowler v. UPMC Shadyside,
  578 F.3d 203(3d Cir. 2009)..................................................................................16

General Motors Acceptance Corp. v. Cahill,
  375 N.J. Super. 553 (App. Div. 2005)...................................................................5

Goffe v. Foulke Mgmt. Corp.,
  238 N.J. 191 (2019) ..............................................................................................5

Gross v. TJH Auto. Co.,
  380 N.J. Super. 176 (App. Div. 2005)...................................................................5

Harju v. Olson,
  709 F. Supp. 2d 699 (D. Minn. 2010)...................................................................31

Hospital Council of W. Pa. v. City of Pittsburgh,
  949 F.2d 83(3d Cir. 1991)..............................................................................19, 20

-iii-

Hunt v. Wash. State Apple Advert. Comm'n,
  432 U.S. 333 (1977)........................................................................................ passim

In re New Jersey State Contract A71188,
  422 N.J. Super. 275 (App. Div. 2011) ........................................................5

International Union, UAW v. Brock,
  477 U.S. 274 (1986)......................................................................................33

Leyse v. Bank of Am. Nat'l Ass'n,
  804 F.3d 316 (3d Cir. 2015)..............................................................26, 27, 28

Maertin v. Armstrong World Indus.,
  241 F. Supp. 2d 434, 445 (D.N.J. 2002)..................................................15

Montone v. City of Jersey City,
  709 F.3d 181 (3d Cir. 2013)........................................................................29

NAACP v. Alabama ex rel. Patterson,
  357 U.S. 449 (1958)....................................................................................30

New Jersey State AFL-CIO v. State of N.J.,
  747 F.2d 891 (3d Cir.1984).........................................................................32

NJ CAR v. DaimlerChrysler Motors Corp.,
  107 F. Supp. 2d 495 (D.N.J. 1999)..........................................................5, 24

NJ CAR v. Ford Motor Co. d/b/a Lincoln Motor Co.,
  Docket No. MER-L-234-20 (Law Div. 2020) ..........................................5

NJ CAR v. Mazda Motor of Am., Inc.,
  957 F.3d 390 (3d Cir. 2020)...................................................................14, 17

Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County,
  271 F.3d 140 (3d Cir. 2001).........................................................................29

Pennsylvania Fed'n v. Norfolk S. Corp. Thoroughbred Ret.
  Inv. Plan of Norfolk S. Corp.,
  2004 WL 228685 (E.D. Pa. Feb. 4, 2004) ...............................................31

Pennsylvania Prison Soc'y v. Cortes,
  622 F.3d 215 (3d Cir. 2010)........................................................................19

Schering Corp. v. FDA,
  51 F.3d 390 (3d Cir. 1995)..........................................................................29

Self-Ins. Inst. of Am., Inc. v. Korioth,
  993 F.2d 479 (5th Cir. 1993) ......................................................................31

#11587982.2

Shell Oil Co. v. Marinello,
  63 N.J. 402 (1973)......................................................................................6

Southern Illinois Carpenters Welfare Fund v.
  Carpenters Welfare Fund of Illinois,
  326 F.3d 919 (7th Cir. 2003) ...................................................................31

United Food & Comm. Workers Union Local 751 v.
  Brown Group, Inc.,
  517 U.S. 544 (1996).............................................................................19, 30

Wallach v. Eaton Corp.,
  837 F.3d 356 (3d Cir. 2016)......................................................................27

Westfield Ctr. Serv. v. Cities Serv. Oil Co.,
  158 N.J. Super. 455 (Ch. Div.), supplemented,
  162 N.J. Super. 114 (Ch. Div. 1978), aff'd and remanded,
  172 N.J. Super. 196 (App. Div. 1980), aff'd, 86 N.J. 453 (1981) ........................6

**Statutes**

28 U.S.C. § 2201 .............................................................................................29

29 U.S.C. § 1132...............................................................................................31

N.J.S.A. 56:10-10..............................................................................................30

N.J.S.A. 56:10-2................................................................................................5

N.J.S.A. 56:10-3(c) ........................................................................................4, 5

N.J.S.A. 56:10-7.2.............................................................................................7

N.J.S.A. 56:10-7.4(h)...................................................................................11, 21

N.J.S.A. 56:10-7.4(j)...............................................................................11, 21, 22

N.J.S.A. 56:10-7.4(l).................................................................................11, 21, 23

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................12, 15, 27

Fed. R. Civ. Pro. 12(g)(2) ......................................................................26, 27

Rule 12(b) .............................................................................................26, 27

Rule 12(b)(6)..........................................................................................15, 27

Rule 12(c)...............................................................................................27, 28

Rule 12(h)(2)..........................................................................................26, 27

Rule 12(h)(3)................................................................................................26

#11587982.2

Rule 7(a)................................................................................................27, 28

**Other Authorities**

Assembly Bill 2063 (1971).....................................................................................6

P.L. 2011 c. 66, § 2 ...............................................................................................7

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("NJ CAR") submits this brief in opposition to defendant Mazda Motor Company of America, Inc.'s ("Mazda") second motion to dismiss. Mazda's subsequent, and frivolous, attempt to dispose of the meritorious complaint against it consists of a recycled argument that the Third Circuit Court of Appeals has already rejected and decided in NJ CAR's favor and an argument that it is barred from making at this time under the Federal Rules of Civil Procedure. Nevertheless, Mazda's contentions also fail on their merits even if the Court were to consider them, and thus the motion to dismiss should be denied.

In its first motion to dismiss, Mazda solely argued that NJ CAR lacks associational standing to bring this case on behalf of its dealer members because it fails to satisfy any of the three prongs of the Supreme Court's associational standing test. The Court granted Mazda's motion after finding that NJ CAR did not satisfy the second prong, and made no finding as to the third prong, acknowledging that each prong must be fulfilled for there to be standing.

NJ CAR appealed from the Court's dismissal order, and the parties again argued whether NJ CAR met both the second prong and third prong of the associational standing test. In a precedential opinion, the Third Circuit Court of Appeals reversed the Court's order dismissing the complaint. The Court of

1

Appeals could not have been clearer in its ruling: its "***holding to the conclusion that [NJ CAR] has association standing to bring this case***." And if its unambiguous holding was not sufficiently clear, it thereafter denied Mazda's petition for rehearing that sought, in part, reconsideration of the third prong of the associational standing test.

Having failed to persuade the Court of Appeals that NJ CAR lacks associational standing to bring this case, on remand, Mazda seeks to re-argue before the Court that NJ CAR fails to meet the third prong of the associational standing test. Mazda's argument should be wholly disregarded under the law of the case doctrine and stare decisis principles; the Court is bound by the Court of Appeals' decision, and any decision granting the motion on this basis would be diametrically opposed to the Court of Appeals' holding that NJ has associational standing. In any event, NJ CAR readily satisfies the third prong of the test because its claims and the declaratory and injunctive relief it seeks here do not require the participation of individual members in the lawsuit; rather, those claims require merely a side-by-side comparison of the MBEP and the FPA to determine if the FPA's proscriptions have been violated.

Mazda also contends, for the first time, that NJ CAR lacks statutory standing to bring claims against Mazda because it is not a "franchisee" permitted to bring claims under the New Jersey Franchise Practices Act ("FPA"). First, Mazda is

2

precluded from raising this argument in a subsequent motion to dismiss under the Federal Rules of Civil Procedure, which prohibit parties from raising arguments based on an alleged failure to state a claim upon which relief can be granted that were omitted from an initial motion to dismiss. Even if the Court were to bypass the Rules, NJ CAR has the right to pursue relief under the Declaratory Judgment Act on behalf of its dealer members for alleged violations of the FPA under the applicable case law. NJ CAR's members indisputably constitute franchisees permitted to file complaints based on FPA violations. Moreover, NJ CAR's interests as a long-standing advocacy organization formed to protect its dealer members' interests are perfectly aligned with the interests of franchisees -- most particularly, motor vehicle dealers -- that the FPA was enacted and amended to protect.

Accordingly, the Court should deny Mazda's second motion to dismiss.

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiff, NJ CAR, a New Jersey not for profit corporation founded in 1918, is a trade association consisting of franchised new motor vehicle dealers in the State of New Jersey. Certification of James B. Appleton dated November 30, 2018 ("Appleton Cert."), ¶2 (Docket Entry No. 12). There are approximately 500 members of NJ CAR, sixteen of which are Mazda franchised dealers in New

3

Jersey, and each of which is a "franchisee" as that term is defined in the FPA, a remedial statute regulating franchise relationships. Id., ¶6; N.J.S.A. 56:10-3(c).

NJ CAR serves the interests of its motor vehicle dealer members in several different ways: (1) it promotes the interests of franchised new car and truck retailers with governmental entities, the media and the public at large; (2) it provides its members with information on statutory, regulatory, and legislative matters affecting the interests of motor vehicle retailers; (3) it offers educational and training programs to employees of its members on best business practices, to enhance their professionalism and expertise and to promote compliance with law; and (4) it offers services to its members to enhance their businesses and that comply with legal requirements. Appleton Cert., ¶3.

In addition, NJ CAR also seeks to protect the interests of motor vehicle consumers by (1) providing them with comprehensive information related to their vehicle purchases; (2) promoting fair competition among its dealer members, (3) ensuring consumer access to multiple fairly competing dealerships throughout the State; (4) facilitating dialogue between consumers and dealerships in the event of a dispute; and (5) prioritizing the safety of drivers by ensuring that multiple dealerships can service their vehicle and address any safety recalls. Id., ¶4.

NJ CAR also actively represents New Jersey motor vehicle dealers in legislative and regulatory matters, (id., ¶5), and periodically participates as a party

4

or as *amicus curiae* in litigation in state and federal court regarding the interests of its membership. E.g., NJ CAR v. DaimlerChrysler Motors Corp., 107 F. Supp. 2d 495 (D.N.J. 1999); NJ CAR v. Ford Motor Co. d/b/a Lincoln Motor Co., Docket No. MER-L-234-20 (Law Div. 2020); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191 (2019); Duke v. All Am. Ford, Inc., 2018 WL 3596274 (App. Div. 2018); In re New Jersey State Contract A71188, 422 N.J. Super. 275 (App. Div. 2011); Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009); Gross v. TJH Auto. Co., 380 N.J. Super. 176 (App. Div. 2005); General Motors Acceptance Corp. v. Cahill, 375 N.J. Super. 553 (App. Div. 2005).

Defendant, Mazda, a California corporation founded in 1970, manufactures and markets motor vehicles for sale through dealers in the State of New Jersey and throughout the United States. Appleton Cert., ¶¶7-8. Mazda's line of vehicles includes sedans, hatchbacks, crossovers, SUVs and sports cars. Id., ¶8. Mazda is a "franchisor" as that term is defined in the FPA. N.J.S.A. 56:10-3(c).

## B. The New Jersey Legislature Enacted The New Jersey Franchise Practices Act Nearly Fifty Years Ago To Protect Franchisees From Abusive Practices Of Franchisors.

In 1971, the New Jersey Legislature enacted the FPA to protect franchisees from franchisor abuses arising from the unequal bargaining power in the franchisor-franchisee relationship. P.L. 1971 c.356; N.J.S.A. 56:10-2. In the

5

Statement accompanying the original bill, Assembly Bill 2063 (1971), the

Legislature explained the rationale for this critical legislation:

> New Jersey would do the same in this bill which, through the courts, would rule out arbitrary and capricious cancellation of franchises while preserving the right of franchisors to safeguard their interests through the application of clear and nondiscriminatory standards. The bill would protect the substantial investment tangible and intangible of both parties in the various franchises. It would rule out economic coercion as a business tactic in this most sensitive field.
>
> The New Jersey Legislature has been asked many times in the past to deal on a piecemeal basis with various problems growing out of the franchise relationship. This bill would provide a comprehensive statutory formula for resolving a wide range of questions growing out of the franchise relationship.

Westfield Ctr. Serv. v. Cities Serv. Oil Co., 158 N.J. Super. 455, 471 (Ch. Div.),

supplemented, 162 N.J. Super. 114 (Ch. Div. 1978), aff'd and remanded, 172 N.J.

Super. 196 (App. Div. 1980), aff'd, 86 N.J. 453 (1981).

Several times since the Legislature enacted the FPA, the New Jersey

Supreme Court has commented on its legislative intent to provide broad

protections for franchisees in New Jersey. Shortly after it was enacted, the court

noted that the Legislature had "declared that distribution and sales through

franchise arrangements in New Jersey vitally affect the general economy of the

State, the public interest and the public welfare." Shell Oil Co. v. Marinello, 63

N.J. 402, 409 (1973). It pointed out that the Legislature was motivated to enact the

6

FPA to mitigate the unfair leverage that a franchisor had over a franchised dealer. Ibid. The court recognized that, upon the establishment of a franchise, the franchisor possesses substantial leverage over the franchisee on account of the franchisee's investment in its franchise, including time expended, expenses incurred, and efforts exhausted to generate business and customer good will, which the franchisee risks losing in its entirety at the whim of the franchisor. Ibid. The franchisor, on the other hand, incurs no such risk because it can easily replace the former franchisee at the location while continuing to reap the benefits of the former franchisee's efforts, time and money. Ibid.

Since enacting the FPA, the Legislature has amended it on multiple occasions particularly to address the continuing disparity in bargaining power in the automotive franchisor-franchisee relationship and rectify specific abusive franchisor tactics in the motor vehicle sales industry. Specifically, in 1989, the Legislature amended and further strengthened the FPA to address and remediate the "inequality of bargaining power [that] continue[d] to exist between motor vehicle franchisors and motor vehicle franchisees." N.J.S.A. 56:10-7.2. In 2011, the Legislature again amended the FPA to "[define] the relationship and responsibilities between motor vehicle franchisors and motor vehicle franchisees." P.L. 2011 c. 66, § 2; N.J. Assem. Floor State., A.B. 3722, 1/20/2011. The

7

Legislature explained that the amendments were necessary to modernize the FPA

to address specific abuses of power that had recently arisen:

> Over the years, the "Franchise Practices Act" has been
> amended to keep pace with changing market conditions
> and to address new threats to the consumer and the public
> interest in the franchise system. Recent developments in
> the auto industry have highlighted the unequal bargaining
> position of dealers vis-a-vis manufacturers. Dozens of
> New Jersey new car dealerships and thousands of
> dealership jobs have been lost. New Jersey consumers
> and the economy have suffered as a result.
>
> This bill is intended to protect New Jersey new car
> dealerships and their employees from further economic
> dislocation imposed by automakers. The bill is designed
> to level the playing field on which auto franchisees and
> auto franchisors do business, and to protect the consumer
> and the public interest in a strong and secure franchise
> system of responsible local businesses.

N.J. Assem. Comm. State., A.B. 3722, 1/20/2011.

C.   **Mazda Implements A Brand Experience Program That Creates
Price Differentials Through Discounts Or Bonuses And Denies
Benefits To Mazda Dealers That Do Not Comply With Certain
Facility Obligations.**

Despite the enactment of the FPA and amendments thereto, in 2018, Mazda

introduced the Mazda Brand Experience Program 2.0 ("MBEP") and began

implementing it on July 3, 2018. Appleton Cert., ¶9 & Exh. B. The MBEP

establishes an elaborate two-tiered pricing regime that enables Mazda dealers to

earn discounts or bonuses for each vehicle a dealer sells based on its compliance

with certain conditions. Id., ¶10 & Exh. B.    The MBEP offers these tiered

8

discounts or bonuses as a percentage of the Manufacturer's Suggested Retail Price ("MSRP") on a per vehicle basis ranging from 6.5% to 0% depending on the degree of compliance with the MBEP. Id., ¶11 & Exh. B. Mazda is only guaranteeing payments under the MBEP for compliance therewith for a four-year period. Id., ¶21 & Exh. B.

To qualify for any payments under the MBEP, a Mazda dealer must achieve several base qualifiers. Those Mazda dealers that achieve all of the base qualifiers are eligible for two discounts. Id., ¶12 & Exh. B. One is a brand commitment element payment based on facilities and other requirements that provides up to a 4.5% discount. Id., ¶13 & Exh. B. Specifically, Mazda dealers that have an exclusive Mazda facility that incorporates all Mazda required image elements, satisfies other "base elements" and employs a Dedicated Exclusive General Manager are designated as Retail Evolution ("RE") dealers that qualify for the full 4.5% brand commitment element discount or bonus. Id., ¶14 & Exh. B. Mazda dealers that satisfy all of these facility elements but that do not employ a Dedicated Exclusive General Manager are designated as exclusive dealers that qualify for 2.8% of the 4.5% brand commitment element discount or bonus. Id., ¶15 & Exh. B. Mazda dealers that have an exclusive Mazda showroom that does not incorporate all Mazda required image elements are designated as exclusive showroom dealers that only qualify for 1.0% of the 4.5% brand commitment

9

element discount or bonus.  Id., ¶16 & Exh. B.  Mazda dealers that do not have an exclusive Mazda facility are designated as dual dealers that do not qualify for any portion of the 4.5% brand commitment element discount or bonus.  Id., ¶17 & Exh. B.

The MBEP also contains a customer experience element payment based on Mazda's calculation of "customer experience" at the dealership.  It provides up to a 2.0% discount off MSRP.  Id., ¶18 & Exh. B.  Although RE dealers, exclusive dealers, exclusive showroom dealers and dual dealers all are eligible for this discount, only those Mazda dealers that meet the customer experience requirements each quarter receive the 2.0% customer experience element discount for that quarter.  The others receive nothing.  Id., ¶19 & Exh. B.

In sum, Mazda dealers have the *potential* to earn the following discounts (but some dealers will receive less or no discount at all):

| Type of Mazda Dealer | MBEP Discount |
|---|---|
| RE Dealer | Up to 6.5% of MSRP per vehicle sold |
| Exclusive Dealer | Up to 4.8% of MSRP per vehicle sold |
| Exclusive Showroom Dealer | Up to 3.0% of MSRP per vehicle sold |
| Dual Dealer | Up to 2.0% of MSRP per vehicle sold |

Id., ¶20 & Exh. B.  For comparison purposes, on a vehicle with an MSRP of $30,000, a 6.5% discount comes to $1,950 per vehicle giving such dealers a significant price advantage over dealers that receive lesser or no discounts.  For example, the most an exclusive dealer can receive is $1,440; an exclusive

10

showroom dealer $900 and a dual dealer $600. Dealers that do not qualify for the Customer Experience discount would receive $600 less.

**D.     NJ CAR Filed The Present Action Alleging That The Mazda Brand Experience Program Violates The Franchise Practices Act.**

On October 2, 2018, NJ CAR filed this action against Mazda seeking a declaratory judgment finding and declaring that the MBEP violates the FPA on its face, and that Mazda's implementation of the MBEP in the State of New Jersey is thus unlawful.  NJ CAR also seeks an injunction restraining Mazda from continuing to apply the MBEP in New Jersey. Id., Exh. D. NJ CAR contends that the MBEP violates three provisions of the FPA included among the 2011 amendments enacted specifically to address abuses of power that had arisen in the automotive industry:

- The MBEP's provision of per-vehicle discounts to Mazda dealers based on their level of achievement of certain criteria creates vehicle price differentials up to 6.5% of the MSRP per vehicle among dealers in violation of N.J.S.A. 56:10-7.4(h);

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive, image-compliant facility, notwithstanding Mazda's failure to even attempt to demonstrate in the MBEP that the costs of such facilities can be justified by Mazda dealers, or to offer exemptions to dealers who cannot reasonably comply, violates N.J.S.A. 56:10-7.4(l); and

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive facility but rather use their facilities for multiple brands (dual) violates N.J.S.A. 56:10-7.4(j).

Id., Exh. D at ¶28.

11

In the complaint, NJ CAR asserts that it "has standing to bring this action to protect the legal rights of its members under the FPA from facial violation by Mazda and to protect the interests of all of its members generally in ensuring compliance with the FPA's provisions." Id.,¶6.

## E. The Court Granted Mazda's Initial Motion To Dismiss The Complaint Without Prejudice Based On Its Finding That NJ CAR Lacks Standing to Plead Its Claims Against Mazda.

On November 8, 2018, Mazda filed a motion to dismiss NJ CAR's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. Mazda argued that NJ CAR did not satisfy any of the three prongs of the test for associational standing established in Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).

On July 30, 2019, the Court granted Mazda's motion and dismissed NJ CAR's Complaint without prejudice. The Court first analyzed the first Hunt prong -- whether NJ CAR's members had standing to sue in their own right -- and found that NJ CAR satisfied this factor because NJ CAR identified its members and specifically described the harm suffered by at least one of its members as a result of the implementation of the MBEP in violation of the FPA.

The Court then analyzed the second Hunt prong: whether the interests that NJ CAR seeks to protect in this lawsuit are germane to its purpose. The Court found that NJ CAR did not satisfy this prong because its position in the lawsuit is

12

not consistent with the interests of the majority of its members. In other words, the Court found that a serious conflict of interest existed between NJ CAR and a majority of its members that defeated its associational standing.

The Court decided that it did need to consider the third prong of the Hunt inquiry based on its finding that NJ CAR had not satisfied the second Hunt prong. The Court remarked that "each prong must necessarily be fulfilled for a determination of standing."[1]

## F.     The Third Circuit Court Of Appeals Reversed The Court's Order And Held That NJ CAR Has Associational Standing.

On October 22, 2019, NJ CAR filed its appeal from the District Court's Order dismissing the Complaint. In opposition to NJ CAR's appeal, Mazda contended that NJ CAR did not satisfy either the second prong or the third prong of the associational standing test, and addressed each in detail. In response, NJ CAR addressed both the second and third elements of the Hunt test in its reply brief, arguing that it satisfied both of those factors and thus has associational standing to bring this case.

On April 28, 2020, in a precedential opinion, the Court of Appeals reversed the Court's Order dismissing the Complaint and held that NJ CAR has

---

[1] The Court also denied NJ CAR's motion for summary judgment as moot based on its decision granting Mazda's motion to dismiss.

13

associational standing to pursue the claims in the Complaint on behalf of its members. NJ CAR v. Mazda Motor of Am., Inc., 957 F.3d 390 (3d Cir. 2020).

The Court of Appeals correctly recited the three prongs of the Hunt associational standing test and briefly summarized the Court's ruling on each prong. Id. at 392-93. The Court of Appeals agreed with the Court's analysis of the first Hunt factor, finding that "it is obvious on the face of the complaint at least some of the Mazda dealers in the Coalition suffer competitive harm due to implementation of the MBEP—the program itself expressly discriminates among Mazda dealers." Id. at 392. With respect to the second Hunt factor, the Court of Appeals disagreed with the Court's determination that NJ CAR cannot possibly be protecting the interests of its members. The Court of Appeals found that the Court impermissibly limited NJ CAR's lawsuit to a single theory of harm, and that NJ CAR was seeking to vindicate the rights of its members and bring competitive balance back among them. Id. at 393.

While the Court of Appeals did not expressly address the third Hunt factor, it clearly expressed its "holding to the conclusion that [NJ CAR] has association standing to bring this case." Id. at 394 n.3.

14

**G.    The Court Of Appeals Denied Mazda's Petition For Rehearing Seeking In Part A Review Of Its Decision On The Third Hunt Factor.**

On June 11, 2020, Mazda filed a petition for panel rehearing or rehearing en banc seeking further review of the Court of Appeals' decision.  In pertinent part, and despite the Court of Appeals' clear holding that NJ CAR has associational standing, Mazda petitioned the Court of Appeals to clarify that this Court may rule on the third Hunt factor regarding the individual participation requirement on remand.  On June 26, 2020, the Court of Appeals denied the petition.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a defendant may bring a motion to dismiss on the basis that the Court lacks subject-matter jurisdiction over the action filed by the plaintiff.  Where the defendant is attacking subject-matter jurisdiction on the face of the complaint, "the court must accept as true all material allegations of the complaint and construe that complaint in favor of the non-party."  Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 445 (D.N.J. 2002).  "The court's focus must not be on whether the factual allegations would entitle the plaintiff to relief, but instead should be on whether this Court has jurisdiction to hear the claim and grant relief."  Ibid.

A party may also bring a motion to dismiss under Rule 12(b)(6).  A complaint should only be dismissed pursuant to Rule 12(b)(6) when it is clear that

15

no relief can be granted under any set of facts that could be proved by the plaintiff consistent with the allegations. On such a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

## LEGAL ARGUMENT

## I. MAZDA'S SECOND MOTION TO DISMISS SHOULD BE DENIED BECAUSE NJ CAR HAS ASSOCIATIONAL STANDING TO BRING THIS ACTION

### A. The Third Circuit Court Of Appeals Has Already Held That NJ CAR Has Associational Standing To Bring This Action.

Mazda first contends that NJ CAR cannot satisfy the third prong of the Hunt test because the claims asserted by NJ CAR and the relief it seeks requires the individual participation of its Mazda dealer members in this action. The Third Circuit Court of Appeals, however, already considered and rejected this argument in holding that NJ CAR has associational standing to bring this case. Accordingly, the Court should bar relitigation of this issue under the law of the case doctrine and *stare decisis* principles.

"It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." Bankers Trust Co. v. Bethlehem

Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." Ibid.; cf. Camden County Historical Soc'y v. Dep't of Trans., 371 F. Supp. 3d 187, 190 n.6 (D.N.J. 2019) ("A court must follow the precedents established by the court(s) directly above it. District courts must follow . . . those issued by whichever court of appeals has revisory jurisdiction over its decisions."); Eulitt ex rel. Eulitt v. Me., Dep't of Educ., 386 F.3d 344, 348 (1st Cir. 2004) (*Stare decisis* "precludes the relitigation of legal issues that have previously been heard and authoritatively determined.").

The Court should proceed in accordance with the Court of Appeals' established holding that NJ CAR has associational standing to bring this action. In opposition to NJ CAR's appeal of the Court's Order dismissing the Complaint, Mazda argued that NJ CAR did not satisfy the third prong of the Hunt test. The Court of Appeals, in reversing the Court's Order, unambiguously declared its "holding" as "the conclusion that the Coalition has association standing to bring this case." NJ CAR v. Mazda, 957 F.3d at 394 n.3. The Court of Appeals could only have issued such a holding if it determined that NJ CAR satisfied all three prongs, including the third prong, of the associational standing test established in Hunt. The Court previously recognized this, having stated in its prior decision that "each prong must necessarily be fulfilled for a determination of standing."

17

Thereafter, Mazda even filed a petition for panel rehearing or rehearing en banc seeking, in part, a reconsideration of its decision as to the third prong, and the Court of Appeals summarily denied the petition. Were the Court to grant Mazda's motion to dismiss on these grounds, its decision would be entirely inconsistent with that of the Court of Appeals; it would effectively be ruling that NJ CAR lacks associational standing to bring this case after the Court of Appeals held that NJ CAR has associational standing to bring this case. The Court is thus bound to the Court of Appeals' decision on NJ CAR's associational standing and Mazda is barred from relitigating this same issue before the Court.

**B.      NJ CAR Satisfies The Third Prong Of The Associational Standing Test Because Its Lawsuit Seeking Solely Declaratory and Injunctive Relief Does Not Require Individual Member Participation.**

If the Court is still inclined to consider and rule on the merits of Mazda's argument, it should find that NJ CAR meets the third prong of the Hunt test. While NJ CAR has already briefed this issue to the Court and the Court of Appeals, for purposes of convenience, it will restate its position below.

To bring claims on behalf of its members, the third prong of the associational standing test requires NJ CAR to demonstrate that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. Because NJ CAR can prosecute this matter without individual participation of dealer members, it has standing to pursue

18

claims seeking injunctive and declarative relief against Mazda on behalf of its members.  Hunt, 432 U.S. at 343; Pennsylvania Prison Soc'y v. Cortes, 622 F.3d 215, 228 (3d Cir. 2010).

The Supreme Court has declared that "once an association has satisfied Hunt's first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." United Food & Comm. Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 556 (1996).  The Court stated that "the third prong of the associational standing test is best seen as focusing on [] matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." Id.

Consistent with this declaration, "[t]he Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members" and thus those associations have satisfied the third prong.  See, e.g., Hospital Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 89 (3d Cir. 1991) (reversing district court's holding that the Council lacked associational standing because "[i]t is clear that the Council's request for declaratory and injunctive relief does not require participation by individual members"); Comité de Apoyo a los Trabajadores Agrícolas v. Perez, 148 F. Supp. 3d 361, 371 (D.N.J. 2015) (asserting that "requests by an association

19

for declaratory and injunctive relief do not require participation by individual association members").

The Supreme Court "has distinguished such requests for declaratory and injunctive relief from requests for individualized damages of association members." Hosp. Council, 949 F.2d at 89. Moreover, even where a lawsuit will require some individual association members to provide discovery and trial testimony, such lawsuits do not require participation of individual members unless "participation by each [allegedly] injured party" would be necessary. Id. at 90.

In Contractors Ass'n of E. Pa. v. City of Phila., 945 F.2d 1260 (3d Cir. 1991), the Court of Appeals, agreeing with the district court's analysis, held that associations of contractors satisfied the third prong of the Hunt test because there was no need for individual member participation. Contractor's Ass'n, 945 F.2d at 1264 (citing Contractor's Ass'n of E. Pa., Inc. v. City of Phila., 735 F. Supp. 1274, 1281-87 (E.D. Pa. 1990)). There, the associations sought a declaratory judgment stating that a municipal ordinance violated the Equal Protection Clause and an injunction restraining its continued implementation and enforcement. The district court found that participation of individual members was not necessary because the court could adjudicate the associations' claims based on a comparison of the ordinance with the Constitution. Specifically, the court stated that "[t]he matter of the Ordinance's constitutionality . . . is a pure question of law, and thus similar to

the matter before the Supreme Court in Brock. " Id. at 1285. The court added that "[t]he question of whether the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment can be adjudicated without reference to the particular circumstances of members of the plaintiff associations." Id. at 1285-86.

This matter is similar to the claims and relief sought in Contractors Association. NJ CAR is seeking only declaratory and injunctive relief against Mazda in this action. Specifically, NJ CAR seeks a declaratory judgment that the MBEP violates the FPA on its face, and that Mazda's implementation of the MBEP in New Jersey is unlawful. NJ CAR also seeks an injunction restraining Mazda from continuing to apply the MBEP in New Jersey. NJ CAR contends that the MBEP violates three distinct subsections of the FPA, a "pure question of law." See N.J.S.A. 56:10-7.4(h), (j), and (l).

Participation by individual NJ CAR members is not needed by the Court to determine that the MBEP violates the FPA. First, subsection (h) requires that motor vehicle franchisors sell all comparably equipped motor vehicles to all dealers in New Jersey at the same price without differential in discount, allowance, credit or bonus. N.J.S.A. 56:10-7.4(h). NJ CAR's complaint alleges that the MBEP's provision of per-vehicle discounts to Mazda dealers based on their level of achievement of certain criteria creates several distinct vehicle price differentials up to 6.5% of the MSRP per vehicle among dealers in violation of subsection (h).

21

To make such a determination, this Court need look no further than a side-by-side comparison of the MBEP's provisions with the straightforward language of the FPA. No individual dealer participation is necessary to establish the existence of price differentials per vehicle. Moreover, Mazda's argument that the Court needs individual participation to ascertain the "effective cost" of each vehicle sold to each dealer fails to appreciate the fact that Mazda's sale of comparatively equipped vehicles to dealers at different prices alone, regardless of any costs a dealer had to incur to become eligible for a different and lower price, triggers a violation under the statute, a conclusion that can readily be reached without individual dealer participation.

Second, subsection (j) bars motor vehicle franchisors from requiring their new motor vehicle franchisees to use their facilities exclusively for the motor vehicle franchisor's brand even where the dealer's facility has ample space for multiple vehicle brands, and from interfering or attempting to interfere with the manner in which the dealer uses its facility. N.J.S.A. 56:10-7.4(j). NJ CAR's complaint alleges that the MBEP's denial of a benefit, in the form of a per-vehicle discount or bonus, to Mazda dealers that do not provide for an exclusive Mazda facility and rather use their facilities for multiple (dual) brands violates subsection (j). No information or documents beyond the MBEP and text of the FPA is needed to prove this allegation.

#11587982.2

Mazda contends that dealer participation is needed so that it can prove that the MBEP is a voluntary agreement between Mazda and all of its franchisees under an exception to this subsection. For Mazda to characterize the MBEP as an agreement, let alone a voluntary agreement, after it unilaterally prepared, implemented and imposed the program, strains all credulity and if anything only highlights the coercive nature of this practice that the FPA was enacted to end.

Third, subsection (l) prohibits motor vehicle franchisors from taking actions to compel financially unjustified facility modifications, or that punish or deny benefits to those dealers which do not comply with such manufacturer demands. N.J.S.A. 56:10-7.4(l). NJ CAR's complaint alleges that the MBEP's denial of a benefit, in the form of a per-vehicle discount or bonus, to Mazda dealers that do not comply with Mazda's demands regarding the construction of an exclusive, image-compliant facility, or failure to offer exemptions to dealers who cannot reasonably comply, violates subsection (l). Proof of this FPA violation requires no more than a review of the terms of the MBEP to confirm that benefits are withheld if such an exclusive facility is not built, and a review of the FPA to confirm that the statute prohibits the denial of benefits.

Mazda's only possible defense to the MBEP's violation of N.J.S.A. 56:10-7.4(l) would be if *Mazda* could demonstrate that an affected dealer will be able to "earn a reasonable return on his total investment" and the "full return of his total

23

investment in such facility or from such operational modifications within 10 years." The burden of so demonstrating is on *Mazda* and logically such demonstration must occur at the time the attempt to require the modification is made, and before any penalty is imposed or benefit denied. Mazda has now been implementing the MBEP for more than two years, and has penalized and denied benefits to dealers that have not had the required facilities and dedicated General Manager. Yet, Mazda produced no evidence that it has *ever* performed or undertaken any analysis at all to determine whether the dealership modifications in the MBEP are financially justified for any of, let alone all of, its affected dealers in New Jersey. If Mazda could meet its burden of proof under this section, surely Mazda would have submitted its analysis in opposition to NJ CAR's summary judgment motion more than one and a half years ago.

Finally, Mazda argues that the Court's decision in NJ CAR v. DaimlerChrysler Motors Corp., 107 F. Supp. 2d 495 (D.N.J. 1999) holding that NJ CAR had associational standing to bring the matter is distinguishable from this matter as to the third Hunt prong. In DaimlerChrysler, the plaintiff automobile dealers' association sought a preliminary injunction under the FPA against the defendant manufacturer's threatened or actual imposition of $400-per-vehicle wholesale price increase in response to an individual dealer's request for higher warranty parts reimbursements. The Court found that the participation of the

24

individual members was not required in that case as NJ CAR was only seeking injunctive relief. Id. at 501 n.5. Mazda attempts to distinguish DaimlerChrysler by stating that while the imposition of the surcharge would affect all New Jersey DaimlerChrysler dealers in the same way, in this matter, a consideration of individual dealer costs and benefits is required to determine if the MBEP is lawful. Similar to DaimlerChrysler, however, all of the Mazda dealers are subject to the MBEP and all will not receive any benefits if they do not comply with the MBEP's violative requirements.

Accordingly, NJ CAR satisfies the third Hunt factor and has associational standing to bring this lawsuit on behalf of its members.

II. **MAZDA'S SECOND MOTION TO DISMISS SHOULD BE DENIED BECAUSE MAZDA IS FORECLOSED FROM RAISING A STATUTORY STANDING ARGUMENT IN THIS MOTION, AND IN ANY EVENT, NJ CAR HAS THE RIGHT TO SUE MAZDA ON BEHALF OF ITS MEMBERS**

A. **Mazda Is Barred From Raising A Statutory Standing Argument On Its Successive Motion To Dismiss Under The Federal Rules Of Civil Procedure.**

Mazda also contends in its second motion to dismiss that NJ CAR lacks statutory standing to bring a lawsuit against Mazda based on FPA violations. The Federal Rules of Civil Procedure, however, prohibit a party from raising a defense in a subsequent motion to dismiss that was available but left out of its initial motion to dismiss. The Court should disregard this argument and deny the motion.

25

The Federal Rules of Civil Procedure impose restrictions on the filing of successive motions to dismiss. "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."   Fed. R. Civ. Pro. 12(g)(2). This "consolidation rule" is intended "to eliminate unnecessary delay at the pleading stage" by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense" simultaneously rather than "interposing these defenses and objections in piecemeal fashion." Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 320 (3d Cir. 2015).

In Leyse, cited by Mazda in its moving brief, the Court of Appeals agreed with the plaintiff that the district court erred in considering the defendant's second Rule 12(b) motion to dismiss based on the argument that the plaintiff lacked statutory standing to pursue his claims.[2]   The Court of Appeals found that the second motion did not meet the Rule 12(h)(3) exception, which exempts only motions to dismiss for lack of subject-matter jurisdiction, because "statutory

---

[2] While the Court of Appeals did not find that the district court's error in considering the second motion to dismiss warranted reversal (it ultimately reversed the district court's decision on its merits), the Court "emphasize[d] that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal" because the "stringent application of Rule 12(g)(2) may motivate defendants to consolidate their arguments in a single pre-answer motion" and thereby avoid delay given the length of the appellate process.

#11587982.2

standing is not jurisdictional." Leyse, 804 F.3d at 320. The Court also found that the second motion did not meet the Rule 12(h)(2) exception because it was not a Rule 7(a) pleading, not a motion raised at trial, and was not a Rule 12(c) motion for judgment on the pleadings. Id. at 320-321. Thus, the Court concluded that because no exception to Rule 12(g)(2) covered the defendant's successive motion, it was improper for the district court to have considered that motion. Id. at 321; see also Wallach v. Eaton Corp., 837 F.3d 356, 363 n.9 (3d Cir. 2016) ("Moreover, because Appellees brought a 12(b)(6) motion in 2011 . . . they were prohibited under Federal Rule of Civil Procedure 12(g)(2) from bringing their current challenge to [the plaintiff's] statutory standing as a 12(b)(6) motion in 2014").

It would also constitute error here for the Court to consider the argument in Mazda's second Rule 12(b) motion to dismiss that NJ CAR lacks statutory standing to pursue its claims. Mazda filed its first motion to dismiss on the grounds that NJ CAR lacks associational standing pursuant to Rule 12(b)(1). The argument that NJ CAR lacks statutory standing was available to Mazda -- NJ CAR has always alleged that Mazda has violated the FPA -- but was omitted from Mazda's first motion. Furthermore, for the same reasons expressed in Leyse, Mazda's second motion to dismiss does not fall within either of the Rule 12(g)(2) exceptions. Mazda acknowledges that its statutory standing argument is not an argument that the Court lacks subject matter jurisdiction, and Mazda's second

27

motion is not a Rule 7(a) pleading, a motion raised at trial, or a Rule 12(c) motion for judgment on the pleadings. Accordingly, the Court should rule that Mazda is procedurally barred from bringing its subsequent Rule 12 motion to dismiss on these grounds.

## B.    NJ CAR Has The Right To Sue Mazda Based On Its Violations Of The Franchise Practices Act.

If the Court decides to consider the merits of Mazda's assertion that NJ CAR cannot prove statutory standing, the Court should reject the argument because NJ CAR has the right to sue Mazda on behalf of its members based on Mazda's violations of the FPA.

Unlike Article III standing, statutory standing is not jurisdictional. Leyse, 804 F.3d at 320. Statutory standing "goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, but it does not limit the power of the court to adjudicate the case." Ibid. Embodied in this doctrine is the "presum[ption] that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." Id. at 324. "In applying the zone of interest test, the Court has focused its inquiry on the Congressional intent of the statute and whether the complainant's interests were among the sorts of interests those statutes were specifically designed to protect." Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A., 12 F.3d 1256, 1262 (3d Cir. 1993).

28

The Court of Appeals has "advocated a liberal employment of the zone of interests test, explaining that it is not meant to be especially demanding." Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County, 271 F.3d 140, 146 (3d Cir. 2001). The zone of interests test is not satisfied only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed suit was intended to be permitted." Montone v. City of Jersey City, 709 F.3d 181, 199 (3d Cir. 2013); see also Schering Corp. v. FDA, 51 F.3d 390, 395 (3d Cir. 1995) ("The [zone of interests] test, however, is not so stringent that it requires the would-be plaintiff to be specifically targeted by Congress as a beneficiary of the statute.").

Mazda does not, and cannot, contend that NJ CAR is not a party authorized to file suit seeking relief under the Declaratory Judgment Act, the federal statute under which NJ CAR is seeking relief on behalf of its members in this matter. Under the Act, any court may declare the rights of any "interested party seeking such declaration." 28 U.S.C. § 2201. NJ CAR clearly is an "interested party" given the alignment of the purposes it serves and the interests of its members it is seeking to protect in this lawsuit.

Mazda instead contends that NJ CAR lacks statutory standing because it is not a "franchisee" authorized to file a lawsuit based on alleged violations of the FPA. The FPA provides that "[a]ny franchisee may bring an action against its

#11587982.2

franchisor for violation of this act . . . to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief." N.J.S.A. 56:10-10.

First, NJ CAR has filed this matter, and has established its constitutional standing in this matter, on behalf of its members based on associational standing. Associational standing effectively permits the association to stand in the shoes of its members in pursuing claims seeking relief for its members. Indeed, the very notion of associational standing to assert members' injuries arose in a matter where the Supreme Court recognized that, for purposes of such standing, "the association and its members are in every practical sense identical." United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 552 (1996) (citing NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 459 (1958)).

There is no dispute that NJ CAR's members all qualify as "franchisees" who are permitted to bring actions under the FPA for violations of that statute. NJ CAR has brought this lawsuit not seeking anything for itself, but rather, seeking relief on behalf of the real parties in interest: its franchisee members. Accordingly, NJ CAR, who effectively is standing in the shoes of its franchisee members, likewise has the ability to do so.

Courts addressing the "statutory standing" issue, which has particularly arisen when determining whether a union has standing to pursue certain claims

30

under ERISA, have reached the same conclusion. In Southern Illinois Carpenters

Welfare Fund v. Carpenters Welfare Fund of Illinois, 326 F.3d 919 (7th Cir. 2003),

the court determined that a union could file a lawsuit under a provision of ERISA

that limited the right to sue to plan participants and beneficiaries. The court

recognized that the union was bringing the lawsuit on behalf of its members, and

that unions have constitutional standing to sue on behalf of its members provided

they satisfy the associational standing test. Id. at 922. The court thus concluded

that it did "not think that by confining the right to sue under [ERISA's] section

1132(a)(1) to plan participants and beneficiaries Congress intended to prevent

unions from suing on behalf of participants. The union in such a case is not

seeking anything for itself; the real plaintiffs in interest are plan participants."

Ibid.; see also Harju v. Olson, 709 F. Supp. 2d 699, 718 (D. Minn. 2010) (finding

that the union had associational standing to sue on behalf of its member as "it was

seeking to vindicate the rights of its members"); Self-Ins. Inst. of Am., Inc. v.

Korioth, 993 F.2d 479, 484 (5th Cir. 1993) (reversing district court's opinion that

plaintiff had no statutory standing under 29 U.S.C. § 1132 to maintain the action

because a trade association is not an enumerated party in § 502(a)(3) of ERISA);

Pennsylvania Fed'n v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan of Norfolk S.

Corp., 2004 WL 228685 (E.D. Pa. Feb. 4, 2004) (finding that the plaintiff union

had constitutional standing and statutory standing as an associational representative of its members to pursue claims under ERISA).[3]

Application of the zone of interests test yields the same result because NJ CAR's interests clearly fall within the zone of interests protected by the FPA, the law invoked in its lawsuit. NJ CAR's interests are the promotion of fair competition among its dealer members, the advancement of its members' interests in the FPA and compliance with New Jersey laws for the benefit of its members and the public interest. The FPA protects those very interests; it is the very essence of remedial legislation enacted and amended to ensure franchisees -- particularly, motor vehicle dealers -- are treated fairly by their franchisors and may compete fairly among one another. As further explained by the Legislature, the FPA "is intended to protect New Jersey new car dealerships and their employees from further economic dislocation imposed by automakers. The bill is designed to level the playing field on which auto franchisees and auto franchisors do business, and to protect the consumer and the public interest in a strong and secure franchise system of responsible local businesses."

The adoption of Mazda's contention would also entirely defeat the purpose and many benefits associated with associational standing. "[A]n association suing

---

[3] Contrast New Jersey State AFL-CIO v. State of N.J., 747 F.2d 891 (3d Cir.1984) (finding that union did not have statutory standing to pursue certain claims under ERISA where it filed claims seeking relief on its own behalf rather than on behalf of its members).

32

to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital . . . specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." International Union, UAW v. Brock, 477 U.S. 274, 289 (1986). Additionally, "the primary reason people join[,] . . . to create an effective vehicle for vindicating interests that they share with others," is advanced. Id. at 290. "The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests." Ibid. It would be extremely prejudicial to NJ CAR's members if NJ CAR, the very organization formed more than a century ago to protect motor vehicle franchisees' interests, and having been held to have associational standing, cannot pursue claims on its members' behalf alleging violations of the very statute enacted to provide the same protections to its members. Notably, Mazda ignores the express legislative intent of the FPA and does not cite any case where an association's purpose was entirely thwarted as Mazda seeks to do here.

Mazda also asserts that permitting NJ CAR to proceed with this lawsuit would deprive it of its defense under the FPA to demonstrate that a franchisee has not substantially complied with its requirements. This is not an action by an individual dealer in which that dealer seeks relief against Mazda. Rather, it is a collective action brought on behalf of all dealers and to uphold New Jersey law.

33

No specific individual dealer's interests are being promoted, and no monetary damages or attorneys' fees are being sought.   As NJ CAR is only seeking declaratory and injunctive relief pursuant to the associational standing doctrine, Mazda's inability to utilize this defense causes no prejudice or unfairness to it.[4]

Lastly, as noted in the Statement of Facts, NJ CAR has been bringing and participating in these types of lawsuits on behalf of its members for the past few decades when its members have been injured by wrongful practices. Its "statutory standing" to do so has never been questioned. For the reasons set forth above, the Court should likewise not question it and should hold that NJ CAR has the right to bring this lawsuit on behalf of its members alleging FPA violations.

## CONCLUSION

For all of the foregoing reasons, plaintiff NJ CAR respectfully requests that the Court deny defendant Mazda's second motion to dismiss.

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff, New Jersey Coalition
of Automobile Retailers, Inc.

By: _____
DANIEL J. KLUSKA

Dated: August 25, 2020

---

[4] Mazda also makes reference to several other states' franchise statutes. Reliance on these other statutes is unavailing given the New Jersey Legislature's express intent in enacting and amending the FPA, and the complete alignment of NJ CAR's interests and the same interests that the FPA seeks to protect.

34

#11587982.2