## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
--------------------------------------------X
                                            :
NEW JERSEY COALITION OF                     :
AUTOMOTIVE RETAILERS,                       :        NO. 3:18-cv-14563
INC., a non-profit New Jersey               :
Corporation,                                :      (Document Filed Electronically)
                                            :
              Plaintiff,                     :
                                            :
v.                                          :
                                            :
MAZDA MOTOR OF AMERICA,                     :
INC.,                                       :
                                            :
              Defendant.                     :
--------------------------------------------X
```

_____

### BRIEF ON BEHALF OF PLAINTIFF NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
_____

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, P.O. Box 10
Woodbridge, New Jersey 07095
Attorneys for Plaintiff, New Jersey Coalition
of Automotive Retailers, Inc.

DANIEL J. KLUSKA, ESQ.
      Of Counsel and On the Brief

SAMANTHA J. STILLO, ESQ.
      On the Brief

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS .................................................................................4

    A.    The Parties. .............................................................................4

    B.    The New Jersey Legislature Enacted The New Jersey Franchise Practices Act Nearly Fifty Years Ago To Protect Franchisees From Abusive Practices Of Franchisors. ...............................................6

    C.    The New Jersey Legislature Amended The New Jersey Franchise Practices Act In 1989 And 1999 To Ensure That Motor Vehicle Franchisees Are Protected From Abusive Practices By Motor Vehicle Franchisors. ................................................................10

    D.    The New Jersey Legislature Again Amended The New Jersey Franchise Practices Act In 2011 To "Level The Playing Field" For Motor Vehicle Franchisees Doing Business With Motor Vehicle Franchisors. ................................................................12

        1.  N.J.S.A. 56:10-7.4(h). .................................................................13

        2.  N.J.S.A. 56:10-7.4(l). .................................................................13

        3.  N.J.S.A. 56:10-7.4(j). .................................................................14

    E.    Mazda Implements A Brand Experience Program That Creates Price Differentials Through Discounts Or Bonuses And Denies Benefits To Mazda Dealers That Do Not Comply With Certain Facility Obligations. ................................................................15

    F.    Mazda Acknowledged That Many Of Its Dealers Did Not Satisfy All Criteria To Qualify For The Full Discount And Thus Sustained Harm Caused By The Implementation Of The MBEP.......18

    G.    NJ CAR Filed The Present Action Alleging That The Mazda Brand Experience Program Violates The Franchise Practices Act.....20

i

## TABLE OF CONTENTS (cont'd)

<b><u>PAGE</u></b>

STANDARD OF REVIEW ...................................................................21

LEGAL ARGUMENT ........................................................................22

POINT I..........................................................................................22

    THIS COURT HAS JURISDICTION TO GRANT A DECLARATORY
    JUDGMENT IN FAVOR OF NJ CAR STATING THAT THE MBEP
    VIOLATES THE FPA AND THAT ITS IMPLEMENTATION IN NEW
    JERSEY IS UNLAWFUL, AND TO ENJOIN MAZDA FROM APPLYING IT
    IN NEW JERSEY....................................................................22

POINT II .........................................................................................26

    THE COURT SHOULD GRANT A DECLARATORY JUDGMENT IN
    FAVOR OF NJ CAR AND ENJOIN MAZDA FROM IMPLEMENTING THE
    MBEP IN NEW JERSEY ...........................................................26

        A.    The Discounts Offered To Mazda Dealers Under The MBEP
              Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-
              7.4(h). ..........................................................................30

        B.    The Discount Levels Offered Under The MBEP Only To Mazda
              Dealers That Have An Exclusive Mazda Facility Incorporating All
              Mazda Required Elements, Without Mazda Offering Any
              Evidence That The Necessary Costs Incurred To Build Such
              Exclusive Facilities Are Financially Justified For All Mazda
              Dealers, Or Granting Exceptions To Dealers Who Cannot
              Reasonably Comply, Coerces Dealers To Build Unjustified
              Facilities And Denies A Benefit To Mazda Dealers Who Do Not
              Or Cannot Comply In Violation Of N.J.S.A. 56:10-7.4(l). ...........33

        C.    The MBEP Attempts To Coerce Dealers To Provide Mazda With
              Exclusive Facilities And Denies A Benefit To Mazda Dealers
              With Dualled Facilities In Violation Of N.J.S.A. 56:10-7.4(j)...........35

        D.    The Court Should Enter An Injunction Barring Mazda From
              Implementing MBEP In New Jersey....................................37

CONCLUSION .................................................................................40

ii

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**Cases**

AAMCO Transmissions, Inc. v. Dunlap,
  646 Fed. Appx. 182 (3d Cir. 2016) ...................................................39

Abbott Labs. v. Gardner,
  387 U.S. 136 (1967) .........................................................................24

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .........................................................................22

Beilowitz v. GMC,
  233 F. Supp. 2d 631 (D.N.J. 2002) ............................................. 10, 38

Bosland v. Warnock Dodge, Inc.,
  197 N.J. 543 (2009) ...........................................................................6

Chanel, Inc. v. Matos,
  133 F. Supp. 3d 678 (D.N.J. 2015) ..................................................37

Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,
  177 F.3d 210 (3d Cir. 1999) .............................................................26

DiProspero v. Penn,
  183 N.J. 477 (2005) .........................................................................28

Duke v. All Am. Ford, Inc.,
  2018 WL 3596274 (App. Div. 2018) ..................................................6

Febbi v. Bd. of Review,
  35 N.J. 601 (1961) ...........................................................................28

General Motors Acceptance Corp. v. Cahill,
  375 N.J. Super. 553 (App. Div. 2005) ................................................6

GMC v. New A.C. Chevrolet, Inc.,
  263 F.3d 296 (3d Cir. 2001) .........................................................9, 28

Goffe v. Foulke Mgmt. Corp.,
  238 N.J. 191 (2019) ...........................................................................6

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Gross v. TJH Auto. Co.,
  380 N.J. Super. 176 (App. Div. 2005) ...................................................6

Hunt v. Wash. Apple Adver. Comm'n,
  432 U.S. 333 (1977)..........................................................................24

In re New Jersey State Contract A71188,
  422 N.J. Super. 275 (App. Div. 2011) ...................................................6

Kubis & Perszyk Assocs. v. Sun Microsystems, Inc.,
  146 N.J. 176 (1996)...........................................................................9

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,
  923 F. Supp. 665 (D.N.J. 1996) ........................................ 10, 27, 28, 29

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992)..........................................................................23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)..........................................................................22

MedImmune, Inc. v. Genentech, Inc.,
  549 U.S. 118 (2007)..........................................................................23

NJ CAR v. DaimlerChrysler Motors Corp.,
  107 F. Supp. 2d 495 (D.N.J. 1999) .......................................................6

NJ CAR v. Ford Motor Co. d/b/a Lincoln Motor Co.,
  Docket No. MER-L-234-20 (Law Div. 2020) .........................................6

NJ CAR v. Mazda Motor of Am., Inc.,
  957 F.3d 390 (3d Cir. 2020).................................................. 21, 22, 24

O'Connell v. State,
  171 N.J. 484 (2002)..........................................................................28

Powell v. McCormack,
  395 U.S. 486 (1969)..........................................................................26

Presbytery of N.J. of Orthodox Presbyterian Church v. Florio,
  40 F.3d 1454 (3d Cir. 1994).................................................. 24, 26

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Sabella v. Lacey Township,
    204 <u>N.J. Super.</u> 55 (App. Div. 1985) ...................................................28

Saldana v. Kmart Corp.,
    260 <u>F.</u>3d 228 (3d Cir. 2001).................................................................22

Shell Oil Co. v. Marinello,
    63 <u>N.J.</u> 402(1973).................................................................................7

Stadium Chrysler Jeep, L.L.C. v. DaimlerChrysler Motors Co.,
    324 <u>F. Supp.</u> 2d 587 (D.N.J. 2004) ....................................................29

Warth v. Seldin,
    422 <u>U.S.</u> 490 (1975)...........................................................................25

Westfield Ctr. Serv. v. Cities Serv. Oil Co.,
    158 <u>N.J. Super.</u> 455 (Ch. Div.), <u>supplemented</u>,
    162 <u>N.J. Super.</u> 114 (Ch. Div. 1978), <u>aff'd</u> <u>and</u> <u>remanded</u>, 172 <u>N.J. Super.</u>
    196 (App. Div. 1980), <u>aff'd</u>, 86 <u>N.J.</u> 453 (1981) ....................... 7, 8, 29

**Statutes**

28 <u>U.S.C.</u> § 1332.................................................................................22

28 <u>U.S.C.</u> § 2201(a) ...........................................................................23

28 <u>U.S.C.</u> § 2202...............................................................................26

<u>N.J.S.A.</u> 56:10-13.1............................................................................29

<u>N.J.S.A.</u> 56:10-15...............................................................................29

<u>N.J.S.A.</u> 56:10-2...................................................................................7

<u>N.J.S.A.</u> 56:10-3(c) .............................................................................5

<u>N.J.S.A.</u> 56:10-5.................................................................................29

<u>N.J.S.A.</u> 56:10-7.2........................................................................ 10, 11

<u>N.J.S.A.</u> 56:10-7.2(c) ........................................................................39

<u>N.J.S.A.</u> 56:10-7.3........................................................................ 10, 11

#11702882.1(011028.097)

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

N.J.S.A. 56:10-7.4.................................................................... 11, 13, 14, 31

N.J.S.A. 56:10-7.4(h) ....................................................................... passim

N.J.S.A. 56:10-7.4(j) ........................................................................ passim

N.J.S.A. 56:10-7.4(l) ........................................................................ passim

**Other Authorities**

F.R.C.P. 17(a) ........................................................................................24

F.R.C.P. 56 ............................................................................................21

Fed. R. Civ. Pro. 57 Advisory Committee Notes ...................................22

**Treatises**

1999 NJ Sess. Law Serv. Ch. 45 (Senate 1093) ...................................11

Assembly Bill 2063 (1971) .....................................................................7

N.J. Assem. Floor State., A.B. 3722, 1/20/2011.............................. passim

NJ S. Comm. State.,
    S.B. 1093, 11/30/1998.........................................................................11

P.L. 1971 c.356 .......................................................................................7

P.L. 1989, c. 24, § 1, eff. Feb. 6, 1989 (West).......................................11

P.L. 2011 c.66, § 2 ...............................................................................12

## **PRELIMINARY STATEMENT**

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("NJ CAR") submits this brief in support of its motion for summary judgment. NJ CAR's motion seeks a declaratory judgment: (1) that the Mazda Brand Experience Program 2.0 (the "MBEP"), on its face, violates the New Jersey Franchise Practices Act ("FPA"); and (2) that it is therefore unlawful for Mazda to implement the MBEP in New Jersey. NJ CAR also seeks a permanent injunction prohibiting Mazda from applying the MBEP in New Jersey. Because little more than a side-by-side comparison of the terms of the MBEP and prohibitions of the FPA is required to decide the issues -- which readily reveals that the MBEP violates three separate subsections of the FPA -- summary judgment in favor of NJ CAR is warranted and appropriate at this time.

The FPA was enacted in 1971 in response to the unequal bargaining power that exists in the franchisor-franchisee relationship. Originally enacted to protect franchisees against unreasonable terminations and the refusal to permit the sale of franchises, the Legislature has since amended the FPA on many occasions to combat additional franchisor abusive practices as the franchisor-franchisee relationship has evolved. Most pertinently, in 2011, the Legislature amended the FPA to provide motor vehicle franchisees with a range of protections from economic coercion by franchisors, including provisions: (1) prohibiting franchisors

from offering to sell or selling similarly equipped motor vehicles to their dealers at different prices through differentials in bonus, credit, allowance or discount; (2) prohibiting franchisors from requiring franchisees to undertake financially unjustified facilities modifications, and from denying benefits to those franchisees who do not make them; and (3) prohibiting franchisors from interfering with a franchisee's utilization of his or her facilities, most particularly by prohibiting a franchisee's use of a suitably sized facility for more than one franchise (dualling), and from denying benefits to dealers that dual.  The Legislature recognized that these amendments were necessary because the proscribed franchisor practices promote unfair competition, are coercive and jeopardize the ongoing viability of non-complying dealers, all of which disserves the public interest.

In July 2018, Mazda implemented the MBEP, a new program for Mazda dealers that offers dealers multi-tiered, per-vehicle discounts off the dealer price for a vehicle, in the form of a percentage off the Manufacturer Retail Sales Price ("MSRP") of the vehicle, based on the extent of a dealer's compliance with a list of criteria established by Mazda.  Qualification for the different levels of bonus depends on whether a Mazda dealer, *inter alia*: (1) constructs or provides an exclusive Mazda facility; (2) provides a facility incorporating all Mazda design image elements; (3) employs a dedicated, exclusive Mazda general manager; and (4) provides a customer service experience that achieves certain grades.  Pursuant

2

to the MBEP, the more criteria a dealer satisfies, the greater the discount or bonus the dealer receives per vehicle sold.

The MBEP violates the three statutory provisions mentioned above and results in a wholly unlevel playing field among dealers, to the detriment of dealers in New Jersey and the public interest.  Dealers that receive greater discounts are able to sell vehicles at lower prices, leaving dealers who do not or only partially comply with the criteria vulnerable in the marketplace.  Such price differentials between retailers of the same identical product have been found to be anti-competitive at all levels, weaken the dealers that do not get the full extent of them, and can adversely affect the public interest through their effects on employment at and tax revenues from dealers that must limit or terminate operations and on the convenient, local availability of warranty and recall service for Mazda vehicles through a strong network of Mazda dealers.

The negative impact of MBEP is demonstrated in certifications previously submitted to the Court.  While Mazda asserts that there are a few dealers that qualify for the full discount and will thereby benefit from the MBEP, it acknowledges and admits that many others do not qualify for any portion of the discount or only some portion thereof, and therefore will be placed at a competitive disadvantage and will be subject to the consequences of being uncompetitive.  This

3

result is precisely what the Legislature legislated against with the statutory provisions in question.

Thus, as demonstrated herein, the MBEP violates the prohibitions added to the FPA in 2011 by offering to sell and selling similarly equipped vehicles to New Jersey Mazda dealers with differentials in price.  By basing a percentage of the MSRP discount in part on a dealer's satisfaction of facilities criteria (without exceptions) and dualling restrictions, the MBEP also violates the FPA provisions that prohibit franchisors from coercing or withholding benefits from dealers to cause them to perform financially unjustified modifications and from dualling.

Accordingly, this Court should grant summary judgment in favor of NJ CAR and (1) declare that the MBEP violates the FPA on its face, and that Mazda's implementation of the MBEP in New Jersey is unlawful; and (2) permanently enjoin Mazda from implementing the MBEP in New Jersey.

## STATEMENT OF FACTS

### A.   The Parties.

Plaintiff, NJ CAR, a New Jersey not for profit corporation founded in 1918, is a trade association consisting of franchised new motor vehicle dealers in the State of New Jersey.  Certification of James B. Appleton dated November 30, 2018 ("Appleton Cert."), ¶2 (Docket Entry No. 12-3).  There are approximately 500 members of NJ CAR, sixteen of which are Mazda franchised dealers in New

4

Jersey, and each of which is a "franchisee" as that term is defined in the FPA, a remedial statute regulating franchise relationships.  Id., ¶6 & Exh. A; N.J.S.A. 56:10-3(c).

NJ CAR serves the interests of its motor vehicle dealer members in several different ways: (1) it promotes the interests of franchised new car and truck retailers with governmental entities, the media and the public at large; (2) it provides its members with information on statutory, regulatory, and legislative matters affecting the interests of motor vehicle retailers; (3) it offers educational and training programs to employees of its members on best business practices, to enhance their professionalism and expertise and to promote compliance with law; and (4) it offers services to its members to enhance their businesses and that comply with legal requirements.  Appleton Cert., ¶3.

In addition, NJ CAR also seeks to protect the interests of motor vehicle consumers by (1) providing them with comprehensive information related to their vehicle purchases; (2) promoting fair competition among its dealer members, (3) ensuring consumer access to multiple fairly competing dealerships throughout the State; (4) facilitating dialogue between consumers and dealerships in the event of a dispute; and (5) prioritizing the safety of drivers by ensuring that multiple dealerships can service their vehicle and address any safety recalls.  Id., ¶4.

NJ CAR also actively represents New Jersey motor vehicle dealers in legislative and regulatory matters, (id., ¶5), and periodically participates as a party or as *amicus curiae* in litigation in state and federal court regarding the interests of its membership.  E.g., NJ CAR v. DaimlerChrysler Motors Corp., 107 F. Supp. 2d 495 (D.N.J. 1999); NJ CAR v. Ford Motor Co. d/b/a Lincoln Motor Co., Docket No. MER-L-234-20 (Law Div. 2020); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191 (2019); Duke v. All Am. Ford, Inc., 2018 WL 3596274 (App. Div. 2018); In re New Jersey State Contract A71188, 422 N.J. Super. 275 (App. Div. 2011); Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009); Gross v. TJH Auto. Co., 380 N.J. Super. 176 (App. Div. 2005); General Motors Acceptance Corp. v. Cahill, 375 N.J. Super. 553 (App. Div. 2005).

Defendant, Mazda, a California corporation founded in 1970, manufactures and markets motor vehicles for sale through dealers in the State of New Jersey and throughout the United States.  Appleton Cert., ¶¶7-8.  Mazda's line of vehicles includes sedans, hatchbacks, crossovers, SUVs and sports cars.  Id., ¶8.  Mazda is a "franchisor" as that term is defined in the FPA.  N.J.S.A. 56:10-3(c).

**B.** **The New Jersey Legislature Enacted The New Jersey Franchise Practices Act Nearly Fifty Years Ago To Protect Franchisees From Abusive Practices Of Franchisors.**

In 1971, the New Jersey Legislature enacted the FPA to protect franchisees from franchisor abuses arising from the unequal bargaining power in the

6

franchisor-franchisee relationship.   P.L. 1971 c.356; <u>N.J.S.A.</u> 56:10-2.   In the

Statement accompanying the original bill, Assembly Bill 2063 (1971), the

Legislature explained the rationale for this critical legislation:

> New Jersey would do the same in this bill which, through the courts, would rule out arbitrary and capricious cancellation of franchises while preserving the right of franchisors to safeguard their interests through the application of clear and nondiscriminatory standards. The bill would protect the substantial investment tangible and intangible of both parties in the various franchises.  It would rule out economic coercion as a business tactic in this most sensitive field.
>
> The New Jersey Legislature has been asked many times in the past to deal on a piecemeal basis with various problems growing out of the franchise relationship.  This bill would provide a comprehensive statutory formula for resolving a wide range of questions growing out of the franchise relationship.

<u>Westfield Ctr. Serv. v. Cities Serv. Oil Co.</u>, 158 <u>N.J. Super.</u> 455, 471 (Ch. Div.),

<u>supplemented</u>, 162 <u>N.J. Super.</u> 114 (Ch. Div. 1978), <u>aff'd</u> <u>and</u> <u>remanded</u>, 172 <u>N.J.</u>

<u>Super.</u> 196 (App. Div. 1980), <u>aff'd</u>, 86 <u>N.J.</u> 453 (1981).

Shortly after the Legislature enacted the FPA, the New Jersey Supreme

Court commented on the Legislature's intent to provide broad protections for

franchisees in New Jersey.  The Court noted that the Legislature had "declared that

distribution and sales through franchise arrangements in New Jersey vitally affect

the general economy of the State, the public interest and the public welfare."  <u>Shell</u>

<u>Oil Co. v. Marinello</u>, 63 <u>N.J.</u> 402, 409 (1973).  It pointed out that the Legislature

was motivated to enact the FPA to mitigate the unfair leverage that a franchisor had over a franchised dealer.  Id.  The Court recognized that, upon the establishment of a franchise, the franchisor possesses substantial leverage over the franchisee on account of the franchisee's investment in its franchise, including time expended, expenses incurred, and efforts exhausted to generate business and customer good will, which the franchisee risks losing in its entirety at the whim of the franchisor.  Id.  The franchisor, on the other hand, incurs no such risk because it can easily replace the former franchisee at the location while continuing to reap the benefits of the former franchisee's efforts, time and money.  Id.

A decade after the FPA became law, the Supreme Court again recognized that franchisees required protection from abusive conduct by franchisors exploiting their unequal bargaining power:

> Though economic advantages to both parties exist in the franchise relationship, disparity in the bargaining power of the parties has led to some unconscionable provisions in the agreements.  Franchisors have drafted contracts permitting them to terminate or to refuse renewal of franchises at will or for a wide variety of reasons including failure to comply with unreasonable conditions.  Some franchisors have terminated or refused to renew viable franchises, leaving franchisees with nothing in return for their investment.  Others have threatened franchisees with termination to coerce them to stay open at unreasonable hours, purchase supplies only from the franchisor and at excessive rates or unduly expand their facilities.

Westfield Ctr. Serv. v. Cities Serv. Oil Co., 86 N.J. 453, 461-62 (1981).

8

In 1996, the Court reiterated that "the Act's legislative history as well as our common experience suggests that the financial resources of most franchisees pale by comparison to the financial strength and profitability of their franchisors." Kubis & Perszyk Assocs. v. Sun Microsystems, Inc., 146 N.J. 176, 193 (1996). The Court again recognized the unequal bargaining power between franchisees and franchisors:

> One of the fundamental assumptions of the Franchise Act, verified by the testimony before the Assembly Judiciary Committee, is that the bargaining power of parties to franchise agreements is generally disproportionate. That assumption finds concrete expression in the provisions of the Franchise Act that prohibit franchisors from coercing franchisees to consent to various specified unreasonable conditions in the franchise agreement.

Id. at 194.

The federal courts in New Jersey likewise appreciate that the Legislature enacted the FPA to level the playing field between franchisees and franchisors and to prohibit franchisors from subjecting their franchisees to unreasonable and onerous requirements. See, e.g., GMC v. New A.C. Chevrolet, Inc., 263 F.3d 296, 319 (3d Cir. 2001) ("[T]he NJFPA was enacted in large part to counteract the unequal bargaining power between franchisor and franchisee, which would allow a franchisor to leverage its bargaining strength so as to insert provisions in its private agreements with franchisees that would allow it to sever the franchise relationship

#11702882.1(011028.097)

at will."); <u>Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.</u>, 134 <u>F.</u>3d 557, 566 (3d Cir. 1998) ("New Jersey courts have held that the NJFPA is a remedial statute intended to equalize the disparity in bargaining power in franchisor-franchisee relations."); <u>Beilowitz v. General Motors Corp.</u>, 233 <u>F. Supp.</u> 2d 631, 633 (D.N.J. 2002) (asserting that the "very reason the [FPA] was enacted [was] to protect franchisees, possessed of less bargaining power than their franchisors, from such daunting 'choices'").

### C.     The New Jersey Legislature Amended The New Jersey Franchise Practices Act In 1989 And 1999 To Ensure That Motor Vehicle Franchisees Are Protected From Abusive Practices By Motor Vehicle Franchisors.

Since enacting the FPA, the Legislature has amended it on multiple occasions particularly to address the continuing disparity in bargaining power in the automotive franchisor-franchisee relationship and rectify specific abusive franchisor tactics in the motor vehicle sales industry.

Specifically, in 1989, the Legislature amended and further strengthened the FPA by enacting two new sections, <u>N.J.S.A.</u> 56:10-7.2 and -7.3.   In <u>N.J.S.A.</u> 56:10-7.2, the Legislature addressed and enunciated its findings and declarations concerning the evolving nature and continuing abuses in the motor vehicle franchisor-franchisee relationship:

> This inequality of bargaining power enables motor vehicle franchisors to compel motor vehicle franchisees to execute franchises and related leases and agreements

10

> which contain terms and conditions that would not routinely be agreed to by the motor vehicle franchisees absent the compulsion and duress which arise out of the inequality of bargaining power. These terms and conditions are detrimental to the interests of the motor vehicle franchisees in that they require the motor vehicle franchisees to relinquish their rights which have been established by the "Franchise Practices Act" and supplemental legislation and other statutes and laws of this State.

See P.L. 1989, c. 24, § 1, eff. Feb. 6, 1989 (West) (codified at N.J.S.A. 56:10-7.2).

In N.J.S.A. 56:10-7.3, the Legislature included provisions barring motor vehicle franchisors from requiring motor vehicle franchisees to agree to certain terms and conditions in franchise agreements or in any leases or agreements ancillary or collateral to such franchises.  N.J.S.A. 56:10-7.3(a)(1-3).

Ten years later, in 1999, the Legislature again amended the FPA by enacting a new section, N.J.S.A. 56:10-7.4, which prohibited additional improper activities by motor vehicle franchisors.  1999 NJ Sess. Law Serv. Ch. 45 (Senate 1093). Among a number of other provisions, the Legislature prohibited motor vehicle franchisors from imposing unreasonable performance standards or unreasonable facilities, financial, operating or other requirements upon a franchisee; from requiring franchisees to give unconditional releases in regard to any FPA claims that the franchisee may have against the franchisor in order to receive monies due them; and from denying franchisees full compensation for recall repairs that they perform.  See NJ S. Comm. State., S.B. 1093, 11/30/1998; N.J.S.A. 56:10-7.4.

11

**D.    The New Jersey Legislature Again Amended The New Jersey Franchise Practices Act In 2011 To "Level The Playing Field" For Motor Vehicle Franchisees Doing Business With Motor Vehicle Franchisors.**

In 2011, the Legislature again amended the FPA to "[define] the relationship and responsibilities between motor vehicle franchisors and motor vehicle franchisees."  P.L. 2011 c. 66, § 2; N.J. Assem. Floor State., A.B. 3722, 1/20/2011.  The Legislature explained that the amendments were necessary to modernize the FPA to address specific abuses of power that had recently arisen:

> Over the years, the "Franchise Practices Act" has been amended to keep pace with changing market conditions and to address new threats to the consumer and the public interest in the franchise system.  Recent developments in the auto industry have highlighted the unequal bargaining position of dealers vis-a-vis manufacturers.  Dozens of New Jersey new car dealerships and thousands of dealership jobs have been lost.  New Jersey consumers and the economy have suffered as a result.
>
> This bill is intended to protect New Jersey new car dealerships and their employees from further economic dislocation imposed by automakers.  The bill is designed to level the playing field on which auto franchisees and auto franchisors do business, and to protect the consumer and the public interest in a strong and secure franchise system of responsible local businesses.

N.J. Assem. Comm. State., A.B. 3722, 1/20/2011.  Among other things, the 2011 amendments "clarifie[d] and reinforce[d]" provisions of the FPA relating to:

- Unreasonable facilities, capital or inventory requirements imposed on auto retailers by automakers;

12

- Manufacturer demands on dealers to sign side agreements or addenda, which force dealers to give up essential franchise rights;

- Unreasonable charge backs levied by manufacturers against dealers in connection with the exportation of motor vehicles, sales incentive or warranty audits; and

- Repurchase obligations on the part of an auto manufacturer in the case of a voluntary dealer termination, and a dealer's rights in the case of an involuntary termination, in the event of a sale or transfer of a franchise, and when a manufacturer seeks to establish or relocate a new or competing franchise in the dealer's relevant market area.  Id.

### 1.  N.J.S.A. 56:10-7.4(h).

Among the 2011 amendments, the Legislature amended N.J.S.A. 56:10-7.4 to require that motor vehicle franchisors sell, or offer to sell, all comparably equipped motor vehicles to all dealers in New Jersey at the same price without differential in discount, allowance, credit or bonus.  P.L. 2011 c. 66, § 2. Specifically, the FPA prohibits franchisors "to fail or refuse to sell or offer to sell such motor vehicles to all motor vehicle franchisees *at the same price* for a comparably equipped motor vehicle, on the same terms, with *no differential* in discount, allowance, credit or bonus."  N.J.S.A. 56:10-7.4(h) (emphasis added).

### 2.  N.J.S.A. 56:10-7.4(l).

At the same time, the Legislature amended N.J.S.A. 56:10-7.4 to proscribe actions by motor vehicle franchisors that compel franchisees to undertake financially unjustified facilities modifications or that punish or deny benefits to

13

dealers that do not comply with such demands.  N.J. Assem. Comm. State., A.B.

3722, 1/20/11.  Specifically, a motor vehicle franchisor violates the FPA when it

seeks:

> *To require or attempt to require a motor vehicle franchisee to relocate his franchise or to implement any facility or operational modification or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification, unless* the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the relocation or modification on reasonable terms; and (2) *the motor vehicle franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years*; or (3) the modification is required so that the motor vehicle franchisee can effectively sell and service a motor vehicle offered by the motor vehicle franchisor based on the specific technology of the motor vehicle.  This subsection shall not be construed as requiring a motor vehicle franchisor to guarantee that the return as provided in paragraph (2) of this subsection will be realized.

N.J.S.A. 56:10-7.4(l) (emphasis added).

### 3.   N.J.S.A. 56:10-7.4(j).

The Legislature also amended N.J.S.A. 56:10-7.4 in 2011 to bar franchisors

from requiring their dealers to use their facilities exclusively for the franchisor's

brand even where the facility has ample space for multiple brands (dualling).  P.L.

2011 c. 66, § 2.  Specifically, the FPA prohibits a motor vehicle franchisor:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt *to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities* at which a motor vehicle franchise is operated, *including, but not limited to, requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities*, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor.  The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid.

N.J.S.A. 56:10-7.4(j) (emphasis added).

### E.   Mazda Implements A Brand Experience Program That Creates Price Differentials Through Discounts Or Bonuses And Denies Benefits To Mazda Dealers That Do Not Comply With Certain Facility Obligations.

Despite the enactment of the FPA and amendments thereto, in 2018, Mazda

introduced the Mazda Brand Experience Program 2.0 ("MBEP") and began

implementing it on July 3, 2018.  Appleton Cert., ¶9 & Exh. B.  The MBEP

establishes an elaborate two-tiered pricing regime that enables Mazda dealers to

earn discounts or bonuses for each vehicle a dealer sells based on its compliance with certain conditions.  Id., ¶10 & Exh. B.  The MBEP offers these tiered discounts or bonuses as a percentage of the Manufacturer's Suggested Retail Price ("MSRP") on a per vehicle basis ranging from 6.5% to 0% depending on the degree of compliance with the MBEP.  Id., ¶11 & Exh. B.  Mazda is only guaranteeing payments under the MBEP for compliance therewith for a four-year period. Id., ¶21 & Exh. B.

To qualify for any payments under the MBEP, a Mazda dealer must achieve several base qualifiers.  Those Mazda dealers that achieve all of the base qualifiers are eligible for two discounts.  Id., ¶12 & Exh. B.  One is a brand commitment element payment based on facilities and other requirements that provides up to a 4.5% discount.  Id., ¶13 & Exh. B.  Specifically, Mazda dealers that enroll in a Retail Evolution Program, have an exclusive Mazda facility that incorporates all Mazda required image elements, satisfy other "base elements" and employ a Dedicated Exclusive General Manager may be designated as Retail Evolution ("RE") dealers that qualify for the full 4.5% brand commitment element discount or bonus.  Id., ¶14 & Exh. B.  Mazda dealers that satisfy all of these facility elements but that do not employ a Dedicated Exclusive General Manager are disqualified from being designated RE dealers and instead may be designated as exclusive dealers that qualify for 2.8% of the 4.5% brand commitment element

16

discount or bonus.  Id., ¶15 & Exh. B.  Mazda dealers that have an exclusive Mazda showroom that does not incorporate all Mazda required image elements, and which also meet other base criteria, are designated as exclusive showroom dealers that only qualify for 1.0% of the 4.5% brand commitment element discount or bonus.  Id., ¶16 & Exh. B.  Mazda dealers that do not have an exclusive Mazda facility are designated as dual dealers that do not qualify for any portion of the 4.5% brand commitment element discount or bonus.  Id., ¶17 & Exh. B.

The MBEP also contains a customer experience element payment based on Mazda's calculation of "customer experience" at the dealership.  It provides up to a 2.0% discount off MSRP.  Id., ¶18 & Exh. B.  Although RE dealers, exclusive dealers, exclusive showroom dealers and dual dealers all are eligible for this discount, only those Mazda dealers that meet the customer experience requirements each quarter receive the 2.0% customer experience element discount for that quarter.  The others receive nothing.  Id., ¶19 & Exh. B.

In sum, Mazda dealers have the ***potential*** to earn the following discounts (but some dealers will receive less or no discount at all):

| Type of Mazda Dealer | MBEP Discount |
|---|---|
| RE Dealer | Up to 6.5% of MSRP per vehicle sold |
| Exclusive Dealer | Up to 4.8% of MSRP per vehicle sold |
| Exclusive Showroom Dealer | Up to 3.0% of MSRP per vehicle sold |
| Dual Dealer | Up to 2.0% of MSRP per vehicle sold |

17

Id., ¶20 & Exh. B.  For comparison purposes, on a vehicle with an MSRP of $30,000, a 6.5% discount comes to $1,950 per vehicle giving such dealers a significant price advantage over dealers that receive lesser or no discounts.  For example, the most an exclusive dealer can receive is $1,440; an exclusive showroom dealer $900 and a dual dealer $600.  Dealers that do not qualify for the Customer Experience discount would receive $600 less.  Id., ¶20 & Exh. B.

### F.    Mazda Acknowledged That Many Of Its Dealers Did Not Satisfy All Criteria To Qualify For The Full Discount And Thus Sustained Harm Caused By The Implementation Of The MBEP.

While some Mazda dealers may earn levels of discounts under the MBEP, all Mazda dealers, all other New Jersey motor vehicle dealers, and in fact all New Jersey citizens, are impacted by Mazda's frontal violation of the laws of New Jersey and of the treadmill dealers are put on to constantly try to qualify for the discounts.

Months after Mazda implemented the MBEP, Mazda acknowledged that only three of the sixteen Mazda dealers qualified for and could earn the full 4.5% brand commitment element discount.  Declaration of Kyle Kaczmarek dated November 8, 2018, ¶9 (Docket Entry No. 7-1).[1]  Mazda stated that eight other dealers enrolled in the MBEP but had not completed their facilities and thus did not receive the full discount on vehicles.  Id., ¶10.  Mazda thereby also tacitly

---

[1] Mazda re-filed this Declaration two years later on July 30, 2020 in connection with its second motion to dismiss.  See Docket Entry 36-1.

#11702882.1(011028.097)

conceded that five Mazda dealers of NJ CAR did not qualify for any of the facilities portion of the MBEP.  In total, thirteen of the sixteen dealers were not, at least initially, receiving the full brand commitment element discount that Mazda is providing under the MBEP.

More specifically with respect to two of the dealers, Maxon Auto Enterprises d/b/a Maxon Mazda ("Maxon") is a Mazda dealer in Union, New Jersey and a member of NJ CAR, and SIL, LLC d/b/a Irwin Mazda ("Irwin") is a Mazda dealer in Freehold Township, New Jersey and a member of NJ CAR. Certification of Michael J. Ciasulli dated November 30, 2018 ("Ciasulli Cert."), ¶¶2-3 (Docket Entry 12-2); Certification of Shelly Irwin LoCascio dated December 3, 2018 ("LoCascio Cert."), ¶¶2-3 (Docket Entry 12-1).  Mazda has acknowledged that Maxon is a dualled dealership that does not qualify for any portion of the brand commitment element discount and that Irwin is an exclusive showroom dealer that only qualifies for 1.0% of the 4.5% brand commitment element discount.  Mazda's Response to Plaintiff's Statement of Undisputed Material Facts ("Mazda Resp."), ¶¶ 52, 59 (Docket Entry 25-1).  Mazda further admitted that it did not provide Maxon or Irwin with any justification for making modifications necessary to qualify for any portion of the 4.5% brand commitment element discount, and even asserted that it has no obligation to do so.  Mazda Resp., ¶¶ 57, 64.

#11702882.1(011028.097)

Mazda further acknowledged that not all Mazda dealers were receiving the 2.0% customer experience element discount.  Mazda stated that there were three Mazda dealers that did not receive the 2.0% customer experience element discount in at least the first several months of the MBEP.  Reply Declaration of Kyle Kaczmarek dated December 17, 2018, ¶¶2-3 (Docket Entry No. 18).

### G.   NJ CAR Filed The Present Action Alleging That The Mazda Brand Experience Program Violates The Franchise Practices Act.

On October 2, 2018, NJ CAR filed this action against Mazda seeking a declaratory judgment finding and declaring that the MBEP violates the FPA on its face, and that Mazda's implementation of the MBEP in New Jersey is thus unlawful.  NJ CAR also seeks an injunction restraining Mazda from continuing to apply the MBEP in New Jersey.  Appleton Cert., Exh. D.  NJ CAR contends that the MBEP violates the three provisions of the FPA quoted above enacted specifically to address abuses of power that had arisen in the automotive industry:

- The MBEP's provision of per-vehicle discounts to Mazda dealers based on their level of achievement of certain criteria creates vehicle price differentials up to 6.5% of the MSRP per vehicle among dealers in violation of N.J.S.A. 56:10-7.4(h);

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive, image-compliant facility, notwithstanding Mazda's failure to even attempt to demonstrate in the MBEP that the costs of such facilities can be justified by Mazda dealers, or to offer exemptions to dealers who cannot reasonably comply, violates N.J.S.A. 56:10-7.4(l); and

20

- The MBEP's denial of a benefit (i.e., a per-vehicle discount or bonus) to Mazda dealers that do not provide or construct an exclusive facility but rather use their facilities for multiple brands (dual) violates <u>N.J.S.A.</u> 56:10-7.4(j).

<u>Id.</u>, Exh. D at ¶28.

In its decision holding that NJ CAR has associational standing in this matter, the Third Circuit Court of Appeals accurately summarized the nature of the lawsuit and Mazda's actions at issue.  The court stated that "[b]ecause some of the Mazda dealers have been shut out of the MBEP altogether, this lawsuit is about vindicating their rights and bringing competitive balance back between them and the other dealers who do benefit from the MBEP."  <u>NJ CAR v. Mazda Motor of Am., Inc.</u>, 957 <u>F.</u>3d 390, 393 (3d Cir. 2020).  The court observed that Mazda dealers "feel pressured to participate due to the competitive disadvantages artificially created by the MBEP for non-participation or partial participation."  <u>Id.</u> at 393.  The court further remarked that other non-Mazda members may have an exceedingly strong interest in the success of this lawsuit because "they wish to prevent other manufacturers from implementing similar coercive programs against them."  <u>Id.</u> at 394 n.2.

## <u>STANDARD OF REVIEW</u>

Pursuant to F.R.C.P. 56, summary judgment should be entered where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A "material fact" is one that will affect the outcome of the lawsuit under governing law. Anderson, 477 U.S. at 248. A plaintiff's summary judgment motion "will not be defeated by 'the mere existence' of some disputed facts" that are unrelated to the issues at hand. Id. Where, as here, "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A declaratory judgment "operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion." Fed. R. Civ. Pro. 57 Advisory Committee Notes.

## LEGAL ARGUMENT

### POINT I

**THIS COURT HAS JURISDICTION TO GRANT A DECLARATORY JUDGMENT IN FAVOR OF NJ CAR STATING THAT THE MBEP VIOLATES THE FPA AND THAT ITS IMPLEMENTATION IN NEW JERSEY IS UNLAWFUL, AND TO ENJOIN MAZDA FROM APPLYING IT IN NEW JERSEY**

The Court of Appeals has stated that the Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. NJ CAR v. Mazda Motor of Am., Inc., 957 F.3d 390, 392 (3d Cir. 2020). NJ CAR is a New Jersey

#11702882.1(011028.097)

corporation with its principal place of business in New Jersey and Mazda is a California corporation with its principal place of business in California. Additionally, the amount in controversy exceeds $75,000.

Pursuant to the Declaratory Judgment Act, parties such as NJ CAR may seek a judgment declaring rights in cases of actual controversy.  "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  To satisfy the Article III case or controversy requirement, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id.

To demonstrate a case or controversy, a plaintiff must first establish standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  An

23

association has standing to bring claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); F.R.C.P. 17(a).

NJ CAR has established standing to demonstrate a case of actual controversy within the Court's jurisdiction. The Court of Appeals has held that NJ CAR has associational standing to bring this case. NJ CAR v. Mazda Motor of Am., Inc., 957 F.3d 390, 394 n.3 (3d Cir. 2020).

In addition to standing, the case must be ripe for adjudication. The rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). The ripeness determination "evaluate[s] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149. In determining whether a declaratory judgment action is ripe, courts will "examine the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994).

24

NJ CAR has also established that a ripe controversy exists to be adjudicated by the Court.  Mazda's implementation of the MBEP has harmed, is harming and will continue to harm members of NJ CAR throughout the course of this litigation, as Mazda began implementing the MBEP more than two years ago in July 2018 and continues to implement it.  The MBEP has deprived and continues to deprive NJ CAR's members of their legally protected rights under the FPA.  See Warth v. Seldin, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.").  Judicial action now would amount to more than an advisory opinion based upon a hypothetical set of facts because the questions presented by NJ CAR – whether the MBEP violates the FPA, and, specifically, N.J.S.A. 56:10-7.4(h), (j) and (l) – are questions of law appropriately before the Court based upon the published terms of Mazda's program that Mazda has now run in New Jersey for more than two years.  Lastly, the Court's judgment will serve a useful purpose by enforcing the FPA's protections and promoting fair competition.  Postponement of a decision would impose a hardship on NJ CAR members because the MBEP effectively coerces them to commit a substantial amount of resources to make material changes to their facilities and employment structures to simply be able to remain competitive with other dealers or causes significant competitive disadvantage for those not in compliance.  In short, "a grant or denial of relief in

this case would materially affect the parties," and thus this factor "also weighs in favor of our conclusion that this controversy is ripe." Florio, 40 F.3d at 1470.

NJ CAR is also entitled to an injunction under the Declaratory Judgment Act enjoining Mazda from continuing to implement the MBEP in New Jersey in violation of its members' rights. The Court may issue "further necessary or proper relief based on a declaratory judgment or decree, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. It is well established that a declaratory judgment may be "used as a predicate to further relief, including an injunction." Powell v. McCormack, 395 U.S. 486, 499 (1969); see also Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 177 F.3d 210, 221 (3d Cir. 1999) (holding that a declaratory judgment may be supplemented by either damages or equitable relief).

The Court thus has jurisdiction to enter a declaratory judgment asserting that the MBEP violates the FPA and that Mazda's continuing implementation of it is unlawful, and enjoining Mazda from implementing the MBEP in New Jersey.

## POINT II

### THE COURT SHOULD GRANT A DECLARATORY JUDGMENT IN FAVOR OF NJ CAR AND ENJOIN MAZDA FROM IMPLEMENTING THE MBEP IN NEW JERSEY

Mazda's MBEP, on its face, violates several provisions of the FPA. The MBEP provides for the sale of comparably equipped vehicles to dealers in New

Jersey at *different* prices based on discounts or bonuses in violation of <u>N.J.S.A.</u> 56:10-7.4(h).  It also coerces dealers into unjustifiably spending sums of money to "improve" their facilities and make them exclusive to Mazda simply so they can continue competing with other dealers, in violation of <u>N.J.S.A.</u> 56:10-7.4(j) and (l).  The FPA, and specifically the 2011 amendments, was intended and enacted to directly counteract and prohibit programs like MBEP that are coercive, anathemic to fair competition and contrary to the public interest.  Accordingly, the Court should declare that the MBEP violates the FPA and that its continued implementation in New Jersey is unlawful.  It should also enjoin Mazda from applying it in New Jersey.

This Court is charged with applying the FPA in accordance with its plain meaning so as to effectuate the intent of the Legislature to protect motor vehicle franchisees from what the Legislature has found to be franchisor abuse as the result of the unequal bargaining power franchisors have over their franchisees.  "[U]nder New Jersey law '[i]t is a cardinal rule of statutory construction that the language of the statute should be given its ordinary meaning and construed in a common sense manner to accomplish the legislative purpose.'"  <u>Liberty Lincoln-Mercury v. Ford Motor Co.</u>, 134 <u>F.</u>3d 557, 563 (3d Cir. 1998); <u>see</u> <u>also</u> <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 <u>F.</u>3d 78, 93 (3d Cir. 2000) ("It is axiomatic that any inquiry as to the meaning of a statute must begin with its language.").  The

27

language of a statute is the "best indicator" of the Legislature's intent.  <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005).

A court is "not permitted by construction to lessen or broaden the scope of a statute when the intention of the Legislature in a particular instance is clearly and plainly expressed."  <u>Febbi v. Bd. of Review</u>, 35 <u>N.J.</u> 601, 606 (1961).  "A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."  <u>O'Connell v. State</u>, 171 <u>N.J.</u> 484, 488 (2002).

Moreover, the Court is charged with interpreting and expansively applying remedial statutes such as the FPA in favor of the parties they are enacted to protect. <u>Sabella v. Lacey Township</u>, 204 <u>N.J. Super.</u> 55, 59 (App. Div. 1985) ("We adhere to our prior conviction that liberal construction is required in the case of remedial legislation.").  The FPA is such a remedial statute "intended to equalize the disparity of bargaining power in franchisor-franchisee relations," and "must be construed broadly to give effect to their legislative purpose."  <u>Liberty Lincoln-Mercury</u>, 134 <u>F.</u>3d at 563 (3d Cir. 1998); <u>see</u> <u>also</u> <u>GMC</u>, 263 <u>F.</u>3d at 319; <u>NJ CAR</u>, 107 <u>F. Supp.</u> 2d at 500 ("We make this ruling in light of our awareness that the NJFPA is a remedial statute intended to equalize the disparity of bargaining power in franchisor-franchisee relations and must be construed broadly to give effect to its legislative purpose.").

28

Courts have also not hesitated to strike down programs instituted by motor vehicle franchisors that have violated the FPA.  In <u>Liberty Lincoln-Mercury</u>, the Third Circuit Court of Appeals affirmed the district court's holding that a franchisor's assessment of a dealer-parity warranty-parity surcharge imposed on the sale of vehicles violated the literal text and remedial legislative intent of the FPA.  The Court of Appeals so held because dealers were forced to bear the full cost of the FPA-mandated retail-rate warranty reimbursements, which circumvented the FPA's retail-rate reimbursement requirement (<u>N.J.S.A.</u> 56:10-15).  <u>Id.</u> at 565-66; <u>see</u> <u>also</u> <u>Westfield Ctr.</u>, 158 <u>N.J. Super.</u> at 469 (finding that franchisor terminated a franchise without "good cause" in violation of <u>N.J.S.A.</u> 56:10-5 even though the franchisor had decided in "good faith" to cease doing business in the territory that included the franchise); <u>Stadium Chrysler Jeep, L.L.C.</u> <u>v. DaimlerChrysler Motors Co.</u>, 324 <u>F. Supp.</u> 2d 587, 597-98 (D.N.J. 2004) (holding that franchisor violated repurchase obligations to franchisee under <u>N.J.S.A.</u> 56:10-13.1 of the FPA in connection with franchisor's termination of the Plymouth vehicle brand).

Given the clear provisions of the FPA, its remedial purpose and the case law, all of which direct the Court to expansively apply the FPA to give effect to its terms in accordance with its express language and legislative intent, this Court should find that the MBEP violates three provisions of the FPA.

**A.     The Discounts Offered To Mazda Dealers Under The MBEP Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-7.4(h).**

Under the MBEP, Mazda dealers qualify for and can earn certain discounts or bonuses depending on whether they meet certain facility requirements and satisfy "Customer Experience" criteria.  The discount is not offered based on or in proportion to the amount expended by the dealer to earn the discount or bonus; rather, once a dealer qualifies, that dealer gets a discount off the MSRP for every vehicle the dealer sells.  The discount is earned on the basis of the number of vehicles sold and can be far in excess of or far less than the dealer's cost of complying with the MBEP requirements.   While compliance with the MBEP criteria is required to get a dealer in the door, once in the door, the discount or bonus is a direct discount on the dealer cost of a vehicle.  By offering discounts in this way, Mazda has created vehicle price differentials in violation of the FPA.

Pursuant to N.J.S.A. 56:10-7.4(h), a motor vehicle franchisor *must* sell, or offer to sell, all comparably equipped motor vehicles to all dealers in New Jersey *at the same price*, on the same terms, and with *no differential* in discount, allowance, credit or bonus.  Specifically, the FPA prohibits franchisors from:

> Fail[ing] or refus[ing] to sell or offer to sell to all motor vehicle franchisees in a line make every motor vehicle sold or offered for sale to any motor vehicle franchisee of the same line make, or *to fail or refuse to sell or offer to sell* such motor vehicles to all motor vehicle franchisees *at the same price* for a comparably equipped motor

30

> vehicle, on the same terms, **with no differential in discount, allowance, credit or bonus**, and on reasonable, good faith and non-discriminatory allocation and availability terms.

N.J.S.A. 56:10-7.4(h) (emphasis added).  This plain language of the FPA dictates that no vehicle may be sold with a discount, allowance, credit or bonus that results in one dealer having a lower cost for the vehicle than every other dealer has for a similarly equipped vehicle.  It is not sufficient for the franchisor to make discounts available to all of its dealers who wish to satisfy the franchisor's requirements.  The statute in plain text states that similarly equipped vehicles must be **sold**, or offered for sale, to all dealers "at the same price" "with no differential in discount, allowance, credit or bonus."   This language is clear and leaves no room for interpretation.

The legislative history and intent of N.J.S.A. 56:10-7.4(h) are in alignment with this interpretation.  In the Assembly Committee Statement associated with the enactment of the 2011 FPA amendments (codified in N.J.S.A. 56:10-7.4), the Legislature declared that the 2011 FPA amendments were intended to "protect New Jersey car dealerships and their employees from further economic dislocation imposed by automakers," and to "level the playing field on which auto franchisees and auto franchisors do business, and to protect the consumer and the public interest . . . ."  N.J. Assem. Comm. State., A.B. 3722, 1/20/2011.

#11702882.1(011028.097)

The multi-tiered MBEP discount, however, creates an unlevel playing field. Mazda is selling, and offering to sell, vehicles at different prices to dealers depending on the level of MBEP discount or bonus, if any, for which the dealer qualifies, thereby adversely impacting dealers who do not benefit at all or to the highest extent under the MBEP.  The dealers paying more to Mazda per vehicle are at a significant disadvantage when competing with other dealers for customers over price, affecting the volume of the dealer's sales, ability to make a profit and long-term viability.  Dealers that fully comply with the MBEP's goals enjoy a significant competitive advantage over other dealers based on the cost advantage provided by the franchisor, not based on that dealer's market efficiency.  The playing field is not level, the exact result the Legislature enacted and amended the FPA to prevent from occurring.

In short, if a dealer does not satisfy, or simply is unable to satisfy, any or all of the MBEP conditions, it will not receive the full or any MBEP discount and thus will not be offered or sold "a comparably equipped motor vehicle . . . at the same price . . . with no differential in discount, allowance, credit, or bonus."  N.J.S.A. 56:10-7.4(h).  Accordingly, Mazda's implementation of the MBEP establishes multi-tiered price differentials among dealers in express violation of the plain terms of N.J.S.A. 56:10-7.4(h).

#11702882.1(011028.097)

Thus, the Court should grant summary judgment in favor of NJ CAR declaring the MBEP in violation of <u>N.J.S.A.</u> 56:10-7.4(h).

**B.**     **The Discount Levels Offered Under The MBEP Only To Mazda Dealers That Have An Exclusive Mazda Facility Incorporating All Mazda Required Elements, Without Mazda Offering Any Evidence That The Necessary Costs Incurred To Build Such Exclusive Facilities Are Financially Justified For All Mazda Dealers, Or Granting Exceptions To Dealers Who Cannot Reasonably Comply, Coerces Dealers To Build Unjustified Facilities And Denies A Benefit To Mazda Dealers Who Do Not Or Cannot Comply <u>In Violation Of N.J.S.A. 56:10-7.4(l).</u>**

Under the MBEP, a Mazda dealer qualifies for and can earn certain levels of discount off the MSRP of a vehicle if it has an exclusive Mazda facility that incorporates all Mazda required elements.  By offering these discounts or bonuses only to dealers who fulfill these requirements, without even attempting to demonstrate that the significant costs dealers will need to incur can be financially justified and without offering exceptions for those dealers where the cost is not justifiable, Mazda is attempting to coerce dealers to comply with unreasonable requirements and is denying a benefit (a per-vehicle discount or bonus) to those dealers that do not provide Mazda with such facilities.

The FPA, however, prohibits franchisors from requiring or attempting to require a dealer to relocate or implement facility or operational modifications, or to deny or threaten to deny a benefit on account of the franchisee's refusal to consent to a facility modification or relocation, unless the "franchisor can demonstrate"

33

that the dealer will be able to earn a reasonable return on its investment in such facility and the return of its investment within ten years.  N.J.S.A. 56:10-7.4(l). The burden is on the *franchisor*.  Accordingly, franchisors cannot mandate that a dealership perform facility modifications, and cannot take any action or withhold any benefit to a dealer premised on the dealer's refusal to implement such modifications if the franchisor cannot justify the expense.[2]  Id.

The legislative intent behind the 2011 FPA amendments is fully in accord. In the Assembly Committee Statement, the Legislature stated that it sought to "clarif[y] and reinforce" provisions of the FPA concerning "unreasonable facilities, capital or inventory requirements imposed on auto retailers by automakers."  N.J. Assem. Comm. State., A.B. 3722, 1/20/2011.

Here, as a result of the discount, those dealers that can comply with the MBEP facilities requirements gain the benefit of a 4.5% discount on their per vehicle costs while a dealer that determines that the requirements are financially unjustified stands to forfeit up to the full 4.5% benefit.

Thus, the MBEP serves to coerce dealers to make facilities modifications that Mazda has made no attempt to justify and then denies a benefit to dealers who do not implement the modifications, all in violation of N.J.S.A. 56:10-7.4(l).  By

---

[2] Mazda has offered no such justification with the MBEP, nor exceptions for dealers who cannot reasonably comply.  Ciasulli Cert., ¶11; LoCascio Cert., ¶12; Mazda Resp. ¶¶ 57, 64.

linking the amount of a MBEP discount or bonus the dealer receives directly to the amount of facility and operational modifications the dealer undertakes on the franchisor's behalf, and by offering no exceptions for dealers who cannot comply, the MBEP improperly attempts to require dealers to implement extensive modifications without offering proof that such modifications will enable such dealers to earn a return on and timely recoup their investment in their facilities.

Thus, the Court should grant summary judgment in favor of NJ CAR declaring the MBEP in violation of N.J.S.A. 56:10-7.4(l).

**C.    The MBEP Attempts To Coerce Dealers To Provide Mazda With Exclusive Facilities And Denies A Benefit To Mazda Dealers With Dualled Facilities In Violation Of N.J.S.A. 56:10-7.4(j).**

As noted, under the MBEP, Mazda dealers qualify for discounts or bonuses off the MSRP of a vehicle if they construct an exclusive Mazda facility. By offering these discounts or bonuses only to exclusive Mazda dealers, Mazda has denied a benefit (a per-vehicle discount or bonus) to those dealers with dualled facilities for the sale of Mazda and other branded vehicles regardless of whether they have sufficient space and volume for more than the Mazda franchise.

The FPA provides that a franchisor violates the FPA if it seeks:

> To impose or attempt to impose any requirement, limitation or regulation on, or interfere or attempt to interfere with, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated, including, but not limited to,

35

> requirements, limitations or regulations as to the line makes of motor vehicles that may be sold or offered for sale at the facility, or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit, as a result of the manner in which the motor vehicle franchisee utilizes his facilities, except that the motor vehicle franchisor may require that the portion of the facilities allocated to or used for the motor vehicle franchise meets the motor vehicle franchisor's reasonable, written space and volume requirements as uniformly applied by the motor vehicle franchisor.  The provisions of this subsection shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid.

N.J.S.A. 56:10-7.4(j).

Here, as explained in the preceding sections, the MBEP provides a per-vehicle discount or bonus to dealers that have exclusive Mazda facilities.  The discount or bonus is not available to dualled dealers even though they may have sufficient facilities for more than one franchise.  Dualled dealers forfeit the entire 4.5% facilities element of the MBEP.

By linking the MBEP discount or bonus to de-dualling a facility with sufficient space and volume for more than one franchise, the MBEP imposes, or attempts to impose, a "requirement, limitation or regulation on, or interfere or attempt to interfere" with a dealer's utilization of its facilities and withholds the benefit of the discount or bonus from any dealer that fails to comply with the de-dualling requirement, all in violation of N.J.S.A. 56:10-7.4(j).

36

Thus, the Court should grant summary judgment in favor of NJ CAR declaring that the MBEP violates <u>N.J.S.A.</u> 56:10-7.4(j).

### D. The Court Should Enter An Injunction Barring Mazda From Implementing MBEP In New Jersey.

Because the implementation of the MBEP in New Jersey violates the FPA, the Court should enjoin Mazda from continuing to implement it in New Jersey under the Declaratory Judgment Act.  Generally, a permanent injunction should issue upon a finding that a plaintiff: "(1) [] has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and the defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction."  <u>Chanel, Inc. v. Matos</u>, 133 <u>F. Supp.</u> 3d 678, 689 (D.N.J. 2015).

In <u>NJ CAR v. DaimlerChrysler Motors Corp.</u>, 107 <u>F. Supp.</u> 2d 495 (D.N.J. 1999), the Court granted NJ CAR's application for a preliminary injunction based on DaimlerChrysler's alleged violation of the FPA.  There, NJ CAR alleged that DaimlerChrysler's threat to impose a per vehicle charge on all of its vehicles sold in New Jersey if any dealers sought an increased compensation rate for warranty parts violated its members' rights under the FPA.  The court found, in pertinent part, that NJ CAR would be "immediately and irreparably harmed without the issuance of a preliminary injunction" because "DaimlerChrysler [was] intimidating

dealers into refraining from exercising their rights under the NJFPA" and because this "loss of the dealers' statutory rights cannot be recovered through a money judgment." Id. at 500.  The court also found that the injunction would not cause DaimlerChrysler to suffer appreciable harm because the injunction would only prevent it from violating the FPA and would not prevent it from recovering additional costs through other, legal means. Id. at 500-01.

Here, NJ CAR Mazda members have suffered, and continue to suffer an irreparable injury by reason of Mazda's violations of the FPA set forth above. Mazda is coercing its dealers into taking actions such as drastic modifications to their facilities in violation of their rights under the FPA.  Furthermore, Mazda dealers in New Jersey that do not succumb to the unlawful requirements of the MBEP are placed at a competitive disadvantage to other dealers, and thereby face the "loss of business and good will, and the threatened loss of the enterprise itself," which "constitute[s] irreparable injury." Beilowitz v. GMC, 233 F. Supp. 2d 631, 644 (D.N.J. 2002).   Monetary damages would be insufficient to compensate for the dealers' loss of their statutory rights and other injuries sustained that could result in the loss of the business itself.  Moreover, monetary relief will not necessarily prevent further violation of the law by Mazda.

In the same vein, the balance of hardships also favors issuing injunctive relief in cases such as the instant one where a permanent injunction "would merely

prohibit [a defendant] from engaging in an activity to which [they] have no legal right." <u>AAMCO Transmissions, Inc. v. Dunlap</u>, 646 <u>Fed</u>. <u>Appx</u>. 182, 184 (3d Cir. 2016). That some dealers may have complied with Mazda's facility demands does not tip the balance of hardships in Mazda's direction. First, that some dealers have complied does not justify Mazda's continued violation of New Jersey law. Mazda is not above the law and may not ignore statutes that were on the books long before Mazda conceived the MBEP. Second, if Mazda wishes to compensate dealers who do undertake facilities modifications, it can do so through programs – such as full or partial reimbursement – that benefit such dealers for their expenditures, not for the sale of vehicles, and that do not punish other dealers. That is, Mazda would not suffer appreciable harm because it can achieve its purpose through legal means other than illegal means: its violations of the FPA. Third, while some dealers may support MBEP because they benefit from it does not justify its continuation as compliance with law is not based on a popularity contest.

Lastly, as detailed above, the FPA's extensive legislative intent and history demonstrate that it is in the public interest to combat franchisor abuses of their franchisees resulting from the disparity in bargaining power in the franchisor-franchisee relationship. <u>See</u> <u>N.J.S.A.</u> 56:10-7.2(c); <u>N.J. Assem. Comm. State.</u>, A.B. 3722, 1/20/2011. As set forth in the Legislative history, the public interest is best served by a "strong and secure franchise system of responsible local

businesses" of sufficient financial strength and geographic distribution to provide capable and convenient sales and warranty and recall service to consumers. The MBEP runs counter to this public interest. Moreover, the public interest is served by requiring corporations to obey New Jersey laws.

## <u>CONCLUSION</u>

For all of the foregoing reasons, plaintiff NJ CAR respectfully requests that the Court grant its motion for summary judgment by declaring that defendant Mazda's MBEP violates the FPA on its face and that it is unlawful for Mazda to implement the MBEP in New Jersey, and by also enjoining Mazda from applying the MBEP in New Jersey.

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff, New Jersey Coalition
of Automobile Retailers, Inc.

By: _/s/ Daniel J. Kluska_
      DANIEL J. KLUSKA

Dated: February 3, 2021

40