## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------X
                               :

NEW JERSEY COALITION OF     :
AUTOMOTIVE RETAILERS,      :          NO. 3:18-cv-14563
INC., a non-profit New Jersey  :
Corporation,                   :     (Document Filed Electronically)
                               :
        Plaintiff,            :
                               :
v.                                :
                               :
MAZDA MOTOR OF AMERICA,  :
INC.,                           :
                               :
        Defendant.        :
-----------------------------------------------X

---

## REPLY BRIEF ON BEHALF OF PLAINTIFF NEW JERSEY COALITION OF AUTOMOTIVE RETAILERS, INC. IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, P.O. Box 10
Woodbridge, New Jersey 07095
Attorneys for Plaintiff, New Jersey Coalition
of Automotive Retailers, Inc.

DANIEL J. KLUSKA, ESQ.
    Of Counsel and On the Brief

SAMANTHA J. STILLO, ESQ.
    On the Brief

#12099624.1(011028.097)

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL ARGUMENT ............................................................................................... 1

A. NJ CAR Has Standing To Demonstrate A Case Of Actual
Controversy Within The Court's Jurisdiction Under The
Declaratory Judgment Act. ..................................................................... 1

B. NJ CAR's Members Have Suffered A Concrete Injury In Fact By
Virtue Of The MBEP's Violations Of The FPA. .................................... 3

C. The Discounts Offered To Mazda Dealers Under The MBEP
Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-
7.4(h). ...................................................................................................... 6

D. The MBEP Distinctions Violate N.J.S.A. 56:10-7.4(j). ......................... 8

E. Without Evidence That The Costs Incurred To Build Exclusive
Facilities Are Financially Justified, The MBEP Attempts to
Coerce Dealers To Build Facilities In Violation Of N.J.S.A.
56:10-7.4(l). .......................................................................................... 11

F. Mazda's Proclaimed Statutory Defense Is Not Applicable. ................. 14

G. No Discovery is Necessary To Decide This Motion. ............................ 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Alston v. Countrywide Fin. Corp.,
  585 F.3d 753 (3d Cir. 2009) ................................................................. 3

Havens Realty Corp. v. Coleman,
  455 U.S. 363 (1982) .............................................................................. 4

Horn v. Mazda Motor of Am.,
  265 N.J. Super. 47 (App. Div. 1993) .................................................... 2

In re Horizon Healthcare Servs. Inc. Data Breach Litig.,
  846 F.3d 625 (3d Cir. 2017) ................................................................. 4

Liberty Lincoln-Mercury v. Ford Motor Co.,
  134 F.3d 557 (3d Cir. 1998) ................................................................. 8

NJ CAR v. Mazda Motor of Am., Inc.,
  957 F.3d 390 (3d Cir. 2020) ................................................................. 1

Tynan v. GMC,
  248 N.J. Super. 654 (App. Div. 1991), rev'd in part, 127 N.J. 269 (1992) .......... 2

Warth v. Seldin,
  422 U.S. 490 (1975) .............................................................................. 3

**Statutes**

28 U.S.C. §2201(a) .................................................................................. 14

28 U.S.C. §2202 ...................................................................................... 14

N.J.S.A. 56:10-10 .................................................................................... 14

N.J.S.A. 56:10-13 .................................................................................... 6

N.J.S.A. 56:10-3(c) .................................................................................. 6

N.J.S.A. 56:10-3(d) .................................................................................. 6

N.J.S.A. 56:10-7.4(h) ........................................................................... 6, 7, 8

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

N.J.S.A. 56:10-7.4(j) .......................................................................... passim

N.J.S.A. 56:10-7.4(l) .................................................................. 11, 12, 13

N.J.S.A. 56:10-9 .......................................................................................... 14

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("NJ CAR")
submits this reply brief in further support of its motion for summary judgment.
There are no questions of material fact to be resolved in this matter and no need for
discovery that would prevent the Court from entering summary judgment in favor
of NJ CAR. All that is required is to review the Mazda Brand Experience Program
2.0 ("MBEP") along with the relevant provisions of the New Jersey Franchise
Practices Act ("FPA"), and to determine, relying only on indisputable facts,
whether, as a matter of law, the MBEP complies with or violates the FPA.

## LEGAL ARGUMENT

### A.     NJ CAR Has Standing To Demonstrate A Case Of Actual Controversy Within The Court's Jurisdiction Under The Declaratory Judgment Act.

Mazda argues, as it did in its second motion to dismiss, that NJ CAR lacks
associational and statutory standing to seek a declaratory judgment that the MBEP
violates the FPA, and that Mazda's implementation of the MBEP is thus unlawful.

The parties have previously briefed the associational standing issue to the
Court and Court of Appeals (see Docket Entry No. 38). In short, the Court of
Appeals held that NJ CAR has associational standing to bring this action. NJ CAR
v. Mazda Motor of Am., Inc., 957 F.3d 390, 394 n.3 (3d Cir. 2020).

As to constitutional standing, Mazda attempts to bolster its prior arguments
by referencing two Appellate Division decisions. These cases, however, should

not impact the Court's analysis of this issue.  In Tynan v. GMC, 248 N.J. Super. 654 (App. Div. 1991), rev'd in part, 127 N.J. 269 (1992), the plaintiff was a person who contracted to purchase a franchise, but never became a franchisee because the franchisor did not approve the sale.  The court ruled that the plaintiff, "a rejected prospective transferee," was "not a 'franchisee' protected by the Act," and thus could not assert the statutory cause of action created in favor of "franchisees."  Id. at 660.  The court explained that the FPA was enacted to define the relationship between franchisors and franchisees as opposed to "hopeful third parties," and protect existing franchisees from harm suffered due to their unequal bargaining positions.  Id. at 662, 664.  The court's decision had nothing to do with an organization with associational standing seeking declaratory relief on behalf of its members – actual franchisees, not rejected prospective franchisees.

As in Tynan, in Horn v. Mazda Motor of Am., 265 N.J. Super. 47 (App. Div. 1993), the plaintiffs contracted to purchase a Mazda dealership, but Mazda ultimately did not approve the sale.  In this context, the court cited Tynan in ruling that plaintiffs were not franchisees who could invoke the FPA protections.  This decision likewise was issued under wholly different circumstances.

As set forth in detail in its opposition to Mazda's motion to dismiss, NJ CAR is an "interested party" authorized to seek relief on behalf of its members under the Declaratory Judgment Act.  It has associational standing to pursue claims

2

on behalf of its members, all of which qualify as "franchisees" who are permitted to bring actions under the FPA for violations of that statute. As such a party bringing this lawsuit not to seek any relief for itself but rather solely for its members, it has standing to file a lawsuit alleging violations of the FPA. NJ CAR is not merely some "hopeful third party" that may possibly become interested in the franchisee-franchisor relationship; its very purpose is to advocate for, serve and protect the interests of the dealer members which the FPA was enacted to protect.

The Court thus has jurisdiction to grant NJ CAR relief under the Declaratory Judgment Act for Mazda's violations of the FPA.

### B.    NJ CAR's Members Have Suffered A Concrete Injury In Fact By Virtue Of The MBEP's Violations Of The FPA.

Mazda contends that NJ CAR has failed to prove that any of its members suffered an actual, concrete injury. Because Mazda has invaded the legal rights of NJ CAR's members under the FPA, NJ CAR has made this requisite showing.

Mazda glosses over well-settled law referenced by NJ CAR stating that the violation of statutory rights in and of itself conveys standing. "A plaintiff need not demonstrate that he or she suffered actual monetary damages, because 'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009); Warth v. Seldin, 422 U.S. 490, 500 (1975). "That the violation of a statute can cause an injury in fact

3

and grant Article III standing is not a new doctrine." In re Horizon Healthcare
Servs. Inc. Data Breach Litig., 846 F.3d 625, 635 (3d Cir. 2017).

    In Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), the Supreme
Court held that a plaintiff had standing based on the violation of her rights under
the Fair Housing Act ("FHA"). The Court determined that the FHA section that
"establishes an enforceable right to truthful information concerning the availability
of housing" is "such an enactment" that creates legal rights, the invasion of which
creates standing. Id. at 373. The Court thus held that someone "who has been the
object of a misrepresentation made unlawful under [that FHA section] has suffered
injury in precisely the form the statute was intended to guard against, and therefore
has standing to maintain a claim for damages under the Act's provisions." Id. at
373-74. The Court found that a plaintiff who alleged injury to her statutorily
created right to truthful information suffered a "specific injury" that satisfied the
injury-in-fact requirement. Id. at 374; see also In re Horizon Healthcare, 846 F.3d
at 640-41 (vacating court's dismissal for lack of standing based on finding that the
alleged unauthorized dissemination of the plaintiffs' private information, the very
injury the Fair Credit Reporting Act is intended to prevent, gave rise to a
cognizable, *de facto* injury that satisfies the concreteness requirement).

    NJ CAR likewise has standing to sue based on Mazda's violation of NJ
CAR's members' legal rights under the FPA. There is no dispute that the MBEP's

#12099624.1(011028.097)

terms and conditions apply to all Mazda dealer members of NJ CAR. By its very terms, the MBEP applies to all full service dealers located in 46 states, including New Jersey. Mazda began implementing the MBEP more than two years ago in July 2018, presently implements it and has represented that it will continue to implement it into 2023. Mazda has also represented that all of the 16 dealers in New Jersey are currently receiving varying levels of payments under the MBEP, and the number of dealers receiving payments and levels of those payments has changed during the past two and a half years.[1] Mazda's provision of per-vehicle discounts to Mazda dealers based strictly on their achievement of certain criteria, and its denial of benefits to dealers that have not provided or constructed particular facilities, are the very injuries that the FPA is intended to guard against and prevent. The MBEP has thereby deprived and continues to deprive NJ CAR's members of their legally protected rights under the FPA, a deprivation that gives rise to a concrete injury that satisfies the Article III requirements.[2]

---

[1] The apparently-growing number of dealers who have subsequently decided to modify their facilities further reveals the coercive nature of the MBEP and the competitive imbalance promoted by the MBEP, exactly what the Legislature enacted the FPA to prevent and what the Court of Appeals expressed concern about. But the Court need not address this point because the fact remains that all dealers' FPA rights were violated by the MBEP.

[2] Even if all dealers eventually qualified for the full MBEP discounts, their receipt of discounts from an illegal program does not make the program any less illegal. At the very least, it should not preclude the Court from declaring that the MBEP is unlawful in violation of the FPA.

5

C.   **The Discounts Offered To Mazda Dealers Under The MBEP Create Vehicle Price Differentials In Violation Of N.J.S.A. 56:10-7.4(h).**

N.J.S.A. 56:10-7.4(h) plainly provides that it is a violation of the FPA for a "motor vehicle franchisor" "to fail . . . to sell . . . motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus . . . ." There can be no dispute as to the following pertinent facts:

- Mazda is a "motor vehicle franchisor."  N.J.S.A. 56:10-3(c) & 56:10-13;

- Mazda sells "motor vehicles" to its "motor vehicle franchisees" in New Jersey. N.J.S.A. 56:10-3(d) & 56:10-13;

- Under the MBEP, Mazda dealers in New Jersey earn a discount or bonus payment from Mazda ranging from 0% to 6.5% of the MSRP of each vehicle they sell based on the dealer's level of compliance with Mazda's criteria for the bonus or discount.  See Complaint, Exh. A; Declaration of Kyle Kaczmarek dated Nov. 8, 2018, Exh. B (Dkt. 7-1); and

- Mazda makes no claim that every dealer in New Jersey has and always will receive the exact same MBEP bonus or discount as every other dealer; the Declarations submitted by Mazda make clear that dealers are not getting varying levels of the discount over the past few years.  (See Dkt. 7-1, 18 & 51-2).

Thus, based on these indisputable facts, the MBEP violates N.J.S.A. 56:10-7.4(h).

Mazda contends that the MBEP is a permissible incentive program; this FPA provision does not explicitly prohibit "incentives," and its "incentives" differ from prohibited "discounts" or "bonuses."  The FPA's mandate is clear: manufacturers must sell vehicles to their dealers at the same price; if the manufacturer elects to

6

sell them at a reduced price, it must sell them to all dealers at the same reduced price. Regardless of the description used for the MBEP, a payment made to a dealer on a per-vehicle basis provides a "discount, allowance, credit or bonus" that creates a "difference in price." That is, qualifying dealers under the MBEP receive "a deduction from the usual price of something" – a "discount," or stated slightly differently, they receive "a payment beyond the normal payment expectations of its recipients" – a "bonus." Mazda's choice of words is not dispositive.[3]

Mazda also contends that NJ CAR interprets N.J.S.A. 56:10-7.4(h) in such a manner that it would bar all manufacturer incentive programs and prevent them from fostering price competition that reduces the retail prices of vehicles. Mazda misconstrues NJ CAR's position and the FPA's language. This FPA provision does not ban all incentive programs, and does not even place a blanket ban on the use of per-vehicle discounts or bonuses offered to dealers. Subsection (h) specifically relates to prices of vehicles and mandates that such prices cannot differ from dealer to dealer to advance the FPA's purpose of promoting fair competition. Mazda remains free to either provide the same discount to all dealers, or provide incentives to dealers that do not alter its sale price of vehicles to dealers to foster competition and reduce retail prices with which it is purportedly concerned.

[3] That a different subsection of the FPA prohibits "incentives" in connection with a manufacturer's allocation of vehicles or evaluation of a dealer's performance has no bearing on the "discount" or "bonus" being paid by Mazda to dealers in connection with its sale of vehicles in violation of the subsection at issue.

Mazda's argument that the MBEP does not violate N.J.S.A. 56:10-7.4(h) because every dealer has the same opportunity to receive the full MBEP discount or bonus so that it is "offering" to sell its vehicles to all dealers at the "same price" is an incorrect interpretation of N.J.S.A. 56:10-7.4(h). The mandate of N.J.S.A. 56:10-7.4(h) is that the franchisor not "fail or refuse to sell *or* offer to sell," not just "offer to sell," all comparably equipped vehicles to all dealers "at the same price . . . with no differential in discount, allowance, credit or bonus." Under the MBEP, vehicles are being sold to dealers with differentials in discount or bonus. This violates the express language and clear terms of N.J.S.A. 56:10-7.4(h). That Mazda "offers" the MBEP to all dealers is not sufficient to avoid the violation.

Likewise, the Court should not insert a functional availability defense into the FPA. It not only contradicts the express language of subsection (h) emphasized above containing multiple prohibitions, but also would require the Court to shun its duty to interpret this remedial statute expansively in favor of dealers. E.g., Liberty Lincoln-Mercury v. Ford Motor Co., 134 F.3d 557, 563 (3d Cir. 1998).

Accordingly, the MBEP violates N.J.S.A. 56:10-7.4(h), which in and of itself warrants the entry of summary judgment in favor of NJ CAR.

### D.      The MBEP Distinctions Violate N.J.S.A. 56:10-7.4(j).

N.J.S.A. 56:10-7.4(j) prohibits "motor vehicle franchisors" from "impos[ing] *or attempting to impose* any requirement, limitation or regulation on,

8

*or interfere or attempt to interfere with*, the manner in which a motor vehicle franchisee utilizes the facilities at which a motor vehicle franchise is operated . . . *or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit*, as a result of the manner in which the motor vehicle franchisee utilizes his facilities."

On its face, the MBEP denies dualled dealers (dealers with more than just the Mazda franchise) the entire 4.5% facilities discount. Mazda does not and cannot dispute that some dealers were dualled dealers at least when the MBEP was first implemented. While Mazda can require dealers to provide facilities sufficient to meet its "uniformly applied" "reasonable" requirements, the MBEP imposes a blanket penalty or loss of benefit on dualled dealers that is not limited to dualled dealers with insufficient facilities. Thus, the MBEP violates N.J.S.A. 56:10-7.4(j) by "penalizing" and denying a "benefit" to dualled dealers based on the manner in which they use their facilities. That penalty and denied benefit also amounts to a prohibited "attempt to interfere" with the manner in which dealers use their facilities by pressuring them (pressure apparently successful in some instances) to de-dual so that they can earn the facilities discount.

Beyond the dualled dealers, the MBEP distinguishes between Retail Evolution ("RE") dealers and exclusive showroom dealers, based on the manner in which such dealers use their facilities, the full benefit of the facilities discount

9

being denied to exclusive showroom dealers.  In this respect, the MBEP violates N.J.S.A. 56:10-7.4(j) by imposing a "penalty" on or denying a "benefit" to exclusive showroom dealers and by "attempting to interfere" with the manner in which they use their facilities by pressuring them to become RE dealers.

Mazda contends that it is not impermissibly imposing any facility requirement, but rather is merely only offering the MBEP payments to dealers who voluntarily agree to provide qualifying facilities.  As made clear above, however, Mazda's interpretation of N.J.S.A. 56:10-7.4(j) improperly cherry picks the prohibition on "imposing" a facility requirement and disregards the numerous other prohibitions in this section.  This section does not only bar the imposition of facility requirements; it also bars any attempt to impose such requirements, interference or attempts to interfere with how a dealer operates a facility, and imposition of a penalty, denial of a benefit or threat to deny a benefit in connection with the operation of a facility.  The MBEP violates many of these proscriptions.

Moreover, Mazda contends that a dealer can voluntarily agree to a facilities requirement for separate and valuable consideration.  The MBEP is not a voluntary agreement between Mazda and an individual dealer; it has been unilaterally applied to *all* Mazda dealers who must achieve its criteria absent any voluntary agreement or face the loss of a benefit given to others.  The MBEP does not comport with what a voluntary agreement is, and thus does not fall within this exception.

Lastly, Mazda's concern that a franchisor would never be able to agree to facilities requirements with a dealer under NJ CAR's interpretation of <u>N.J.S.A.</u> 56:10-7.4(j) is misguided and unfounded.  An example of a permissible agreement would be an offer by a franchisor to reimburse a particular dealer for the cost of, for example, de-dualling a dealership, which the dealer can voluntarily accept, and receive the offered consideration, or reject and not be subject to a penalty for so doing.  There, the franchisor has not imposed any requirement or attempted to interfere with the dealer's facilities, and has not denied a benefit to that dealer or any other dealer.  Such an example, however, is a far cry from a program such as the MBEP where *all* Mazda dealers either comply or are penalized.

Accordingly, this Court should grant summary judgment in favor of NJ CAR finding the MBEP in violation of <u>N.J.S.A.</u> 56:10-7.4(j).

E.    **Without Evidence That The Costs Incurred To Build Exclusive Facilities Are Financially Justified, The MBEP Attempts to Coerce Dealers To Build Facilities In Violation Of N.J.S.A. 56:10-7.4(l).**

<u>N.J.S.A.</u> 56:10-7.4(l) prohibits a "motor vehicle franchisor" "to require *or attempt to require* a motor vehicle franchisee to relocate or implement any facility or operational modifications *or to take or withhold or threaten to take or withhold any action, impose or threaten to impose any penalty, or deny or threaten to deny any benefit* as a result of the failure or refusal of such motor vehicle franchisee to agree to any such relocation or modification *unless the motor vehicle franchisor*

11

*can demonstrate*," among other things, that the franchisee "will be able . . . to *earn a reasonable return on* his total investment in such facility or from such operational modification, and the *full return* of his total investment in such facility or operational modification within 10 years."

To obtain the full facilities discount, a dealer must have an exclusive facility with all RE elements and have a dedicated Mazda General Manager.   Mazda acknowledges that, two and a half years after the MBEP was implemented, there are still three dealers that do not meet these requirements, and thus some dealers are presently being "penalized" and denied a "benefit" because they have failed or refused to make facilities and operational modifications.   Moreover, the dealers who have submitted to Mazda's coercion to modify their facilities establishes that those dealers did not, and in some cases still do not have, facilities entitling them to the full discount even though the MBEP has now been in effect for years.

Similar to its strained interpretation of N.J.S.A. 56:10-7.4(j), Mazda focuses on the term "require" in N.J.S.A. 56:10-7.4(l), but fails to consider that the statute's language is much broader than this lone prohibition.   Subsection (l) also prohibits attempts to impose requirements, penalties, attempts to impose penalties, denials of benefits and attempts to deny benefits relating to a dealer's refusal to modify a facility.   The MBEP, at the very least, penalizes and denies benefits to dealers who do not comply with its provisions.

Mazda's only possible defense to the MBEP's violation of N.J.S.A. 56:10-7.4(l) would be that it demonstrated that an affected dealer will be able to "earn a reasonable return on his total investment" and the "full return of his total investment in such facility or from such operational modifications within 10 years." The burden of so demonstrating is on *Mazda* and logically such demonstration must occur at the time the attempt to require the modification is made, and before any penalty is imposed or benefit is denied. Mazda has now been implementing the MBEP for two and a half years, and has penalized and denied benefits to dealers that have not had the required facilities and dedicated General Manager. Yet, Mazda has produced no evidence that it has *ever* performed or undertaken any analysis at all to determine whether the MBEP's facility modifications are financially justified for any of, let alone all of, its affected dealers in New Jersey.[4] Mazda previously conceded that it did not provide certain dealers with any justification for making modifications necessary to qualify for any portion of the brand commitment element discount, as it believes it has no obligation to do so. Mazda's Response to Plaintiff's Statement of Undisputed Material Facts, ¶¶ 57, 64 (Dkt. 25-1).

Consequently, Mazda's implementation of the MBEP also violates N.J.S.A. 56:10-7.4(l) and summary judgment in favor of NJ CAR should be granted.

---

[4] If they existed, any documents so demonstrating would be within Mazda's possession so discovery is not needed for Mazda to obtain them.

13

## F.     Mazda's Proclaimed Statutory Defense Is Not Applicable.

Mazda's contention that it might have a defense against an individual lawsuit by a dealer that is deficient in some aspect of the dealer's operations under N.J.S.A. 56:10-9 is simply not relevant.  First, this is not a lawsuit "brought under" the FPA to which N.J.S.A. 56:10-9 applies, namely, as Mazda argues, N.J.S.A. 56:10-10.  NJ CAR has filed a declaratory judgment action and seeks relief under 28 U.S.C. §2201(a) and 2202.

Second, this is not an action by an individual dealer in which that dealer seeks monetary relief against Mazda.  Rather, it is a collective action brought on behalf of all dealers and to uphold New Jersey law.  Certainly, Mazda is not contending that every single one of its dealers in New Jersey has failed to substantially comply with its requirements and agreements.

Even if the Court disagrees, this defense should at least not be applicable to the declaratory relief that NJ CAR seeks.  The Court's recognition of the illegal nature of the MBEP should not go undeclared simply because NJ CAR members may not be in compliance with their franchise agreements.

## G.     No Discovery is Necessary To Decide This Motion.

There are no genuine issues of material fact relevant to this summary judgment motion.  It simply does not matter whether a dealer could make the facilities or operational modifications necessary to receive the full facilities

14

discount or bonus, or how much such dealer would have to spend, whether dealers have lost out on the opportunity to make sales, whether the MBEP discount or bonus is actually being used for price competition, what percentage of dealers have gotten what portion of the facilities or customer experience bonus thus far or whether some dealers are more or less satisfied with the discount or bonus they are receiving or do not wish to rock the boat with their franchisor – their source of vehicle, parts and accessory supply – by challenging the MBEP. Not one of these issues relates to whether the MBEP violates the FPA on its face. Based on everything cited in NJ CAR's moving papers and above, only a side-by-side comparison of the FPA provisions to the language of the MBEP, and a few indisputable facts, is necessary to determine that the FPA has been violated and that NJ CAR is entitled to the relief sought herein.

## CONCLUSION

For all of the foregoing reasons, plaintiff NJ CAR respectfully requests that the Court grant its motion for summary judgment.

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff, New Jersey Coalition
of Automobile Retailers, Inc.

By: _/s/ Daniel J. Kluska_
      DANIEL J. KLUSKA

Dated: March 8, 2021

15

#12099624.1(011028.097)