# UNITED DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

NEW JERSEY COALITION OF
AUTOMOTIVE RETAILERS, INC.,

        Plaintiff,

        v.

MAZDA MOTOR OF AMERICA, INC.,

        Defendant.

**Case No. 3:18-cv-14563-ZNQ-TJB**

Motion Day: September 7, 2021

## <u>DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

Stephen A. Loney, Jr. (N.J. No.
005172006)
Jessica Jacobs (N.J. No. 038002011)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
stephen.loney@hoganlovells.com
jessica.jacobs@hoganlovells.com

John J. Sullivan
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant Mazda Motor of America, Inc.,
d/b/a Mazda North American Operations*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................5

      A.     The Parties ..........................................................................................5

      B.     The Mazda Brand Experience Program ..............................................5

      C.     Current RE/MBEP Status of NJ Mazda Dealers ................................8

      D.     NJ CAR's Claims ...............................................................................9

ARGUMENT .................................................................................................................9

      I.      There Is No Subject-Matter Jurisdiction Because Individual Participation By Association Members Will Be Required....................9

      II.     NJ CAR Cannot State A Claim Under The NJFPA.............................15

CONCLUSION..............................................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ................................................................................9

*Brentlinger Enterprises v. Volvo Cars of North America, LLC*,
  2016 WL 4480343 (S.D. Ohio Aug. 25, 2016).............................................. 13, 14

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*,
  119 F. App'x 419 (3d Cir. 2005) ......................................................................18

*Constitution Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ...............................................................................5

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938) ...................................................................................... 17, 18

*Free Speech Coalition, Inc. v. Attorney Gen. United States*,
  787 F.3d 142 (3d Cir. 2015) .............................................................................10

*Graden v. Conext Systems Inc.*,
  496 F.3d 291 (3d Cir. 2007) ................................................................. 15, 16, 18

*Horn v. Mazda Motor of America*,
  265 N.J. Super. 47, 625 A.2d 548 (App. Div. 1993), *cert. denied,* 134 N.J.
  483, 634 A.2d 522 (1993)........................................................................ 2, 4, 17

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ...................................................................1, 2, 4, 10, 15, 18

*Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*,
  232 F.Supp.3d 813 (E.D. Va. 2017)..................................................................13

*Leyse v. Bank of Am. Nat'l Assoc.*,
  804 F.3d 316 (3d Cir. 2015) .............................................................................15

*Mall Chevrolet, Inc. v. General Motors LLC*,
  No. 1:18-cv-15077-JRP-KMW, 2021 WL 2581665 (D.N.J June 23, 2021)........................18

*New Jersey Coalition of Automotive Retailers, Inc. v. Mazda Motor of America,
  Inc.*, 957 F.3d 390 (3d Cir. 2020)............................................................................2

*New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*,
  107 F. Supp. 2d 495 (D.N.J. 1999) ......................................................... 14, 15, 18

\\NY - 029020/000018 - 10341289 v12

*Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002) ...............................................................10

*Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*,
    123 F.3d 111 (3d Cir. 1997) .................................................................9

*Robinson v. Jiffy Executive Limousine Co.*,
    4 F.3d 237 (3d Cir. 1993) ...................................................................17

*State v. Butler*,
    89 N.J. 220 (1982)..............................................................................18

*Storino v. Borough of Point Pleasant Beach*,
    322 F.3d 293 (3d Cir. 2003) .................................................................9

*Tynan v. General Motors Corp.*,
    248 N.J. Super. 654, 591 A.2d 1024 (App. Div. 1991), *modified on other*
    *grounds*, 197 N.J. 269, 604 A.2d 99 (1992) ...................................4, 17

*United States v. Warren*,
    338 F.3d 258 (3d Cir. 2003) .................................................................2

**Statutes**

28 U.S.C. § 2201 .......................................................................................3

28 U.S.C. § 2202 .......................................................................................3

Del. Code Ann. tit. 6, § 4916(a) ...............................................................19

Ga. Code Ann. § 10-1-623(e) ...................................................................20

N.C. Gen. Stat. § 20-308.1(d).....................................................................20

N.J.S.A. 56:10-3(a) ...................................................................................17

N.J.S.A. 56:10-3(c)-(d) .............................................................................16

N.J.S.A. 56:10-7.4(h)................................................................9, 10, 12, 13, 14

N.J.S.A. 56:10-7.4(j) .......................................................................9, 10, 11

N.J.S.A. 56:10-7.4(l) ...................................................................9, 10, 11, 12

N.J.S.A. 56:10-9.........................................................................................18

N.J.S.A. 56:10-10 .......................................................................2, 4, 16, 17

N.Y. Veh. & Traf. Law § 469.....................................................................19

iii

Pa. Stat. Ann. tit. 63, § 818.329 ................................................................................. 19

W. Va. Code § 17A-6A-16(4) ................................................................................... 20

Wash. Rev. Code § 49.96.260 ................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 5, 9, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 4, 5, 15

iv

Defendant Mazda Motor of America, Inc., d/b/a Mazda North American Operations ("**Mazda**") respectfully submits this brief in support of its motion to dismiss the Amended Complaint (1) pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction; or (2) pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff New Jersey Coalition of Automotive Retailers, Inc. ("**NJ CAR**") alleges that a Mazda incentive program violates three provisions of the New Jersey Franchise Practices Act (the "**NJFPA**").  See Am. Compl., ¶ 33, 37, 42 (Doc. 57). This is Mazda's third motion to dismiss this action.

In an Opinion dated July 30, 2019, the Court granted Mazda's first motion to dismiss for lack of subject-matter jurisdiction on the ground that there was no constitutional "case or controversy" under the three-part test for associational standing established in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("***Hunt***").  Doc. 27.  The Court found that NJ CAR satisfied the first *Hunt* "prong" – i.e., that at least one member of NJ CAR had individual standing – but did not satisfy the second prong ("germaneness") because of conflicts of interest between NJ CAR members.  Doc. 27 at 10, 15.  In light of this conclusion, the Court found it unnecessary to determine whether NJ CAR satisfied the third *Hunt* prong, i.e., that "neither the claim asserted nor the relief requested requires the participation

1

of individual [association] members in the lawsuit," *Hunt*, 432 U.S. at 343.  See Doc. 27 at 16.

On April 28, 2020, the Third Circuit reversed, disagreeing with this Court's finding that NJ CAR did not satisfy the "germaneness" prong.  *New Jersey Coalition of Automotive Retailers, Inc. v. Mazda Motor of America, Inc.*, 957 F.3d 390, 393-94 (3d Cir. 2020).  Like this Court, the Third Circuit did not reach the question whether NJ CAR satisfied the third prong of *Hunt*.[1]  In addition, the Third Circuit stated that "our opinion should not be understood as implying that the complaint sufficiently has stated a valid claim under the NJFPA" and that "[o]n remand, the District Court is free to consider any other arguments for dismissal that Mazda advances."  *Id.* at 394 n. 3.

Following remand, Mazda filed a second motion to dismiss (Doc. 36) for (1) lack of subject-matter jurisdiction, on the ground that NJ CAR cannot satisfy the third prong of *Hunt*, and (2) failure to state a claim upon which relief can be granted, on the ground that under the plain terms of the NJFPA only a "franchisee" can sue its own "franchisor" for a statutory violation.  N.J.S.A. 56:10-10; *Horn v. Mazda*

---

[1] An association must satisfy all three prongs of the *Hunt* test in order to establish that the Court has subject-matter jurisdiction.  Doc. 27 at 16.  Thus, the Third Circuit's opinion did not finally resolve the question of subject-matter jurisdiction, notwithstanding any dictum in the opinion that might suggest otherwise. *See United States v. Warren,* 338 F.3d 258, 265 (3d Cir. 2003) ("Simply labeling a statement in an opinion as a "holding" does not necessarily make it so.").

\\NY - 029020/000018 - 10341289 v12

*Motor of America*, 265 N.J. Super. 47, 61, 625 A.2d 548 (App. Div. 1993) ("plaintiffs who are not franchisees do not have standing to invoke the protection of the New Jersey Franchise Practices Act."), *cert. denied,* 134 N.J. 483, 634 A.2d 522 (1993), *citing Tynan v. General Motors Corp.*, 248 N.J. Super. 654, 591 A.2d 1024 (App. Div. 1991), *modified on other grounds*, 197 N.J. 269, 604 A.2d 99 (1992).

NJ CAR responded to the latter argument by contending that "this is not a lawsuit 'brought under' the [NJ]FPA" but instead "a declaratory judgment action" seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. Doc. 53 at 58. Taking NJ CAR at its word, the Court dismissed its Complaint without prejudice, *sua sponte*, ruling that the Complaint was "not properly pleaded" because declaratory and injunctive relief are remedies, not causes of action. Doc. 54 at 5-6.[2] In light of this ruling, the Court also denied Mazda's motion to dismiss, and NJ CAR's pre-answer motion for summary judgment, as moot. *Id*. at 6.

NJ CAR has now filed an Amended Complaint clarifying that its claims are brought under the NJFPA. ECF No. 57, ¶¶ 30-42. Thus, NJ CAR can no longer try to defend its lack of statutory standing by invoking the Declaratory Judgment Act.

---

[2] Mazda did not ask the Court to dismiss the case on this precise ground. Instead, Mazda argued that because the Declaratory Judgment Act merely creates a remedy, the Court should reject NJ CAR's characterization of its claims. See Doc. 37 at 23-24.

\\NY - 029020/000018 - 10341289 v12

First, however, the case should be dismissed for lack of subject-matter jurisdiction because NJ CAR cannot show that "neither the claim asserted nor the relief requested requires the participation of individual [association] members in the lawsuit." *Hunt*, 432 U.S. at 343.  As shown below, determining whether the MBEP violates any of the three provisions of the NJFPA invoked by NJ CAR requires an analysis of the facts relating to individual Mazda dealers, and hence their participation in this lawsuit.

If there is subject-matter jurisdiction, then the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) on the ground that the NJFPA limits statutory standing to a franchisee suing its own franchisor.  The statute very specifically provides that a "franchisee may sue *its* franchisor for violation of this act . . . ."  N.J.S.A. 56:10-10 (emphasis added).  The New Jersey courts have confirmed that this language means exactly what it says.  *Horn,* 265 N.J. Super. at 61, 625 A.2d at 556 (proposed purchaser of franchise does not have  standing to sue for franchisor's violation of NJFPA in disapproving sale); *Tynan v. General Motors Corp.*, 248 N.J. Super. at 666, 591 A.2d at 1031 (same).  NJ CAR is not a franchisee, and Mazda is not its franchisor.  Accordingly, NJ CAR cannot bring a claim against Mazda under the NJFPA.

4

## STATEMENT OF FACTS

On a motion to dismiss for lack of subject-matter jurisdiction, the Court "may look beyond the pleadings." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  In support of its Rule 12(b)(1) motion, Mazda is submitting the Declaration of Kyle Kaczmarek, dated August 9, 2021 ("**Kaczmarek Decl.**"), to illustrate why individual Mazda dealers will need to participate in this case.  In support of its Rule 12(b)(6) motion, Mazda is not relying on any facts outside the pleadings, as the only relevant fact is that NJ CAR does not allege that it is a "franchisee" or that Mazda is its "franchisor."

### A.    The Parties

Mazda is the exclusive U.S. distributor of new Mazda motor vehicles. Kaczmarek Decl. ¶ 2.  Mazda distributes Mazda vehicles to franchised dealers who have entered into a contractual relationship with Mazda.  *Id.* ¶¶ 3-4.  There are sixteen (16) franchised Mazda dealers located in New Jersey.  Am. Compl. ¶ 5.

NJ CAR is a trade association whose members are franchised new motor vehicle dealers in New Jersey, including 16 Mazda dealers.  *Id.* ¶¶ 1, 5.

### B.    The Mazda Brand Experience Program

Mazda operates a "Mazda Brand Experience Program" ("**MBEP**"), pursuant to which eligible franchised Mazda dealers can earn payments from Mazda for each eligible retail sale of a new Mazda vehicle by meeting certain criteria.  The criteria include maintaining certain types of facilities.   Two of the three statutory

\\NY - 029020/000018 - 10341289 v12

prohibitions invoked by NJ CAR regulate facility requirements, but call for an evaluation of the facts relating to the individual franchisee, such as whether the franchisee has voluntarily agreed to the requirements, whether the franchisor has provided the franchisee with adequate consideration, and whether the franchisee can make a return on its investment.  See pp. 11-12 infra.

The MBEP became effective on July 3, 2018.  Am. Compl. ¶ 21 and Ex. A thereto (Doc. 57 at 17).  Attached to the Complaint is a "Quick Start Guide" providing an "overview" of the MBEP.  Am. Compl. ¶ 21 and Ex. A (Doc. 57 at 17).  The Quick Start Guide refers to the MBEP "Terms and Conditions" for the "details" of the program, and states that if "any discrepancy exists between the Quick Start Guide and the Terms and Conditions, the Terms and Conditions shall control." Doc. 57 at 17.  Accordingly, to provide a full and accurate understanding of the program's details, Mazda is submitting a copy of the current Terms and Conditions as Exhibit 2 to the Kaczmarek Declaration.

The Terms and Conditions state that the "MBEP is designed to support those dealers who are engaged and committed to the Mazda brand and consistently provide all customers with an ownership experience that exceeds their expectations." Kaczmarek Decl. Ex. 2, p. 1.  By complying with the program's criteria, a dealer can earn a payment of up to 6.57% of the base Manufacturer's Suggested Retail Price ("MSRP") of each eligible new Mazda vehicle it retails.  Kaczmarek Decl. Ex. 2, p.

7; See Am. Compl. ¶ 23.   The potential payments are made up of various components, each with its own criteria.

The MBEP payments have two "Earnings Elements": (1) "Brand Commitment" (a maximum of 4.5%), and (2) "Customer Experience" (a maximum of 2.07%).   Kaczmarek Decl. ¶ 12 and Ex. 2, p. 7; see Am. Compl. ¶ 24.   To be eligible for either Earning Element, the dealer must first meet certain "Base Qualifiers" relating to facility inspections, training, service scheduling, customer records, and Mazda's courtesy vehicle program.   Kaczmarek Decl. ¶ 13 and Ex. 2, pp. 6, 12-17.

The Brand Commitment Earnings Element is tiered based on facility type. Am. Compl. ¶¶ 26-27; Kaczmarek Decl. Ex. 2, p. 6.   To be eligible to receive the full 4.5%, the dealer must (1) operate from a qualifying "Retail Evolution Dealership"; (2) have a dedicated exclusive Mazda general manager; and (3) make timely submission of its monthly financial statements.   Kaczmarek Decl. ¶ 14 and Ex. 2, pp. 18-19; see Am. Compl. ¶ 26.   "Retail Evolution" is the name of Mazda's facility "image program" (the "**RE Program**").   Kaczmarek Decl. ¶ 6.   To enroll in the RE Program, a dealer signs an   agreement to construct a facility that meets Mazda's brand standards and incorporates certain Mazda brand "image elements," including certain signs and displays.   *Id.* ¶ 7.   For a dealer that has enrolled in the RE Program but has not yet "broken ground" on a new RE facility, Mazda will hold

in "escrow" the "incremental" incentives the dealer would have received if it had qualified as an RE Dealership.  *Id.* ¶ 15.  The escrowed amounts are released to the dealer once the dealer breaks ground on its RE facility.  *Id*.

Non-RE dealers are eligible to receive Brand Commitment payments of 2.8% if they have an "Exclusive" Mazda facility and 1.0% if they have an "Exclusive Showroom" for Mazda.  Kaczmarek Decl. Ex. 2, p. 7; see Am. Compl. ¶ 27.  Mazda dealers with "dualled" facilities (i.e., facilities that include another brand without an exclusive Mazda showroom) are not eligible for Brand Commitment payments.  Am. Compl. ¶ 27.

To be eligible to receive the Customer Experience Earnings Element of up to 2.07%, the dealer must meet certain minimum performance levels related to customer satisfaction.  Kaczmarek Decl. Ex. 2, pp. 19-22; see Am. Compl. ¶ 28.  A Mazda dealer can receive these payments regardless of whether it has an RE facility, an exclusive Mazda facility, an exclusive Mazda showroom or a dualled facility.

## C.   <u>Current RE/MBEP Status of NJ Mazda Dealers</u>

Thirteen (13) of the current 16 New Jersey Mazda dealers have signed RE agreements and qualify for the full 4.5% Brand Commitment payment for each eligible new Mazda vehicle they retail.  There is a pending sale of one of the other three Mazda dealerships, and the prospective purchaser has enrolled in the RE Program.  The other two New Jersey Mazda dealerships have exclusive facilities and

8

so receive 2.8% (rather than 4.5%) Brand Commitment payments.  These two

dealerships, which have common ownership, have elected not to enroll in the RE

Program, but neither has registered any complaint concerning the RE Program or the

MBEP.  See Kaczmarek Decl. ¶¶ 9, 17-18.

### D.   NJ CAR's Claims

NJ CAR seeks (1) a judgment declaring that the MBEP violates subsections

(h), (j) and (l) of N.J.S.A. 56:10-7.4 and (2) an injunction prohibiting Mazda from

implementing the program in New Jersey.  Am. Compl., ¶¶ 30-42.

### ARGUMENT

### I.   THERE IS NO SUBJECT-MATTER JURISDICTION BECAUSE INDIVIDUAL PARTICIPATION BY ASSOCIATION MEMBERS WILL BE REQUIRED

"Standing is a threshold jurisdictional requirement."  *Public Interest Research*

*Grp. of New Jersey, Inc. v. Magnesium Elektron Inc.*, 123 F.3d 111, 117 (3d Cir.

1997).  "[B]ecause standing is a jurisdictional matter," a motion to dismiss for lack

of standing is "properly brought pursuant to Rule 12(b)(1)."  *Ballentine v. United*

*States*, 486 F.3d 806, 810 (3d Cir. 2007).  As the party invoking the Court's

jurisdiction, NJ CAR "bears the burden of proving standing."  *Storino v. Borough of*

*Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).

A trade association may sue to protect the rights of its members only when:

"(a) its members would otherwise have standing to sue in their own right; (b) the

interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  NJ CAR cannot satisfy the third prong of this test because litigation of its claims will require the participation of its individual members who are Mazda dealers.

Mazda acknowledges that the "relief requested" component of the third prong can be satisfied where, as here, the complaint seeks declaratory or injunctive relief instead of damages.  However, the third *Hunt* prong is not "automatically satisfied" whenever an association seeks declaratory or injunctive relief.  *See Free Speech Coalition, Inc. v. Attorney Gen. United States*, 787 F.3d 142, 154 n.6 (3d Cir. 2015). Rather, the court must still "examine the claims asserted to determine whether they require individual participation."  *Id.*  As the Third Circuit has cautioned, "conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry."  *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002).

NJ CAR contends that participation of its Mazda members will not be required because the MBEP, "on its face," allegedly violates subsections (h), (j) and (l) of N.J.S.A. 56:10-7.4.  Am. Compl. ¶¶ 33, 37, 42.  These provisions, however, protect

the rights of individual franchisees, and determining a violation requires a fact-intensive inquiry concerning MBEP's effect on individual franchisees.

Subsections (j) and (l) – on their respective "faces" – refute NJ CAR's argument because each provides Mazda with a defense based on the facts relating to the individual Mazda franchisee. Subsection (j) prohibits Mazda from "imposing" certain facility requirements on a franchisee but states that its provisions "shall not apply if the motor vehicle franchisor and the motor vehicle franchisee voluntarily agree to the requirement and separate and valuable consideration therefor is paid." N.J.S.A. 56:10-7.4(j). Mazda contends that each of the 13 current and one prospective New Jersey RE dealers has voluntarily agreed to the facility requirements and that Mazda has agreed to pay them separate and valuable consideration in the form of the per-vehicle incentives. Accordingly, their individual participation will be required with respect to these factual issues. The participation of the remaining two New Jersey Mazda dealers will be necessary to determine whether they have been harmed in any way by receiving 2.8% rather than 4.5% (while simultaneously saving the costs of participating in the RE Program).

Subsection (l) prohibits a franchisor from requiring a franchisee to make modifications to its facilities, but provides a defense if (in pertinent part) "the motor vehicle franchisor can demonstrate that: (1) funds are generally available to the franchisee for the . . . modification on reasonable terms; and (2) the motor vehicle

11

franchisee will be able, in the ordinary course of business as conducted by such motor vehicle franchisee, to earn a reasonable return on his total investment in such facility or from such operational modification, and the full return of his total investment in such facility or from such operational modifications within 10 years[.]"  N.J.S.A. 56:10-7.4(l).  Mazda intends to assert this defense, which will obviously require a "fact-intensive individual inquiry" with respect to each New Jersey Mazda franchisee.

The remaining provision, subsection (h), prohibits price discrimination by a franchisor in offering to sell vehicles to its franchisees. The Complaint acknowledges that its purpose is to prohibit "price differentials between dealers such that one dealer in New Jersey will have a <u>lower effective cost</u> for a similarly equipped vehicle than another dealer."  Am. Compl. ¶ 11 (emphasis added).  Such differentials are prohibited, the Complaint alleges, because "[t]he higher per vehicle costs incurred by [some] dealerships put them at a disadvantage when competing for customers over price."  *Id.* ¶ 13.

In order to determine whether the MBEP payments cause price differentials that disadvantage dealers who do not earn the full MBEP payments, NJ CAR will need to show that the "per vehicle effective costs" for the dealers who receive MBEP payments are actually lower when the costs they incurred to satisfy the MBEP's criteria are taken into account.  Thus, the subsection (h) claim will also require a

12

"fact-intensive-individual inquiry," as demonstrated by cases from other states having similar price discrimination statutes. *See, e.g., Len Stoler, Inc. v. Volkswagen Grp. of America, Inc.*, 232 F.Supp.3d 813, 827 & n.20 (E.D. Va. 2017) (denying VW dealer's motion for summary judgment where VW presented evidence that incentive payments under VW's program did not reduce the price of vehicles because of "the costs a dealer must incur to satisfy applicable incentive conditions"); *Brentlinger Enterprises v. Volvo Cars of North America, LLC*, 2016 WL 4480343 at *6 (S.D. Ohio Aug. 25, 2016) (granting summary judgment to Volvo and rejecting plaintiff's claim that incentives paid to "exclusive" Volvo dealer put plaintiff at competitive disadvantage because competitor "presumably . . . incurr[ed] the substantial costs" of complying with exclusivity requirement to earn incentives).

In addition, if this case were to move forward, the Court would need to decide whether there is a "functional availability" defense under subsection (h). While the statute does not expressly provide for this defense, the courts have read such a defense into the Robinson-Patman Act (the "RPA"), the federal price discrimination statute, even though that statute also does not expressly provide for such a defense. *See Brentlinger Enterprises*, 2016 WL 2280343 at *4 ("Although not codified in the statute, a 'functional availability' defense to the RPA has emerged from the case law surrounding the RPA."). The reasoning behind the defense is that, if the offered benefit is functionally available to all dealers, "'either no price discrimination has

13

occurred, or . . . the discrimination is not the cause of [plaintiff's] injury.'" *Id*. at *4 (quoting *Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F. 2d 101, 105 (6th Cir. 1981)).   The reasoning that led the federal courts to read this defense into the RPA applies to subsection (h) as well, and if the Court were to rule that the defense is available it would require a fact-intensive-individual inquiry into whether the MBEP payments are functionally available to those Mazda dealers who do not comply with all of the MBEP criteria.

In *New Jersey Coalition of Automotive Retailers v. DaimlerChrysler Motors Corp.*, 107 F. Supp. 2d 495 (D.N.J. 1999) ("***DaimlerChrysler***"), the court found that "the participation of individual dealers [was] not required in [NJ CAR's] action for injunctive relief" against DaimlerChrysler's threat to impose a $400 per vehicle surcharge on all vehicles it sold to its New Jersey dealers if any of them sought increased warranty reimbursement under the NJFPA.  *Id*. at 501 n. 5.   There, NJ CAR alleged that the $400 surcharge, and the threat to impose it, were in and of themselves unlawful.  *Id*. at 498.   Moreover, the imposition of a $400 surcharge on every vehicle would obviously affect all New Jersey DaimlerChrysler dealers in the same way.   Thus, there was no need for individual dealers to participate.   Here, however, the facts relating to individual franchisees are needed to determine whether the MBEP violates their rights under subsections (h), (j), and/or (l).   Accordingly,

14

this case is distinguishable from *DaimlerChrysler* on the need for individual dealer participation.

In sum, NJ CAR cannot satisfy the third prong of *Hunt* and, accordingly, this Court does not have subject-matter jurisdiction.

## II.      NJ CAR CANNOT STATE A CLAIM UNDER THE NJFPA

The *Hunt* test addresses the question of "constitutional" standing: i.e., whether the particular plaintiff has presented a "case or controversy" within the jurisdiction of the federal courts.  But this case also presents the separate question whether the New Jersey Legislature intended to permit anyone other than a franchisee to sue for violations of the NJFPA.

The Third Circuit has explained the differences between constitutional, prudential, and statutory standing, and explained the latter as follows:

> Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury.  To answer the question, we employ the usual tools of statutory interpretation.  We look first at the text of the statute and then, if ambiguous, to other indicia of congressional intent such as the legislative history.

*Graden v. Conextent Systems Inc.*, 496 F.3d 291, 295 (3d Cir. 2007).  "'[A] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,' and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)."  *Leyse v. Bank of Am. Nat'l Assoc.*, 804 F.3d 316, 320 &

n. 3 (3d Cir. 2015) (citation omitted) (disavowing language in *Graden* suggesting that statutory standing involves subject-matter jurisdiction).

Thus, the question presented here is: did the New Jersey Legislature intend to give a trade association such as NJ CAR the right to sue for violations of the NJFPA? The statutory language, binding New Jersey case law, and other indicia of legislative intent make it clear that the answer is "No."

The text of the statute is unambiguous: it provides that "[a]ny franchisee may bring an action against its franchisor for violation of this act . . . to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief." N.J.S.A. 56:10-10.  Significantly, the statute limits the franchisee's right of action to suits against "its franchisor," thus making it clear that a franchisee of other brands (i.e., the vast majority of NJ CAR's members) have no right to sue Mazda on the ground that the MBEP violates the NJFPA.

The act defines a "franchisee" as "a person to whom a franchise is offered or granted," and a "franchisor" as "a person who grants a franchise to another person." N.J.S.A. 56:10-3(c)-(d).  It defines a franchise as "a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale,

\\NY - 029020/000018 - 10341289 v12

retail, by lease, agreement, or otherwise." N.J.S.A. 56:10-3(a). NJ CAR does not allege that it is Mazda's franchisee, and it is undisputed that it is not.

The requirement of statutory standing has been enforced by the New Jersey Appellate Division in lawsuits under the NJFPA. In two separate decisions, the Appellate Division has applied the plain language of N.J.S.A. 56:10-10 and held that, even if a franchisor has violated the NJFPA, only that franchisor's own franchisee can sue for redress of such a violation. *Tynan v. General Motors Corp.*, 248 N.J. Super. 654, 591 A.2d 1024 (App. Div. 1991) (would-be purchaser of franchise cannot sue for franchisor's violation of NJFPA in turning down proposed purchase), *modified on other grounds*, 197 N.J. 269, 604 A.2d 99 (1992); *Horn v. Mazda Motor of America*, 265 N.J. Super. 47, 61, 625 A.2d 548 (App. Div. 1993) (same result even where plaintiff was an existing franchisee of another franchisor under the statute), *cert. denied*, 134 N.J. 483, 634 A.2d 522 (1993).

As the Appellate Division stated New Jersey law in *Horn*: "[P]laintiffs who are not franchisees do not have standing to invoke the protection of the New Jersey Franchise Practices Act." 265 N.J. Super. at 61. NJ CAR is attempting to invoke the protections of the NJFPA; as a non-franchisee, it has no standing to do so.

*Horn* and *Tynan* are binding authority on this state law issue under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See Robinson v. Jiffy Executive*

17

*Limousine Co.*, 4 F.3d 237, 242 (3d Cir. 1993) (overruling prior panel decision which conflicted with two intervening New Jersey Appellate Division decisions). [3]

In light of the unambiguous statutory text and binding case law, there is no need to look at other indicia of legislative intent. *Graden*, 496 F.3d at 295; *accord, State v. Butler*, 89 N.J. 220, 226 (1982) ("If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to define the Legislature's intent."). Nevertheless, such indicia confirm that it was the Legislature's intent to limit the right to bring suit for violations of the NJFPA to suits by franchisees against their franchisors.

First, the NJFPA provides that: "It shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto." N.J.S.A. 56:10-9; *see Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 119 F. App'x 419, 423–24 (3d Cir. 2005) (dealer's substantial noncompliance "serve[s] as a complete defense to any action brought under the NJFPA"); *Mall Chevrolet, Inc. v. General Motors LLC*, No. 1:18-cv-15077-JRP-KMW, 2021 WL 2581665, at *3-4 (D.N.J June 23, 2021) (collecting

---

[3] In *DaimlerChrysler*, the court found, in a footnote, that NJ CAR had constitutional standing under the *Hunt* test. *Id*. at 105 n. 5. However, the court did not address, and the decision does not indicate that the defendant raised, the separate question of statutory standing raised here.

cases and granting summary judgment dismissing otherwise triable claim based on Court's prior ruling that franchisee had failed to substantially comply with the franchise).

By establishing this complete defense to "any" such action, the Legislature obviously meant the defense to apply to claims for injunctive relief as well as to claims for damages.  Permitting an association to seek an injunction in place of its franchisee members, however, could effectively deprive the franchisor of a defense that the Legislature intended the franchisor to have against its franchisees in all actions alleging violations of the NJFPA.

Second, the NJFPA statutory language is more restrictive than the private right of action language in most other states' franchise statutes, which often provide that "any person" who suffers injury can sue for a violation of the statute and rarely if ever expressly restrict suits by a franchisee to "its" franchisor.  *See, e.g.*, Del. Code Ann. tit. 6, § 4916(a) ("any person who is or may be injured by a violation of a provision of this chapter . . . may bring an action in a court of competent jurisdiction for damages and equitable relief"); Pa. Stat. Ann. tit. 63, § 818.329 (same language); N.Y. Veh. & Traf. Law § 469 ("[a] franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to . . . sue for . . . and have, injunctive relief and damages").  Had the Legislature intended to create statutory

standing broader than "a franchisee against its franchisor," it not only knew how to do so but had numerous models from other states to adopt or adapt.

Third, legislatures in other states have recognized that even the broader language in their statutes should not normally be interpreted to grant a private right of action to a dealer association and therefore have, where associational standing is desired, amended their statutes to grant a right of action to dealer associations. *See, e.g.*, Ga. Code Ann. § 10-1-623(e) (granting a right of action to "[a]ny corporation or association which is primarily owned by or comprised of dealers and which primarily represents the interests of dealers" ); N.C. Gen. Stat. § 20-308.1(d) ("any association that is comprised of a minimum of 400 new motor vehicle dealers, or a minimum of 10 motorcycle dealers or recreational vehicle dealers, substantially all of whom are new motor vehicle dealers located within North Carolina, and which represents the collective interests of its members"); Wash. Rev. Code § 49.96.260 ("any corporation or association that is primarily owned by or composed of new motor vehicle dealers and that primarily represents the interests of new motor vehicle dealers"); W. Va. Code § 17A-6A-16(4) ("[a]ny corporation or association that is primarily owned by or composed of dealers and represents the interests of dealers"). In contrast, New Jersey has not granted a right of action to dealer associations.

Because it does not have statutory standing, NJ CAR has not stated and cannot state a claim upon which relief may be granted.

## **CONCLUSION**

For the foregoing reasons, Mazda respectfully submits that its motion to dismiss the Complaint should be granted.

Dated: August 11, 2021

Respectfully submitted,

HOGAN LOVELLS US LLP

/s/ *Jessica K. Jacobs*
Stephen A. Loney, Jr. (N.J. No. 005172006)
Jessica K. Jacobs (N.J. No. 038002011)
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
stephen.loney@hoganlovells.com
jessica.jacobs@hoganlovells.com

John J. Sullivan
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Email: john.sullivan@hoganlovells.com

Ryan L. Ford
(admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Email: ryan.ford@hoganlovells.com

*Attorneys for Defendant*

\\NY - 029020/000018 - 10341289 v12